IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Montgomery Division

KIMBERLEY N. HOLLEY,

    Plaintiff,

v.

                                                            Civil Action No.
                                                            2:06-cv-677

WORLDWIDE ASSET
    PURCHASING, LLC, et al.,

    Defendants.

**MOTION FOR A PRELIMINARY INJUNCTION**

The plaintiff, Kimberley N. Holley, by counsel, hereby moves this Court, in accordance with the provisions of Rule 65 of the Federal Rules of Civil Procedure, for the entry of a preliminary injunction ordering that the arbitration proceeding filed by the defendants against the plaintiff, as described in the Complaint in this action, be temporarily stayed until this Court has the opportunity to rule on the issue whether the underlying dispute is subject to arbitration.

The plaintiff submits the accompanying Declaration of Kimberley N. Holley, with documents attached, in support of this Motion. The plaintiff also submits the accompanying Plaintiff's Memorandum in Support of her Motion for a Preliminary Injunction.

In further support of this Motion, the plaintiff states the following:

1. The plaintiff filed the above-entitled action against the defendants seeking damages under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq., because of their actions in attempting to collect a debt from her which she alleges she does not owe.

2. The defendants have initiated an arbitration proceeding against the plaintiff by filing a

claim with the National Arbitration Forum (NAF), seeking an award requiring the plaintiff to pay this debt.

3. The plaintiff never agreed to arbitration of this claim. In fact, the plaintiff never entered into and was not a party to the credit card agreement on which the claim for payment is based.

4. In her Complaint in this action, the plaintiff has asked this Court for a declaratory judgment declaring that she may not be compelled to submit the issue of her liability for this debt to arbitration. Complaint, ¶¶38-43.

5. Unless this Court intervenes, it is likely that the arbitration proceeding will proceed before this Court has had an opportunity to rule on the issue of arbitrability.

6. The plaintiff has asked the defendants to agree voluntarily to a temporary stay of the arbitration proceeding to permit this Court to act on the issue of arbitrability before any action is taken in that proceeding which would prejudice the plaintiff's rights, but the defendants have not responded to that request.

7. The plaintiff is likely to succeed on the merits of her declaratory judgment action.

8. There will be no harm to the defendants if the arbitration proceeding is temporarily stayed pending a ruling by this Court on whether this dispute is subject to arbitration.

9. If the arbitration proceeding is permitted to proceed, however, the plaintiff will suffer irreparable harm in that she will be forced to choose between participating in the arbitration proceeding, with the time, expense and stress involved, and refusing to participate in that proceeding with the risk of a binding adverse outcome.

10. In addition, staying the arbitration proceeding pending a resolution by this Court of the issue whether this dispute is subject to arbitration will preserve the status quo and permit this

Court, which is the proper forum for the issue of arbitrability to be decided, to rule on that issue before any further action is taken. If the arbitration proceeding is not stayed, then the issue may become moot before this Court has an opportunity to rule.

11. The public interest will be advanced by issuing the preliminary injunction requested.

12. The plaintiff hopes that this motion for a preliminary injunction can be heard by the Court in late August or early September, 2006. The undersigned counsel asks the Court to have someone contact him to indicate what dates might be available during that period.[1] The undersigned counsel will undertake to coordinate dates with opposing counsel, once counsel has been identified.

WHEREFORE, for the foregoing reasons, the plaintiff asks this Court to issue a preliminary injunction under the provisions of Rule 65 of the Federal Rules of Civil Procedure ordering that the arbitration proceeding which the defendants have initiated against the plaintiff be temporarily stayed until such time as this Court can rule on the issue whether this dispute is properly subject to arbitration.

                                              Respectfully submitted,

                                              KIMBERLEY N. HOLLEY
                                              Plaintiff
                                              By Counsel

---

[1] Please note that the undersigned counsel will be out of town from August 3 through August 11, 2006. He can best be contacted during that time by using his e-mail address: edwayland@yahoo.com.

*[signature: Edward M. Wayland]*
Edward M. Wayland, Esq.
AOC # WAY004
P.O. Box 17
Montgomery, AL  36101
(334) 834-9901
(334) 264-8742 (fax)
e-mail:  edwayland@yahoo.com

Counsel for Plaintiff

## CERTIFICATION

I hereby certify that I mailed a true copy of the foregoing Motion for a Preliminary Injunction, with the Declaration of Kimberley N. Holley and the attached Exhibit, to each of the defendants in this action at the following address:  Law Offices of Gerald E. Moore & Associates, P.C., 2253 Northwest Parkway, Suite 300B, Marietta, GA  30067, on this 2nd day of August, 2006.

*[signature: Edward M. Wayland]*
Edward M. Wayland

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Montgomery Division

KIMBERLEY N. HOLLEY,

    Plaintiff,

v.                                                                                                        Civil Action No.

WORLDWIDE ASSET
    PURCHASING, LLC, et al.,

    Defendants.

## DECLARATION OF KIMBERLEY N. HOLLEY

I, Kimberley N. Holley, declare the following:

    1. I am the plaintiff in the above-entitled action.

    2. I have reviewed the allegations of fact in the Complaint submitted in this matter, and to the extent that those allegations describe me or things that I have done or not done, those allegations are true and correct.

    3. Attached to this Declaration is a true copy of the claim, with all attachments, submitted by the defendants to the National Arbitration Forum (NAF) to initiate the arbitration action described in the Complaint.

    4. I never entered into a credit card contract with Orchard Bank or Household Bank, N.A., and I do not owe any debt to Worldwide Asset Purchasing, LLC.

    5. I have never been shown any document or other evidence indicating that I owe this debt. I do not believe that any such document or other evidence exists.

    6. The actions of the defendants in continuing to pressure me to pay this debt have

caused me to be very emotionally upset and have caused me considerable stress.

I declare under penalty of perjury that the foregoing is true and correct. Signature before a notary public is dispensed with in accordance with the provisions of 28 U.S.C. §1746.

*Kimberley N. Holley*
Kimberley N. Holley

Date: 8-1-06

IN THE
NATIONAL ARBITRATION FORUM

CLAIM
_____

Worldwide Asset Purchasing, LLC
c/o Law Offices of Gerald E. Moore & Assoc., P.C.
2253 Northwest Parkway
Suite 500
Marietta, GA 30067
USA

CLAIMANT,

RE:   Worldwide Asset Purchasing, LLC v Kimberly Holley
Forum File Number:   FA0605000721187
Account No.:   5488975020191329
Claimant Reference No.:   01157233

Kimberly Holley
206 Foxfire Dr
Dothan, AL 36301
USA

RESPONDENT(S),
_____

**RESPONDENT(S): THIS IS AN ARBITRATION CLAIM AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT WITH A WRITTEN RESPONSE. IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE NATIONAL ARBITRATION FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU.**

For a Claim against Respondent(s), Worldwide Asset Purchasing, LLC states:

1. By way of contract and retention and use of the credit card issued by Household Bank (SB), N.A. ("Household"), Respondent(s) became bound by the terms of the Household Credit Card Agreement ("Agreement") a true and correct copy is attached hereto as Exhibit "A". Claimant is the successor in interest to said issuer Household by way of the purchase of the above-referenced account of Respondent(s).

2. As stated in The Agreement, Exhibit "A":

   "We [Household] may sell, assign or transfer your Agreement and Account or any portion thereof without notice to you."

3. The Agreement between the parties contained an arbitration provision that stated, in pertinent part:

   "You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to the arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed."

WAPGH Arbitration Claim Form 001

4. Despite repeated attempts by both Worldwide Asset Purchasing, LLC and now its Counsel, the Law Office of Gerald E. Moore & Associates, P.C. to resolve this matter, Respondent(s) has/have not paid the amounts due.

5. Respondent(s) is/are in default under the terms of the Agreement and is/are now indebted to Worldwide Asset Purchasing, LLC, as successor in interest to Household. On May 31, 2004, the Respondent(s) came into default. Taking into consideration all payments, credits and/or setoffs since that time, Respondent(s) owe(s) the principal amount of $973.43 to date.

6. Respondent(s)'s account charged-off with a default interest rate of 23.90%. Worldwide Asset Purchasing, LLC, as successor in interest to Household, has accrued interest at this rate as the Agreement entitles.

7. Respondent(s) is/are indebted to Worldwide Asset Purchasing, LLC, as successor in interest to Household, for interest accrued since the time of charge-off in the amount of $455.24.

8. Pursuant to the choice of law provision in the Agreement the laws of Nevada govern this arbitration proceeding:

    "This agreement and your Account will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada."

9. And as such, pursuant to NV ST 69.030, Claimant is entitled to recover attorneys' fees: "the prevailing party in any civil action at law in the justices' courts of this State shall receive, in addition to the costs of court as now allowed by law, a reasonable attorney fee".

10. Therefore, the claimant may seek reasonable attorney's fees as the Cardmember agreement states the following:

    "You will pay our court costs, reasonable attorneys' fees and other collection costs related to the default to the extent permitted by the law in the state in which you reside"

WHEREFORE, Claimant prays that an Award is granted against Respondent in the following manner:
   a. For the principal amount reflected in Paragraph 5 in the amount of $973.43,
   b. For interest at the time of filing in the amount of $455.24 and interest accrued since the time of filing at the rate of 23.90%,
   c. For reasonable attorney's fees in the amount of $214.30, pursuant to NV ST 69.030,
   d. For any and all fees associated with this action,
   e. For any and all costs associated with the service of process of this action,
   f. For such other and further relief as the court deems just and proper.

The undersigned asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are accurate.

WAPGH Arbitration Claim Form 001

RESPONDENT(S) MUST SEND A WRITTEN RESPONSE TO THE NATIONAL ARBITRATION FORUM, WITH A COPY TO THE CLAIMANT, WITHIN 30 DAYS OR AN AWARD MAY BE ENTERED IN FAVOR OF THE CLAIMANT.

_____
Danielle M. Hill, Esq.
For Claimant

Claimant Contact:
Law Offices of Gerald E. Moore & Assoc., P.C.
ATTN: Gerald E. Moore
2253 Northwest Parkway
Suite 300B
Marietta, GA 30067
(866) 252-9284

THIS COMMUNICATION IS FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**SUMMARY OF ACCOUNT INFORMATION**

05/31/2006 - KIMBERLY HOLLEY

ACCOUNT STATUS REPORT

| | |
|---|---|
| Date Filed: | 05/31/2006 |
| Account Number: | 5488975020191329 |
| Primary Account Holder: | KIMBERLY HOLLEY |
| Address: | 206 Foxfire Dr |
| | Dothan, AL 36301 |
| Secondary Account Holder: | |
| Address: | |
| | , |
| Principal Balance: | $973.43 |
| Interest Rate: | 23.9 |

INFORMATION DRAWN FROM ACCOUNT RECORDS AND CURRENT AS OF THE DATE FILED

IN THE
NATIONAL ARBITRATION FORUM

CERTIFICATE OF SERVICE

Worldwide Asset Purchasing, LLC
c/o Law Offices of Gerald E. Moore & Assoc., P.C.
2253 Northwest Parkway
Suite 500
Marietta, GA  30067
USA

      CLAIMANT,

    **RE:** Worldwide Asset Purchasing, LLC v Kimberly Holley
    **Forum File Number:** FA0605000721187
    **Account No.:** 5488975020191329
    **Claimant Reference No.:** 01157233

Kimberly Holley
206 Foxfire Dr
Dothan, AL  36301
USA

      **RESPONDENT(S),**

This is to certify that I have this day served Respondent or his attorney in the foregoing matter with a copy of this Claim by depositing for delivery via United Postal Service a copy of the same in a properly addressed envelope with adequate postage thereon.

This ___ day of June ____, 2006.

Danielle M. Hill, Esq.
For Claimant

Claimant Contact:
Law Offices of Gerald E. Moore & Assoc., P.C.
ATTN: Gerald E. Moore
2253 Northwest Parkway
Suite 300B
Marietta, GA  30067
(866) 252-9284

# ORCHARD BANK®

Orchard Bank Visa®/MasterCard®
**CARDMEMBER AGREEMENT AND DISCLOSURE STATEMENT**
AG1347 (7/01)

This is a replacement to your current Orchard Bank Cardholder Agreement and Disclosure Statement and, except for the changes indicated by shading, is effective immediately. The changes indicated by shading will be effective with your billing cycle ending on or after October 4, 2001. Please review this carefully and keep it with your important papers.

### AGREEMENT TO TERMS—USE OF ACCOUNT—DEFINITION OF PARTIES

In this Cardmember Agreement and Disclosure Statement, and the enclosed sheet entitled "Important Information Regarding Your Account" (collectively, the "Agreement"), and in your monthly statements, the words "you" and "your" refer to all persons named on the credit card application, Account, credit card or acceptance certificate; the word "Card" means a single credit card or two or more credit cards we have issued to you under this Agreement; the words "we", "us", and "our" refer to Household Bank (SB), N.A., Las Vegas, Nevada; and the word "Account" or "Card Account" means the open end line of credit we have established for you and which can be accessed by your Card or other means approved by us. You may not use your credit card checks (if applicable) to make payments to us or any of our affiliates.

This Agreement (and any amendments) covers your Account with us, and you and we will be bound by it from the time you receive your Card or Agreement. You agree to use this Account only for personal, family, household or charitable purposes. Your Card and Account may only be used for valid and lawful purposes. If you use, or allow someone else to use, the Card or Account for any other purpose, you will be responsible for such use and may be required to reimburse us and Visa International or MasterCard International Incorporated for all amounts or expenses either we or Visa or MasterCard pays as a result of such use. You may cancel this Account before using it without paying any fees. If your Account is a joint Account, you and your joint Accountholder each promise to pay and are jointly and individually responsible for all amounts due under this Agreement regardless of any divorce or other legal proceedings or any agreement that may effect liability between you. If any of you gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, you may continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

### PROMISE TO PAY

You promise to pay according to the terms that we require or request for: (a) credit extended by us to you or to anyone whom you permit to use this Account; (b) Finance Charges, late payment fees, and other administrative charges (e.g., returned payment fee, overlimit fee, and research charge) provided in this Agreement; (c) collection costs, and attorneys' fees as permitted by applicable law; and (d) credit in excess of your credit limit that we may extend to you.

### MAXIMUM CREDIT LIMIT

You will not exceed the credit limit that we set for you. You may obtain credit by any means approved by us until the total unpaid balance of your Account reaches your credit limit. At our discretion, we may limit the amount of any type of transaction on your Account, including Cash Advances. You agree that any transaction limitations may change at any time without notice to you as long as the limit is applied to all or a substantial por-

tion of our accounts. Credit card and other forms of access checks may be limited. You agree not to allow your total unpaid balance, including Finance Charges and other charges, to exceed your credit limit established by us from time to time. We are not required to make Cash Advances (including accepting credit card checks or Automated Teller Machine ("ATM") transactions), or extend credit for purchases at your request if you have exceeded your credit limit, but if we do, you agree to pay us that excess amount, any overlimit fee, and applicable Finance Charges, immediately. We are not required to make advances which exceed the amount of your credit limit even if your Account has additional credit available. When you make a payment, your available credit may not reflect that payment for up to 14 days.

### STATEMENTS

We will send you a statement covering each billing cycle in which you have a balance in excess of $1 showing (as of the billing cycle): (a) payments, credits, purchases, Cash Advances, Finance Charges, and all other charges made to your Account; (b) the minimum payment you must make (called the "Minimum Payment") and the date it is requested; and (c) your available credit.

### PAYMENT

Each month we must receive the Minimum Payment by the Payment Due Date reflected on your statement. The Payment Due Date will be 25 days after the close of your billing cycle. If you wish, you may pay more than the Minimum Payment and at any time you may pay the entire amount owed (called "New Balance").

For the amount of your Minimum Payment each month, see the enclosed sheet entitled "Important Information Regarding Your Account."

All payments by mail must be made by check or money order. You agree that any payment you make may be returned to you without applying it to your Account and without presentment or protest, for any reason, including if the check or money order is: (1) not drawn on the U.S. Post Office or a financial institution located in the United States; (2) missing a signature; (3) drawn with different numeric and written amounts; (4) restrictively endorsed; (5) post dated; (6) not payable to Bankcard Services; (7) not drawn in U.S. dollars on funds on deposit in the U.S.; (8) not paid upon presentment; or (9) drawn on a credit card access or other check issued by Household Bank or its affiliates. You agree to pay any bank or financial institution collection fees we incur for any check payments made in U.S. dollars drawn on a financial institution not located in the United States. All payments under this Agreement must be received at the address specified on your billing statement. **Disputed payments, including those marked "Payment in Full" or otherwise restrictively endorsed must be mailed to the Customer Service address shown on your monthly statement.** We can accept late or partial payments or checks or money orders marked Payment in Full or otherwise restrictively endorsed without waiving our right to immediate payment in full or losing any of our rights under this Agreement.

### HEALTH CLUB BALANCE

When you transfer your health club membership fee to this account, the amount you transfer will be posted to your Account as of the date the transfer is made and will appear on your statement as a Cash Advance (no transaction charge will be assessed on this balance).

### FINANCE CHARGES

Please see the enclosed sheet entitled "Important Information Regarding Your Account."

### ANNUAL FEE

The amount of your Annual Fee is reflected on the enclosed sheet entitled "Important Information Regarding Your Account." You agree to pay a non-refundable Annual Fee for each year your Account is open or closed with a balance in an amount to be set by us from time to time. You agree that the Annual Fee will be charged to your Account.

The Annual Fee compensates Household Bank, in part, for cardmember services provided or made available to you throughout the membership year which includes but is not limited to the right of the cardmember to access customer service staff, the right of the cardmember to withhold payment of disputed charges, and the processing and mailing of the monthly billing statement.

### LATE PAYMENT FEE, RETURNED PAYMENT FEE, OVERLIMIT FEE
Please see enclosed sheet entitled "Important Information Regarding Your Account."

### RESEARCH CHARGE
You agree to pay $7 for each sales slip copy you request, $3 for each statement copy you request, and $10 for each application copy you request.

### REPLACEMENT FEE
If you ask us to replace a Card that is lost, stolen, or damaged, or if you ask for a replacement Personal Identification Number (PIN) to facilitate access to Automated Teller Machines, you agree to pay us a Replacement Fee of $5. If you request that we send a replacement card to you on a rush basis, you will be charged our current fee for this service.

### REINSTATEMENT FEE
If you ask us to reopen your closed or blocked Account, and we approve your request, you agree to pay us a Reinstatement Fee of $29.

### APPLICATION OF PAYMENTS
Your payments will be allocated in a manner we determine in accordance with applicable law, and may change from time to time.

### CHANGE OF TERMS (including Finance Charges)
SUBJECT TO APPLICABLE LAW, WE MAY CHANGE OR TERMINATE ANY TERM OF THIS AGREEMENT OR ADD NEW TERMS AT ANY TIME, INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES, INCREASING YOUR MONTHLY MINIMUM PAYMENT AND INCREASING THE RATE OR AMOUNT OF FINANCE CHARGE, OR CHANGING THE METHOD OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. PRIOR WRITTEN NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW. CHANGES MAY APPLY TO BOTH NEW AND OUTSTANDING BALANCES. WE MAY ASSIGN YOUR ACCOUNT TO OUR AFFILIATES OR TO SOME OTHER FINANCIAL INSTITUTION AT ANY TIME.

### DEFAULT AND TERMINATION OF AGREEMENT
You will be in default under this Agreement upon: (a) your failure to make at least the Minimum Payment when due; (b) your violation of any other provision of this Agreement; (c) your death; (d) your becoming the subject of bankruptcy or insolvency proceedings; (e) your becoming the subject of attachment, foreclosure, repossession, lien, judgment or garnishment proceedings; (f) your failure to supply us with any information we reasonably deem necessary; (g) your supplying us with misleading, false, incomplete or incorrect information; (h) our receipt of information that you are unwilling or unable to perform the terms or conditions of this Agreement; (i) our receipt of information from third parties, including credit reporting agencies, which indicates a serious delinquency or charge-off with other creditors; (j) your default under any other loan or agreement you have with us or any of our affiliates; (k) your moving out of the U.S. or providing us with a non-U.S. mailing address; (l) your becoming incompetent; (m) your exceeding your credit limit; (n) your payment is returned unsatisfied by your bank or financial institution for any reason; or (o) any credit card check is returned unpaid by us. After your default, your Account balance will continue to accrue Finance Charges at the contract rate. Upon default, we have the right to terminate or suspend your credit privileges under this Agreement, to change the terms of your Account and this Agreement, to require you to pay your entire Account balance including all accrued but unpaid charges immediately, and to sue you for what you owe. You will pay our court costs,

reasonable attorneys' fees and other collection costs related to the default to the extent permitted by the law in the state in which you reside. Upon default, we will apply your payments first to attorneys' fees and then to principal and unpaid Finance Charges. We may notify your health club of your default and transfer back to your health club any remaining balance on your health club membership fee, in which case the original terms of your loan from the health club may be reinstated. Your health club may also elect to cancel your health club membership.

### CREDIT AUTHORIZATIONS

Some purchases will require our prior authorization and you may be asked by the merchant to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen. We are not responsible for the refusal of any merchant to accept or honor your Card.

### CARD RENEWAL

Cards are issued with an expiration date. We have the right not to renew your Card for any reason.

### CARD CANCELLATION

We can terminate or reduce your credit limit at any time and for any reason, subject to the requirements of applicable law. Balances outstanding under this Agreement when your credit limit is reduced or terminated will continue to accrue Finance Charges until paid in full and are subject to all the terms and conditions of this Agreement. You agree to return to us or destroy your Card(s) and any unused credit card checks and we will not honor any credit card check written on your Account if we receive the check after your Account is cancelled.

### CLOSING YOUR ACCOUNT

You can cancel or close your Account by writing to us at P.O. Box 80084, Salinas, CA 93912. Your notice becomes effective within ten days after we receive it. If you cancel the Account, you must immediately pay everything you owe us, including any amounts owed but not yet billed to you. If you do not pay us immediately, outstanding balances will continue to accrue finance and other charges and be subject to the terms and conditions of this Agreement. You also agree to return to us or destroy your Card(s) and any unused credit card checks. We will not honor any credit card check written on your Account if we receive the check after your Account is closed.

### LIABILITY FOR UNAUTHORIZED USE

You should retain copies of all charge slips until you receive your statement, at which time you should verify that the charges are true and the amounts unaltered. You may be liable for the unauthorized use of your credit card. You will not be liable for unauthorized use that occurs after you notify us of the loss, theft or possible unauthorized use. Notification must be given by writing us immediately upon learning of the loss, theft or possible unauthorized use at P.O. Box 80084, Salinas, CA 93912 or calling us at the telephone number listed on your billing statement. In any case, your liability for unauthorized use of your credit card will not exceed $50. However, unauthorized use does not include use by a person to whom you have given the credit card or authority to use the Account, and you will be liable for all use by such a user. To terminate this authority, you must retrieve the credit card from the previously authorized user and return it to us at the address mentioned above along with a letter explaining why you are doing so.

### SECURITY DEPOSIT (if applicable).

If you have completed a Security Agreement for your Card Account, you have given us funds to secure all or certain of the balances owing on your Card Account. You have requested and authorized us to use the funds to open an FDIC-insured Savings Deposit Account ("Deposit Account") with Orchard Bank, a division of Household Bank, f.s.b. in your name.

To secure payment of all amounts you owe on the Card Account, you assign, pledge, and grant to us a first priority security interest under the Oregon Uniform Commercial Code in the Deposit Account and in all renewals, additions, substitutions, and proceeds thereto and thereof, and the interest accrued thereon, as provided in the Security Deposit Account Agreement you signed and delivered to us along with the funds. In connection with your Security Agreement, you certified that the Deposit Account is exempt from backup withholding under applicable state and federal law. The Deposit Account will be in your name, and will accrue interest at the rate established for savings deposit Accounts from time to time. You may not make withdrawals from the Deposit Account.

Upon cancellation of your Card Account, either by you or by us, and after any required notice, you authorize us to calculate and deduct from the Deposit Account the balance of your Card Account and then, subject to any claims or applicable laws, we will send you any remaining proceeds in the Deposit Account at the last address shown for you on our records.

If your Card Account has both secured and unsecured Credit Limits, and you ask us to return the Deposit Account to you, we will establish a new Credit Limit for your Account, providing that your Account qualifies to release the secured portion of your Account. We will return the Deposit Account to you, provided that we first will deduct from the Deposit Account and apply to your Card Account balance an amount equal to the amount, if any, by which your total Card Account balance exceeds your new Credit Limit.

### CHANGE OF NAME, ADDRESS, TELEPHONE NUMBER OR EMPLOYMENT

You agree to give us prompt notice of any change in your name, mailing address, telephone number or place of employment.

### FOREIGN TRANSACTIONS

If you effect a transaction with your MasterCard card in a currency other than U.S. dollars, MasterCard International Incorporated will convert the charge into a U.S. dollar amount. MasterCard International will use its currency conversion procedure, which is disclosed to institutions that issue MasterCard cards. Currently, the currency conversion rate used by MasterCard International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International. The currency conversion rate used by MasterCard International on the processing date may differ from the rate that would have been used on the purchase date or cardholder statement posting date.

### APPLICABLE LAW

This Agreement and your Account will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada. This Agreement is entered into in Nevada and all credit under this Agreement will be extended from Nevada. All terms and conditions of this Agreement including change of terms or applicable law provisions, the Finance Charge, late payment fee, returned payment fee, overlimit fee, credit line increase fee finance charge, monthly maintenance fee finance charge and research charges provided for in this Agreement are deemed to be interest under this Agreement and material to the determination of the Finance Charge.

### ASSIGNMENT OF ACCOUNT

We may sell, assign or transfer your Agreement and Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account.

### CERTAIN PRIVACY PRACTICES

You agree that from time to time we may receive credit information concerning you from others, such as stores, other lenders, and credit reporting agencies, and that we may use this information to cancel or suspend your credit privileges under this Agreement even if you are

not in default with us. You agree that the Department of Motor Vehicles may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardmembers. For additional information regarding our privacy practices, please refer to our Privacy Statement previously provided to you.

### CREDIT REPORTING

If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a credit reporting agency. If any specific information related to your Account transactions or credit experience with us is inaccurate, you may notify us and request us to correct the inaccurate information (after confirmation of the alleged error) reported to any credit reporting agency by writing to us at P.O. Box 19360, Portland, OR 97280.

### WAIVER

We may choose to delay enforcing or waive any of our rights under this Agreement in certain situations. We can delay enforcing or waive any of our rights without affecting our other rights. If we waive a right, we do not thereby waive the same right in other situations.

### UPDATED FINANCIAL AND OTHER INFORMATION

Upon request, you agree to promptly give us accurate financial and other information about yourself.

### SEVERABILITY

If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule or regulation, all other provisions of this Agreement will remain valid and enforceable.

### ARBITRATION

You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below. Our address for service of process under this provision is Bankcard Services, P.O. Box 80084, Salinas, CA 93912. Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the arbitration administrator up to the amount

of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction. This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
(800) 474-2371
www.arb-forum.org
Code of Procedure

American Arbitration Association
1150 Connecticut Ave., NW, 6th Floor
Washington, DC 20036-4104
(800) 925-0155
www.adr.org
Arbitration Rules for Consumer Disputes (Claims under $10,000)
Commercial Arbitration Rules (all other claims).

JAMS
45 Broadway
New York, NY 10005
(800) 352-5267
www.jamsadr.com
Financial Services Arbitration Rules and Procedures.

## WHAT TO DO IF THERE'S AN ERROR IN YOUR BILL

**YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE**
This notice contains important information about your Account rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:
- Your name, account number and signature.