**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**Southern Division**

**KIMBERLEY N. HOLLEY,**

      **Plaintiff,**

**v.**

                                    **Civil Action No.**
                                    **1:06-cv-677-WKW**

**WORLDWIDE ASSET**
      **PURCHASING, LLC, et al.,**

      **Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Kimberley N. Holley, by counsel, has moved this Court for partial summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure, for the purpose of seeking a ruling that that she was not a party to and does not owe any money based on the credit card account which is at the center of this action and that the defendants are liable to her on her claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*.

The plaintiff submits this Memorandum and the accompanying Declarations and Exhibits in support of her motion.

**Summary Judgment Under Rule 56**

The standards used to evaluate a motion for summary judgment under Rule 56 are well-established.  *E.g., Rawlings v. Dovenmuehle Mortgage, Inc.,* 64 F.Supp.2d 1156, 1158-69 (M.D.Ala. 1999);  *Rivera v. Amalgamated Debt Collection Servs.*, 462 F.Supp. 2d 1223, 1226-27

(S.D. Fla. 2006).  Under Rule 56, summary judgment is appropriate if there are no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c);

*Miller v. Harget*, 458 F.3d 1251, 1255 (11th Cir. 2006) (citing *Lippert v. Cmty. Bank, Inc.,* 438

F.3d 1275, 1278 (11th Cir. 2006)).  The moving party bears the initial burden of showing that

there are no material issues of fact.  *Imaging Business Machines, LLC v. BancTec, Inc.,* 459 F.3d

1186, 1192 (11th Cir. 2006).  Once the moving party satisfies that burden, the non-moving party

must introduce facts showing a genuine issue of material fact.  *Id*.  In determining whether

summary judgment is appropriate, the Court "must view all the evidence and all factual

inferences reasonably drawn from the evidence in the light most favorable to the nonmoving

party,"  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997),

and "must resolve all reasonable doubts about the facts in favor of the non-movant,"  *United of*

*Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

     As the discussion below will demonstrate, the plaintiff easily meets these tests with

regard to both issues on which she seeks summary judgment.

## Statutory Background:
## The Fair Debt Collection Practices Act

     The FDCPA was enacted in 1977 to "protect consumers from a host of unfair, harassing,

and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt

collectors."  *Hawthorne v. Mac Adjustment,* 140 F.3d 1367, 1370 (11th Cir. 1998) (citing S.Rep.

No. 95-382 at 1-2 (1977)).  Its purpose is "to eliminate abusive debt collection practices by debt

collectors, to ensure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent state action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692(e);  see also *McKnight v. Benitez*,

176 F. Supp. 2d 1301, 1305 (M.D. Fla. 2001).

To accomplish this purpose, the FDCPA lists a number of actions which a debt collector may not take.  E.g., 15 U.S.C. §§1692d, 1692e, 1692f.  In particular, under §1692e, a debt collector is prohibited from "using any false, deceptive or misleading representation or means in connection with the collection of any debt."

## Factual and Procedural Background

This action arose out of the attempts by the defendants to collect a debt which they claim is owed on a Household Bank credit card account by the plaintiff, Kimberley N. Holley. Defendant Worldwide Asset Purchasing, Inc. (hereafter, "Worldwide") alleges that it is the owner of this debt by assignment.  Amended Complaint, ¶12;  Answer[1], ¶12;  Response to Interrogatory 4 (contained in Plaintiff's Summary Judgment Exhibit 7).[2]  The Law Offices of Gerald E. Moore & Associates, P.C. (hereafter, "the Moore Law Firm") acted on behalf of Worldwide in its efforts to collect this credit card debt.  Amended Complaint, ¶11;  Answer, ¶11; Int. No. 2 (Pl. SJ Ex. 7).  Defendant Gerald E. Moore is an attorney and a shareholder and the CEO of the Moore Law Firm, Answer, ¶7, Int. No. 2 (Pl. SJ Ex. 7), and Danielle M. Hill is an attorney working for the Moore Law Firm, Amended Complaint, ¶9;  Answer ¶9;  Hill Answer, ¶9.

In the late spring of 2006, Ms. Holley received at least two letters from the Moore Law

---

[1] The Answer referred to here was filed on behalf of defendants Worldwide, the Law Offices of Gerald E. Moore & Associates, P.C. and Gerald E. Moore and is hereafter referred to as "Answer."  A separate Answer was filed by defendant Danielle M. Hill and will be referred to as "Hill Answer."

[2] Exhibits submitted in support of the plaintiff's motion for partial summary judgment will be referred to as "Pl. SJ Ex. ___."

Firm advising her that Worldwide wanted her to pay a sum claimed as due on a Household Bank credit card account.  Declaration of Kimberley N. Holley, ¶2.  After she received the second letter, Ms. Holley telephoned the Moore Law Firm and advised the person she spoke with that there was a mistake and that this was not her account.  Id., ¶5.

On or about June 12, 2006, Ms. Hill mailed Ms. Holley a copy of an arbitration claim which she said had been submitted to the National Arbitration Form ("NAF"), a national company offering arbitration services.  Pl. SJ Ex. 1;  see also Holley Declaration , ¶6.  The claim named Ms. Holley as the respondent and asked for an award against her in the principal amount of $973.43 plus interest accruing at the rate of 23.90%, attorney's fees and costs.  Claim, at page 2 (Pl. SJ Ex. 1).  The arbitration claim alleged that these amounts were due because of Ms. Holley's use of a credit card issued by Household Bank (SB), N.A.  Id., ¶1.  No document containing Ms. Holley's signature was submitted with the arbitration claim nor was any other evidence submitted demonstrating that this was in fact Ms. Holley's account.

The arbitration claim asserted that Worldwide was the successor in interest to Household Bank and that Ms. Holley was a party to the credit card agreement.  Id., ¶¶1, 3, 5.  It asserted further that based on the credit card agreement with Household, Ms. Holley was bound to submit claims and disputes to binding arbitration (id., ¶3), and that Ms. Holley "is/are in default under the terms of the Agreement and is/are now indebted to Worldwide Asset Purchasing, LLC, as successor in interest to Household" (id., ¶5).  The claim was verified as true by defendant Danielle M. Hill, who stated "under penalty of perjury" that the information contained in the arbitration claim, including the information set forth above, was "accurate."  Id., at pages 2-3.[3]

---

[3] Under the rules of the NAF, an initial claim must include "An Affidavit asserting that the statements and Documents in the Claim are accurate."  NAF Code of Procedure, Rule 12(A)(4).  Those Rules define an "Affidavit" as "A Written statement of a person who asserts the statement to be true under penalty of perjury or who makes the statement under oath before a notary public

After receiving notice of this arbitration claim, Ms. Holley had several additional telephone conversations with people at the Moore Law Firm during which she advised them again that she was not the person who had set up this account and that she did not owe the debt claimed as due. Holley Declaration, ¶¶7, 8. After this failed to resolve the matter, Ms. Holley contacted the undersigned counsel, Edward M. Wayland. Id., ¶9. Mr. Wayland wrote to Ms. Hill on July 11, 2006 asking that she produce evidence showing that Ms. Holley had agreed to arbitration or, if such evidence did not exist, asking that she voluntarily dismiss the arbitration proceeding. Pl. SJ Ex. 2; Declaration of Edward M. Wayland, ¶3. Because of the need for a resolution before action was taken in the arbitration proceeding, Mr. Wayland asked Ms. Hill to respond within 15 days. Mr. Wayland also provided Ms. Hill with a copy of a statement he had sent to the NAF in which he asserted that the Household Bank credit card account was not Ms. Holley's account and that Worldwide had no evidence to demonstrate that it was. Wayland Declaration, ¶4; Pl. SJ Ex. 2.

There was no response to the letter to Ms. Hill, and Ms. Holley filed the Complaint initiating the present lawsuit on August 1, 2006. Wayland Declaration, ¶¶5, 6. She alleged that the actions of the defendants had violated the provisions of the Fair Debt Collection Practices Act. She also sought a declaratory judgment that she did not owe the credit card debt.

With her Complaint, Ms. Holley also filed a Motion for a Preliminary Injunction, seeking a stay of the arbitration proceeding until this Court could rule whether the defendants had the right to take this matter to arbitration. Ms. Holley alleged that, as she had never been a party to the credit card agreement, she had never agreed to arbitration and the arbitration clause in the credit card agreement did not bind her. Ms. Holley asked this Court to stay further action in the

---

or other authorized individual." Id., Rule 2(A). The NAF Code of Procedure is available on-line at the NAF web site (www.adrforum.com).

arbitration proceedings until such time as it could rule on the issue whether Ms. Holley was bound by the arbitration clause.

Copies of the Complaint, the motion for a preliminary injunction, and other related documents were mailed to the defendants on August 2, 2006 and delivered on August 4, 2006. Pl. SJ. Ex. 3;  Wayland Declaration, ¶7.  By letter dated August 8, 2006, Mr. Wayland was notified by the NAF that the arbitration claim had been voluntarily dismissed.  Pl. SJ Ex. 4; Wayland Declaration, ¶8.  The letter noted that the dismissal was "without Prejudice."  By letter dated August 7, 2006 but received much later, Janné Y. McKamey, Esq. of the Moore law offices wrote to Mr. Wayland, advising him that they had asked that the arbitration claim be dismissed.[4]  Pl. SJ Ex. 5;  Wayland Declaration, ¶9.  No copy of any written communication to NAF from any of the defendants was sent to Mr. Wayland.  Wayland Declaration, ¶10.

As demonstrated below, Ms. Holley is entitled at this time to a declaratory judgment that she was not a party to the credit card agreement and that she does not owe any debt based on the credit card account.  She is also entitled to the entry of summary judgment as to the defendants' liability to her for her claims under the FDCPA.

**Argument**

**A. Ms. Holley is entitled to a declaratory judgment that she was not a party to the credit card agreement and that she does not owe any debt based on the credit card account.**

Ms. Holley has consistently maintained that she was not a party to the credit card agreement with Household Bank which the defendants have alleged is the basis for their claim against her.  That continues true to this day.  Holley Declaration, ¶¶3, 4.

---

[4] According to the postmark on the envelope, this letter was not mailed until August 17, 2006. Pl. SJ Ex. 5.

Even now, eight months after this litigation was initiated, the defendants have not produced any evidence showing that Ms. Holley was a party to the credit card agreement or that she has any responsibility for the debt they claim is due. They did not provide any such evidence in their initial Rule 26(a) disclosures. In discovery, Ms. Holley asked the defendants to produce "All documents signed by Ms. Holley asking that the Household Bank credit card account be opened in her name." Request for Production of Documents #2 (Pl. SJ Ex. 8). The defendants responded: "None." Ms. Holley also asked for "all billing statements, documents showing charges to the credit card, records of payments made, or communications to or from Ms. Holley or any other person authorized to use the credit card relating to the Household Bank credit card account." Id., Request No. 3. None were produced.[5]

Finally, Ms. Holley asked the defendants under Rule 36 to admit that Ms. Holley "has never been a party to the Household Bank credit card account or the agreement setting up that account, and she does not owe any debt to any person based on that credit card account." Request for Admission No. 5 (Pl. SJ Ex. 6). The defendants failed to admit the truth of this statement, but their response was revealing. They stated: "Defendants state they have made a reasonable inquiry regarding this request for admission and that the information is not known or readily obtainable to the parties."

Throughout the events described above, Ms. Holley consistently maintained that the credit card account was not her account. The defendants have never produced any evidence to

---

[5] The defendants responded "Produced", but this was apparently an error, as no such documents were produced. In a letter dated January 19, 2007, from Edward M. Wayland, counsel for Ms. Holley, to Neal D. Moore, III, counsel for the defendants, Mr. Wayland asked about this. By letter dated March 1, 2007, Mr. Moore confirmed that "you are correct that I have no items in this regard that have not been produced." The relevant portions of both letters are set forth in Pl. SJ Ex. 9.
.

contradict Ms. Holley on this point.

Despite a number of requests, the defendants have failed to produce any evidence to show that, contrary to her statements, Ms. Holley was a party to the credit card agreement. There is, therefore, no genuine dispute as to this issue, and the Court must conclude that Ms. Holley was never a party to the Household Bank credit card account and that she owes no debt based on that account.

A federal court has jurisdiction to grant a declaratory judgment in a case where there is an "actual controversy within its jurisdiction." 28 U.S.C. §2201(a). There can be no doubt that there is an actual controversy on the issue whether Ms. Holley does or does not owe the credit card debt involved in this action. The action arose because the defendants claimed that she did owe this money. See, e.g., Holley Declaration, ¶¶2, 6, 8; Pl. SJ Ex. 1. In addition, it is clear that the controversy continues to the present time. Although the arbitration claim was voluntarily dismissed, it was, according to the letter from the NAF, "Dismissed without Prejudice". Pl. SJ Ex. 4. It can, therefore, be re-filed at any time. In their response to the Amended Complaint filed in this action, the defendants specifically denied Ms. Holley's allegation that this was not her debt. Amended Complaint, ¶13; Answer, ¶13. Finally, when asked under Rule 36 in the present action to admit that Ms. Holley did not in fact owe this debt, the defendants failed to admit that that was so. Admission Request No. 5 (Pl. SJ Ex. 6). Clearly, then, this is an issue about which there is an "actual controversy" between the parties.

There is no genuine dispute as to any issue of material fact relating to this point, there is an actual controversy between the parties, and Ms. Holley is entitled to judgment on this issue as a matter of law. This Court should, therefore, grant Ms. Holley judgment on her claim for a declaratory judgment, declaring that Ms. Holley was not a party to the Household Bank credit

card account and declaring further that she owes no debt based on that account.

### B.  The defendants violated the FDCPA by the actions they took to try to collect the Household credit card debt from her.

In order to prevail on a FDCPA claim, a Plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Kaplan v. Assetcare, Inc.*, 88 F. Supp.2d 1355, 1360-1361 (S.D. Fla. 2000) (quoting *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 470 (M.D. La. 1995)).  *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (D. Fla. 2002).  There can be no dispute that the plaintiff has been the object of collection activity arising from consumer debt.  See, e.g., Holley Declaration, ¶¶2, 6, 8;  Pl. SJ Ex. 1.  The remaining two requirements are discussed in the sections which follow.

### 1.  The defendants are "debt collectors" within the meaning of the FDCPA.

The FDCPA defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. §1692a(6).  Two of the defendants, Worldwide and the Moore Law Office, have conceded that they are "debt collectors" within the meaning of the FDCPA in their responses to requests for admissions under Rule 36.  Responses to Requests for Admissions No. 1 and No. 2 (Pl. SJ Ex. 6).

Ms. Hill and Mr. Moore have denied that they are debt collectors.  Id., Admissions

Requests No. 3 and No. 4. But based on the undisputed facts, there is no question that they also fit the Act's definition.

First, they both work for the Moore Law Office. Amended Complaint, ¶¶7, 9; Answer, ¶¶7, 9; Hill Answer, ¶¶9. The Moore Law Office is conceded by the defendants to be in the business of "collect[ing] debts on behalf of Worldwide. . . ." Interrogatory Response No. 2 (Pl. SJ Ex. 7) and, as noted above, to be a "debt collector." Ms. Hill's direct personal involvement in the effort to collect the debt from Ms. Holley, in which she regularly used the mails, is evident. E.g., Pl. SJ Ex. 1. Mr. Moore's personal involvement is described in the defendants' answer to Interrogatory No. 6, which describes the procedures used by Mr. Moore in making his determination that Ms. Holley was the person who owed the Household Bank debt. Pl. SJ Ex. 7. As CEO of the Moore Law Office (Answer, ¶7; Int. No. 2 (Pl. SJ Ex. 7)), Mr. Moore is of course also responsible for Ms. Hill's actions as her supervisor.

It is possible that Ms. Hill and Mr. Moore contend that they are not debt collectors because they are agents and employees and not the debt collecting business itself. Such a position is not supported by the language of §1692a(6) itself, quoted above. In addition, it is well-settled that agents and employees of the debt collecting business are themselves "debt collectors" under the definition in §1692a(6) and that they may be held liable for their actions which violate the FDCPA. E.g., *West v. Costen*, 558 F.Supp. 564, 574 (W.D.Va. 1983). Further, there is no question that attorneys, whether practicing as members of a firm or employees of a corporation, can be held liable for their actions which violate the FDCPA:

> A lawyer who regularly attempts to obtain payment of consumer debts through litigation or legal proceedings is considered a "debt collector" under the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 292, 299, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). In determining whether an individual can be sued for violation of the FDCPA, it is irrelevant whether the person attempts to collect the debt under the auspices of a law firm or other corporation. Rather, the

> issue is whether the individual defendant acted as a "debt collector" such that
> he or she can be found liable under the FDCPA. See Piper v. Portnoff Law
> Associates, Ltd., 396 F.3d 227, 234 (3d Cir. 2005) (law firm and two of its
> lawyers liable under FDCPA for debt collection activities).

*Brussels v. Newman*, 2007 U.S. Dist. LEXIS 14006, 405 (S.D. Fla. 2007).  See also *Brink v. First*

*Credit Resources,* 57 F.Supp.2d 848, 861-862 (D.Arizona 1999);  *Pikes v. Riddle*, 38 F.Supp.2d

639 (N.D.Ill. 1998);  *Ditty v. Checkrite, Ltd., Inc.*, 973 F.Supp. 1320, 1337-1338 (D.Utah 1997);

*Newman v. Checkrite*, 912 F.Supp. 1354, 1372-1373 (E.D.Cal. 1995);  *Blakemore v. Pekay*, 895

F.Supp. 972, 977 (N.D.Ill. 1995);  *Teng v.Metropolitan Retail Recovery Inc.,* 851 F.Supp. 61, 63-

67 (E.D.N.Y. 1994).

Finally, it should be noted that if Ms. Hill's and Mr. Moore's actions, and through them

those of the Moore Law Firm, were in violation of the FDCPA, then not only are they liable

under the Act, but so is Worldwide, the debt collector they were representing.  *Pollice v.*

*National Tax Funding, L.,P.*, 225 F.3d 379, 404-05 (3rd Cir. 2000);  *Newman, supra,*  912

F.Supp. at 1370 (E.D. Cal. 1995);  See *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516

(9th Cir. 1994).

For these reasons, all the defendants are "debt collectors" as that term is used in the

FDCPA.  If the actions of Ms. Hill and the Moore Law Firm violated that Act, therefore, then all

the defendants are liable to Ms. Holley for her damages caused by those actions.

**2.  Ms. Hill violated the FDCPA by submitting a sworn statement to the NAF making a
number of claims about Ms. Holley's obligations under the Household Bank credit card
account which she did not know were true and which were in fact not true.**

The FDCPA contains a number of provisions prohibiting debt collectors from using

deceptive, unfair or harassing tactics in connection with the collection of a debt.  Debt collectors

are prohibited generally under 15 U.S.C. §1692e from the use of "any false, deceptive, or

misleading representation or means in connection with the collection of any debt." Among the more specific prohibitions of §1692e are those which prohibit "the false representation of . . . the character, amount or legal status of any debt," §1692e(2)(A), and "the use of any false representation or deceptive means to collect or attempt to collect any debt," §1692e(10). In addition, §1692f prohibits the use of any "unfair or unconscionable means to collect or to attempt to collect any debt."

On or about June 12, 2006, defendant Danielle M. Hill, acting as an employee of the defendant Moore Law Firm and as an attorney for defendant Worldwide, mailed a verified arbitration claim to the NAF for the purpose of obtaining an arbitration award requiring Ms. Holley to pay to Worldwide certain sums claimed as due based on the Household Bank credit card account. Pl. SJ Ex. 1. Ms. Hill personally vouched for the accuracy of these allegations by signing the following statement in support of the defendants' claim: "The undersigned asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are accurate." Id., pages 2-3. NAF's Code of Procedure, Rule 12(A)(4), requires an affidavit such as this to be submitted in support of every arbitration claim.

Many of the statements contained in the verified claim submitted by Ms. Hill were not accurate, and it is clear that Ms. Hill had no personal information which justified her assertion that they were true. These statements included the following:

* Ms. Hill stated that Ms. Holley had entered into a contract with Household Bank to set up a credit card account and she had used that credit card. Arbitration Claim, ¶1 (Pl. SJ Ex. 1). As demonstrated above, at 6-9, the defendants have no admissible evidence which demonstrates that Ms. Holley was a party to the Household Bank credit card agreement.

* Ms. Hill stated that Worldwide was the successor in interest to Household Bank on this

account based on its having purchased the account. Id., ¶¶1, 5, 6. As their interrogatory answers show, the defendants do not know and cannot prove a chain of title establishing Worldwide's right to collect the Household Bank account, because they are "without sufficient information to respond" to questions about who may have owned the debt between Household Bank and their immediate assignor. Interrogatory No. 4 (Pl. SJ Ex. 7). Contrary to Ms. Hill's claim, Worldwide cannot establish that it is a "successor in interest" to Household Bank with regard to the credit card account in question. Further, Worldwide cannot assert a claim to payment of the Household Bank credit card debt if it cannot prove a chain of title tracing that right to an assignment by Household Bank. See *Ford Motor Credit Co. v. Rutherford*, 481 So.2d 870, 871 (Ala. 1985) (Ford Motor Credit Company permitted to collect assigned debt upheld where it had a valid assignment of the right to collect from the original creditor).

\* Ms. Hill stated that Ms. Holley had agreed to submit any disputes relating to this account to arbitration. Id., ¶3. Since Ms. Holley was not a party to the Household Bank agreement, she did not agree to the arbitration clause apparently contained in that agreement.

\* Ms. Hill stated that, based on her use of this account, Ms. Holley owed Worldwide various specific sums which were claimed to be due on that account. Id., ¶¶5, 7, and summary statement of amounts claimed as due. The defendants have no evidence demonstrating the basis for the amounts claimed as due. Excerpts from counsel letters (Pl. SJ Ex. 9); see Request to Produce No. 3 (Pl. SJ Ex. 8).

The defendants' position is apparently that they "are entitled to rely on information from creditors from whom the debt is purchased at the time of the purchase that the debt is valid." Interrogatory No. 8 (Pl. SJ Ex. 7); see also Interrogatory No. 6 (id.). They certainly are entitled to rely on this information for their own internal purposes if they wish to do so, but they are not

entitled to offer this fact as their principal evidence in support of their claim against Ms. Holley. And they are not entitled to rely on that information to obtain a binding arbitration award against a person who does not owe them any money.

The undisputed evidence shows that the defendants had ample reason to check their facts before proceeding in this matter. In the spring of 2006, after receiving letters from the Moore Law Firm, Ms. Holley telephoned that office and advised the person that she spoke with that this was not her account. Holley Declaration, ¶5. After receiving the arbitration claim, Ms. Holley had a number of additional telephone conversations with people at the Moore Law Firm in which she repeated that this was a mistake and that this was not her account. Holley Declaration, ¶¶7, 8. In mid-July, 2006, Ms. Holley's attorney wrote to Ms. Hill and enclosed detailed information asserting, again, that this was not her account. Pl. SJ Ex. 2; Wayland Declaration, ¶¶3, 4. He asked for any evidence which might show that Ms. Holley was incorrect in her claim. He never received an answer. Wayland Declaration, ¶5. The defendants had been repeatedly placed on notice, therefore, that Ms. Holley disputed her liability for this debt. In light of this information, it would have been reasonable for them to seek documents or other evidence to establish that they had a valid claim before proceeding. They did not do this. Instead, they persisted with their collection efforts. Only after learning that a lawsuit had been filed and that a preliminary injunction was being sought barring them from proceeding further with their arbitration action did they abandon their collection efforts. Even then, they obtained a dismissal of the arbitration claim "without Prejudice," preserving their right to try again at some time in the future. Pl. SJ. Ex. 4.

The filing of the arbitration claim and the use of a sworn statement containing incorrect information in these circumstances are clearly FDCPA violations. The arbitration claim, which

Ms. Hill swore "under penalty of perjury" was accurate, contained false, deceptive, and misleading representations in violation of §1692e. Specifically, it contained a "false representation of . . . the character, amount or legal status of [a] debt" in violation of §1692e(2)(A), and it is "the use of [a] false representation or deceptive means to collect or attempt to collect [a] debt," in violation of §1692e(10). Further, by seeking to invoke the procedures of arbitration when Ms. Holley had never agreed to arbitration, denying Ms. Holley her right to a court hearing and a jury, with all the accompanying procedural protections, the defendants attempted to use an unfair and unconscionable means to collect or to attempt to collect a debt in a manner not permitted by law, in violation of §1692f(1).

It should be noted that in claims under §1692e, the FDCPA is a strict liability statute. "A consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Under §1692e, "Debt collectors may not make false claims, period." *Id.* Ignorance is no excuse and this provision applies "even when a false representation was unintentional." *Turner v. J.V.D.V. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006). The burden is therefore on the debt collect to take care that their claims are in fact well-founded. The defendants in this case failed to do that.

In a number of cases decided in the Northern District of Illinois, the courts have developed a set of guidelines for evaluating, under the FDCPA, the use of attorney affidavits in a collection action filed in court in support of a client's claims. These cases have made clear that "An attorney may verify a complaint if the attorney possess personal knowledge of the relevant

facts." *Young v. Meyer & Mjus, P.A.,* 1997 U.S. Dist. LEXIS 11469 (N.D. Ill. 1997). *Young* involved a situation very similar to that involved here. In that case, the court ruled that the attorney's review of a computer print-out provided by the creditor showing the debt was due "cannot provide the basis for an attorney's verification of the facts based on personal knowledge." The court went on to say that "The print-out would not be sufficient to prove the debt at trial. Accordingly, it cannot provide the basis for an attorney's verification of the facts based on personal knowledge." *Id.* See also *Bradley v. Fairbanks Capital Corp.*, 2003 U.S. Dist. LEXIS 7465 (N.D. Ill. 2003) (FDCPA claim rejected because attorney affidavit stated information was true and correct "based upon information supplied by Plaintiff" and not on the attorney's own knowledge); *O'Chaney v. Shapiro & Kreisman, LLC*, 2004 U.S. Dist. LEXIS 5116 (N.D. Ill. 2004) (FDCPA claim rejected where attorney signed verification based on attorney's "information and belief"[6]); *Lockett v. Freedman,* 2004 U.S. Dist LEXIS 6857 (N.D. Ill. 2004) (motion to dismiss denied where plaintiff alleged attorney verified complaint based on his personal knowledge without using limiting words such as "on information and belief"); see *Kelly v. Great Seneca Financial Corp.,* 2005 U.S.Dist. LEXIS 40192 (S.D. Ohio 2005) (motion to dismiss denied where debt collector defendant had sued plaintiff relying on a document with allegedly false information).

While these cases reach different conclusions based on the different facts presented, they all confirm a basic rule: a debt collector such as Ms. Hill violates the FDCPA if she submits a sworn statement, claiming to be based on her own personal knowledge, if she does not in fact

---

[6] "The words 'information and belief' convey to the reader that the person making the allegations does not necessarily have personal knowledge of the facts alleged." *Fisher v. Asset Acceptance, LLC*, 2005 U.S.Dist. LEXIS 14902 (N.D. Ill. 2005). Such words in an affidavit do not constitute acceptable evidence, for example, under Rule 56(e), which requires that affidavits be based on "personal knowledge." *Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000); *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir. 1985).

have the personal knowledge claimed and if her statement contains false information about a consumer's liability for a debt. This is especially important where, as here, there is a complete absence of admissible evidence to support the claim that the consumer actually owes the money.

There is no genuine dispute that Ms. Hill's affidavit contained false statements and that those statements were made for the purpose of collecting a debt. Ms. Holley is entitled, therefore, as a matter of law to the entry of a judgment that these defendants violated the provisions of the FDCPA. Accordingly, this Court should enter a partial summary judgment ruling that Ms. Hill and, through her actions, all the other defendants, have violated the FDCPA and are liable to Ms. Holley for such damages as she can show she is entitled to under that Act.

## Summary and Conclusion

In this case, the defendant debt collectors initiated an arbitration proceeding against the plaintiff, Ms. Kimberley N. Holley, seeking to collect an unpaid credit card debt by obtaining an arbitration award against her. The defendants knew that Ms. Holley claimed that this was not her account, yet they proceeded with their collection efforts despite the fact that they did not have the basic evidence required to prove that they have title to this debt and the right to collect it. More important, the defendants had no admissible evidence linking Ms. Holley to the credit card account. Their main basis for believing that this was her debt, and for the efforts they made to force her to pay it, was the fact that they were given her name by the company they bought the debt from, a company which was not even the original creditor. Ignoring these circumstances, they stated in the arbitration claim "under penalty of perjury" that they had the legal right to collect this debt, that this was Ms. Holley's account, and that she owed the amounts claimed. They also claimed that Ms. Holley had agreed to binding arbitration, which would have deprived

her of her right to have their claim heard by a court of law.  All of these claims were false.  It was only when they were faced with a lawsuit challenging these actions that the defendants finally put a stop to their collection efforts.

Ms. Holley now seeks a ruling by this Court that she does not in fact owe this debt and that the defendants' conduct in its efforts to force her to pay it anyway violated the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*.  For the reasons stated above, Ms. Holley asks this Court to grant her partial summary judgment on these issues.

Respectfully submitted,

KIMBERLEY N. HOLLEY
Plaintiff
By Counsel


s/*Edward M. Wayland*
Edward M. Wayland, Esq.
AOC # WAY004
P.O. Box 17
Montgomery, AL   36101
(334) 834-9901
(334) 264-8742 (fax)
e-mail:  edwayland@yahoo.com

Counsel for Plaintiff

CERTIFICATION

I hereby certify that true copies of the foregoing Plaintiff's Memorandum in Support of Her Motion for Partial Summary Judgment and of the related Declarations and Exhibits were filed with this Court using the EC/EMF filing system on this 27th day of April, 2007, and that this Court will electronically deliver a copy to Neal D. Moore, III, Esq., Ferguson, Frost & Dodson, LLP, 2500 Acton Road, Suite 200, Birmingham, AL 35243, counsel for defendants.

s/*Edward M. Wayland*
Edward M. Wayland

**Kimberley N. Holley v. Worldwide Asset Purchasing, L.L.C., et al.**
**United States District Court, Middle District of Alabama**
**Case No. 1:06-cv-677**


**List of Declarations and Exhibits**
**Submitted by the Plaintiff Kimberley N. Holley**
**In Support of Her Motion for Partial Summary Judgment**
**April 27, 2007**


Declaration of Kimberley N. Holley (4/25/07)

Declaration of Edward M. Wayland (4/27/07)

Exhibits

1. NAF Arbitration Claim (6/12/06)

2. Letter from Edward M. Wayland to Danielle M. Hill with
   enclosures and post office return receipt (7/11/06)

3. Letter from Edward M. Wayland to all defendants
   with post office return receipts (8/2/06)

4. Letter from NAF to Edward M. Wayland (8/8/06)

5. Letter from Janné Y. McKamey to Edward M. Wayland dated 8/7/06

6. Defendants' Responses to Plaintiff's Requests for Admissions

7. Defendants' Responses to Selected Interrogatories

8. Defendants' Responses to Selected Requests for Production of Documents

9. Excerpts from counsel letters (excerpt from a letter from Edward M. Wayland, counsel
   for plaintiff, to Neal D. Moore, counsel for defendants, dated January 19, 2007 and
   excerpt from a letter in reply from Mr. Moore to Mr. Wayland dated March 1, 2007).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Southern Division

KIMBERLEY N. HOLLEY,

      Plaintiff,

v.

                                          Civil Action No.
                                          1:06-cv-677-WKW

WORLDWIDE ASSET
      PURCHASING, LLC, et al.,

      Defendants.

## DECLARATION OF KIMBERLEY N. HOLLEY

I, Kimberley N. Holley, declare the following:

1. I am the plaintiff in the above-entitled action.

2. Sometime in the spring of 2006, I received at least two letters from the Law Offices of Gerald E. Moore and Associates concerning a claim that I had an unpaid debt based on a credit card contract with Household Bank, N.A. and asking that I pay this debt.

3. I never entered into or was a party to the credit card contract referred to by the Moore Law Firm, whether it involved Household Bank, N.A. or any other entity, and I do not owe the debt that Worldwide Asset Purchasing, LLC claims I owe.

4. I have never been shown any document or other evidence indicating that I owe this debt. I do not believe that any such document or other evidence exists.

5. After receiving the second letter, I telephoned the Moore Law Office. I told the person I spoke with that this was a mistake, that I was not the person who owed this debt, and that this was not my account.

6. In mid-June 2006, I received an arbitration claim from the Moore Law Office which had been submitted to the National Arbitration Forum (NAF). A true copy of the arbitration claim and the supporting documents I received is submitted with my motion for partial summary judgment as Plaintiff's Summary Judgment Exhibit 1.

7. After receiving the arbitration claim, I telephoned the Moore Law Office and advised the person I spoke with that this was not my account and that I did not owe the money claimed.

8. I had several telephone conversations with people from the Moore Law Office about this matter, in which I advised them that this was not my debt and that I did not owe the money claimed. They made it clear to me that they expected me to pay them this money and that they intended to pursue the arbitration claim.

9. When I was unsuccessful in getting the Moore Law Office to voluntarily drop the arbitration claim against me, I contacted an attorney, Edward M. Wayland. Mr. Wayland has acted on my behalf in this matter since that time.

I declare under penalty of perjury that the foregoing is true and correct based on my own personal knowledge. Signature before a notary public is dispensed with in accordance with the provisions of 28 U.S.C. §1746.

Kimberley N. Holley

Date: 4-25-07

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Southern Division

KIMBERLEY N. HOLLEY,

        Plaintiff,

v.

                                              Civil Action No.
                                           1:06-cv-677-WKW

WORLDWIDE ASSET
     PURCHASING, LLC, et al.,

        Defendants.

## DECLARATION OF EDWARD M. WAYLAND

I, Edward M. Wayland, declare the following:

    1. I am counsel for the plaintiff in the above-entitled action.

    2. In late June 2006, I received a telephone call from Kimberley N. Holley, the plaintiff

in the above-entitled action, regarding an arbitration claim which had been filed against her by

the defendants. The claim had been filed with the National Arbitration Forum (NAF) seeking

payment of money which she allegedly owed to Worldwide Asset Purchasing LLP (hereafter,

"Worldwide") based on a credit card account.

    3. On July 11, 2006, I mailed a letter to Danielle M. Hill, an attorney with the Law Firm

of Gerald E. Moore and Associates (hereafter "Moore Law Firm") about this claim. I wrote to

Ms. Hill, because her signature appeared on the arbitration claim as counsel for Worldwide. See

Pl. SJ Ex. 1, page 3. Among other things, I asked Ms. Hill to provide me with any evidence

indicating that Ms. Holley had agreed to submit this claim to arbitration. I advised her that if I

did not hear back from her within 15 days, then we would file suit to try to halt the arbitration

proceeding. A true copy of my letter to Ms. Hill is submitted as Pl. SJ Ex. 2. That exhibit also includes a true copy of the post office receipt relating to this letter showing the date of mailing and that the letter was delivered on July 13, 2006.

4. On July 11, 2006, I also sent a statement and a cover letter to the NAF regarding the arbitration claim. In these documents, I objected to the arbitration proceeding on the grounds that Ms. Holley had not agreed to arbitration. I also advised them that Ms. Holley did not agree that she owed the debt as claimed by the defendants. I included a copy of these documents in my letter of the same day to Ms. Hill. True copies of the documents described in this paragraph are included in Pl. SJ Ex. 2.

5. I received no response to my July 11, 2006 letter to Ms. Hill.

6. On August 1, 2006, I filed the Complaint in this action along with a motion for a preliminary injunction seeking an order staying the arbitration proceeding.

7. On August 2, 2006, I mailed copies of the Complaint and of the motion for a preliminary injunction and related documents to each of the defendants. True copies of the cover letter I sent with these documents and of the post office receipts showing the date of mailing and delivery to the defendants on August 4, 2006, are submitted as Pl. SJ Ex. 3.

8. The following week I received a letter from NAF dated August 8, 2006, advising me that the arbitration claim had been voluntarily dismissed by the defendants "without Prejudice." A true copy of this letter is submitted as Pl. SJ Ex. 4.

9. I later received a letter from Janné Y. McKamey of the Moore Law Office advising me that they were dismissing the arbitration claim. The letter was dated August 7, 2006, but the envelope was post-marked August 17, 2006. A true copy of this letter and the envelope it came in are submitted as Pl. SJ Ex. 5.

10.  I never received copies of any communication sent by the defendants to NAF about this matter other than the claim itself, which I received from Ms. Holley.  Other than the letter from Ms. McKamey dated August 7, 2006, I do not know what the defendants did to have the arbitration claim dismissed, and I do not know what they said to NAF about this matter.

11.  The documents submitted as Plaintiff's Summary Judgment Exhibits 6, 7 and 8 are true copies of the text of various discovery requests served on the defendants in this matter and of the text of the responses they gave to those discovery requests.

12.  Plaintiff's Summary Judgment Exhibit 9 contains an excerpt from a letter I sent to counsel for the defendants in this matter dated January, 19, 2007 raising certain questions about discovery and an excerpt from a letter he sent me in reply dated March 1, 2007.  These excerpts accurately re-state what was said in the original documents.

I declare under penalty of perjury that the foregoing is true and correct based on my own personal knowledge.  Signature before a notary public is dispensed with in accordance with the provisions of 28 U.S.C. §1746.

Edward M. Wayland

Date: 4/27/07

3

**IN THE**
## NATIONAL ARBITRATION FORUM

### CLAIM

---

Worldwide Asset Purchasing, LLC
c/o Law Offices of Gerald E. Moore & Assoc., P.C.
2253 Northwest Parkway
Suite 500
Marietta, GA  30067
USA

      **CLAIMANT,**

          **RE:**   Worldwide Asset Purchasing, LLC v Kimberly Holley
          **Forum File Number:**   FA0605000721187
          **Account No.:**   ███████████
          **Claimant Reference No.:**   01157233

Kimberly Holley
████████████
Dothan, AL  36301
USA

      **RESPONDENT(S),**

---

**RESPONDENT(S): THIS IS AN ARBITRATION CLAIM AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT WITH A WRITTEN RESPONSE.  IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE NATIONAL ARBITRATION FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU.**

For a Claim against Respondent(s), Worldwide Asset Purchasing, LLC states:

1.  By way of contract and retention and use of the credit card issued by Household Bank (SB), N.A. ("Household"), Respondent(s) became bound by the terms of the Household Credit Card Agreement ("Agreement") a true and correct copy is attached hereto as Exhibit "A".  Claimant is the successor in interest to said issuer Household by way of the purchase of the above-referenced account of Respondent(s).

2.  As stated in The Agreement, Exhibit "A":

    "We [Household] may sell, assign or transfer your Agreement and Account or any portion thereof without notice to you."

3.  The Agreement between the parties contained an arbitration provision that stated, in pertinent part:

    "You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to the arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed."



PLAINTIFF'S
EXHIBIT
**1**
(SJ)

WAPGH Arbitration Claim Form 001

4. Despite repeated attempts by both Worldwide Asset Purchasing, LLC and now its Counsel, the Law Office of Gerald E. Moore & Associates, P.C. to resolve this matter, Respondent(s) has/have not paid the amounts due.

5. Respondent(s) is/are in default under the terms of the Agreement and is/are now indebted to Worldwide Asset Purchasing, LLC, as successor in interest to Household. On May 31, 2004, the Respondent(s) came into default. Taking into consideration all payments, credits and/or setoffs since that time, Respondent(s) owe(s) the principal amount of $973.43 to date.

6. Respondent(s)'s account charged-off with a default interest rate of 23.90%. Worldwide Asset Purchasing, LLC, as successor in interest to Household, has accrued interest at this rate as the Agreement entitles.

7. Respondent(s) is/are indebted to Worldwide Asset Purchasing, LLC, as successor in interest to Household, for interest accrued since the time of charge-off in the amount of $455.24.

8. Pursuant to the choice of law provision in the Agreement the laws of Nevada govern this arbitration proceeding:

   "This agreement and your Account will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada."

9. And as such, pursuant to NV ST 69.030, Claimant is entitled to recover attorneys' fees: "the prevailing party in any civil action at law in the justices' courts of this State shall receive, in addition to the costs of court as now allowed by law, a reasonable attorney fee".

10. Therefore, the claimant may seek reasonable attorney's fees as the Cardmember agreement states the following:

    "You will pay our court costs, reasonable attorneys' fees and other collection costs related to the default to the extent permitted by the law in the state in which you reside"

WHEREFORE, Claimant prays that an Award is granted against Respondent in the following manner:
   a. For the principal amount reflected in Paragraph 5 in the amount of $973.43,
   b. For interest at the time of filing in the amount of $455.24 and interest accrued since the time of filing at the rate of 23.90%,
   c. For reasonable attorney's fees in the amount of $214.30, pursuant to NV ST 69.030,
   d. For any and all fees associated with this action,
   e. For any and all costs associated with the service of process of this action,
   f. For such other and further relief as the court deems just and proper.

The undersigned asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are accurate.

RESPONDENT(S) MUST SEND A WRITTEN RESPONSE TO THE NATIONAL ARBITRATION FORUM, WITH A COPY TO THE CLAIMANT, WITHIN 30 DAYS OR AN AWARD MAY BE ENTERED IN FAVOR OF THE CLAIMANT.

Danielle M. Hill, Esq.
For Claimant

Claimant Contact:
Law Offices of Gerald E. Moore & Assoc., P.C.
ATTN: Gerald E. Moore
2253 Northwest Parkway
Suite 300B
Marietta, GA 30067
(866) 252-9284

THIS COMMUNICATION IS FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**SUMMARY OF ACCOUNT INFORMATION**

05/31/2006 - KIMBERLY HOLLEY

    ACCOUNT STATUS REPORT

Date Filed:              05/31/2006

Account Number:

Primary Account Holder:    KIMBERLY HOLLEY

Address:

                          Dothan, AL 36301

Secondary Account Holder:

Address:

                       '

Principal Balance:       $973.43

Interest Rate:          23.9

INFORMATION DRAWN FROM ACCOUNT RECORDS AND CURRENT AS OF THE DATE FILED

IN THE
## NATIONAL ARBITRATION FORUM

### CERTIFICATE OF SERVICE

---

Worldwide Asset Purchasing, LLC
c/o Law Offices of Gerald E. Moore & Assoc., P.C.
2253 Northwest Parkway
Suite 500
Marietta, GA 30067
USA

### CLAIMANT,

RE:  Worldwide Asset Purchasing, LLC v Kimberly Holley
**Forum File Number:**    FA0605000721187
**Account No.:**    ████████████
**Claimant Reference No.:**    01157233

Kimberly Holley
████████████
Dothan, AL 36301
USA

### RESPONDENT(S),

---

This is to certify that I have this day served Respondent or his attorney in the foregoing matter with a copy of this Claim by depositing for delivery via United Postal Service a copy of the same in a properly addressed envelope with adequate postage thereon.

This ___ day of _____, 2006.

Danielle M. Hill, Esq.
For Claimant

Claimant Contact:
Law Offices of Gerald E. Moore & Assoc., P.C.
ATTN:  Gerald E. Moore
2253 Northwest Parkway
Suite 300B
Marietta, GA 30067
(866) 252-9284

# ORCHARD BANK®

### Orchard Bank Visa®/MasterCard®
## CARDMEMBER AGREEMENT AND DISCLOSURE STATEMENT
AG1347 (7/01)

This is a replacement to your current Orchard Bank Cardholder Agreement and Disclosure Statement and, except for the changes indicated by shading, is effective immediately. The changes indicated by shading will be effective with your billing cycle ending on or after October 4, 2001. Please review this carefully and keep it with your important papers.

## AGREEMENT TO TERMS—USE OF ACCOUNT—DEFINITION OF PARTIES

In this Cardmember Agreement and Disclosure Statement, and the enclosed sheet entitled "Important Information Regarding Your Account" (collectively, the "Agreement"), and in your monthly statements, the words "you" and "your" refer to all persons named on the credit card application, Account, credit card or acceptance certificate; the word "Card" means a single credit card or two or more credit cards we have issued to you under this Agreement; the words "we", "us", and "our" refer to Household Bank (SB), N.A., Las Vegas, Nevada; and the word "Account" or "Card Account" means the open end line of credit we have established for you and which can be accessed by your Card or other means approved by us. You may not use your credit card checks (if applicable) to make payments to us or any of our affiliates.

This Agreement (and any amendments) covers your Account with us, and you and we will be bound by it from the time you receive your Card or Agreement. You agree to use this Account only for personal, family, household or charitable purposes. Your Card and Account may only be used for valid and lawful purposes. If you use, or allow someone else to use, the Card or Account for any other purpose, you will be responsible for such use and may be required to reimburse us and Visa International or MasterCard International Incorporated for all amounts or expenses either we or Visa or MasterCard pays as a result of such use. You may cancel this Account before using it without paying any fees. If your Account is a joint Account, you and your joint Accountholder each promise to pay and are jointly and individually responsible for all amounts due under this Agreement regardless of any divorce or other legal proceedings or any agreement that may effect liability between you. If any of you gives us notice disclaiming liability for amounts owed under this Agreement, we may close the Account. In that event, you may continue to pay the outstanding balance under the terms of this Agreement. However, you will not be able to make any new charges on the Account.

## PROMISE TO PAY

You promise to pay according to the terms that we require or request for: (a) credit extended by us to you or to anyone whom you permit to use this Account; (b) Finance Charges, late payment fees, and other administrative charges (e.g., returned payment fee, overlimit fee, and research charge) provided in this Agreement; (c) collection costs, and attorneys' fees as permitted by applicable law; and (d) credit in excess of your credit limit that we may extend to you.

## MAXIMUM CREDIT LIMIT

You will not exceed the credit limit that we set for you. You may obtain credit by any means approved by us until the total unpaid balance of your Account reaches your credit limit. At our discretion, we may limit the amount of any type of transaction on your Account, including Cash Advances. You agree that any transaction limitations may change at any time without notice to you as long as the limit is applied to all or a substantial por-

tion of our accounts. Credit card and other forms of access checks may be limited. You agree not to allow your total unpaid balance, including Finance Charges and other charges, to exceed your credit limit established by us from time to time. We are not required to make Cash Advances (including accepting credit card checks or Automated Teller Machine ("ATM") transactions), or extend credit for purchases at your request if you have exceeded your credit limit, but if we do, you agree to pay us that excess amount, any overlimit fee, and applicable Finance Charges, immediately. We are not required to make advances which exceed the amount of your credit limit even if your Account has additional credit available. When you make a payment, your available credit may not reflect that payment for up to 14 days.

### STATEMENTS

We will send you a statement covering each billing cycle in which you have a balance in excess of $1 showing (as of the billing cycle): (a) payments, credits, purchases, Cash Advances, Finance Charges, and all other charges made to your Account; (b) the minimum payment you must make (called the "Minimum Payment") and the date it is requested; and (c) your available credit.

### PAYMENT

Each month we must receive the Minimum Payment by the Payment Due Date reflected on your statement. The Payment Due Date will be 25 days after the close of your billing cycle. If you wish, you may pay more than the Minimum Payment and at any time you may pay the entire amount owed (called "New Balance").

For the amount of your Minimum Payment each month, see the enclosed sheet entitled "Important Information Regarding Your Account."

All payments by mail must be made by check or money order. You agree that any payment you make may be returned to you without applying it to your Account and without presentment or protest, for any reason, including if the check or money order is: (1) not drawn on the U.S. Post Office or a financial institution located in the United States; (2) missing a signature; (3) drawn with different numeric and written amounts; (4) restrictively endorsed; (5) post dated; (6) not payable to Bankcard Services; (7) not drawn in U.S. dollars on funds on deposit in the U.S.; (8) not paid upon presentment; or (9) drawn on a credit card access or other check issued by Household Bank or its affiliates. You agree to pay any bank or financial institution collection fees we incur for any check payments made in U.S. dollars drawn on a financial institution not located in the United States. All payments under this Agreement must be received at the address specified on your billing statement. **Disputed payments, including those marked "Payment in Full" or otherwise restrictively endorsed must be mailed to the Customer Service address shown on your monthly statement.** We can accept late or partial payments or checks or money orders marked Payment in Full or otherwise restrictively endorsed without waiving our right to immediate payment in full or losing any of our rights under this Agreement.

### HEALTH CLUB BALANCE

When you transfer your health club membership fee to this account, the amount you transfer will be posted to your Account as of the date the transfer is made and will appear on your statement as a Cash Advance (no transaction charge will be assessed on this balance).

### FINANCE CHARGES

Please see the enclosed sheet entitled "Important Information Regarding Your Account."

### ANNUAL FEE

The amount of your Annual Fee is reflected on the enclosed sheet entitled "Important Information Regarding Your Account." You agree to pay a non-refundable Annual Fee for each year your Account is open or closed with a balance in an amount to be set by us from time to time. You agree that the Annual Fee will be charged to your Account.

The Annual Fee compensates Household Bank, in part, for cardmember services provided or made available to you throughout the membership year which includes but is not limited to the right of the cardmember to access customer service staff, the right of the cardmember to withhold payment of disputed charges, and the processing and mailing of the monthly billing statement.

## LATE PAYMENT FEE, RETURNED PAYMENT FEE, OVERLIMIT FEE

Please see enclosed sheet entitled "Important Information Regarding Your Account."

## RESEARCH CHARGE

You agree to pay $7 for each sales slip copy you request, $3 for each statement copy you request, and $10 for each application copy you request.

## REPLACEMENT FEE

If you ask us to replace a Card that is lost, stolen, or damaged, or if you ask for a replacement Personal Identification Number (PIN) to facilitate access to Automated Teller Machines, you agree to pay us a Replacement Fee of $5. If you request that we send a replacement card to you on a rush basis, you will be charged our current fee for this service.

## REINSTATEMENT FEE

If you ask us to reopen your closed or blocked Account, and we approve your request, you agree to pay us a Reinstatement Fee of $29.

## APPLICATION OF PAYMENTS

Your payments will be allocated in a manner we determine in accordance with applicable law, and may change from time to time.

## CHANGE OF TERMS (including Finance Charges)

SUBJECT TO APPLICABLE LAW, WE MAY CHANGE OR TERMINATE ANY TERM OF THIS AGREEMENT OR ADD NEW TERMS AT ANY TIME, INCLUDING WITHOUT LIMITATION ADDING OR INCREASING FEES, INCREASING YOUR MONTHLY MINIMUM PAYMENT AND INCREASING THE RATE OR AMOUNT OF FINANCE CHARGE, OR CHANGING THE METHOD OF COMPUTING THE BALANCE UPON WHICH FINANCE CHARGES ARE ASSESSED. PRIOR WRITTEN NOTICE WILL BE PROVIDED TO YOU WHEN REQUIRED BY APPLICABLE LAW. CHANGES MAY APPLY TO BOTH NEW AND OUTSTANDING BALANCES. WE MAY ASSIGN YOUR ACCOUNT TO OUR AFFILIATES OR TO SOME OTHER FINANCIAL INSTITUTION AT ANY TIME.

## DEFAULT AND TERMINATION OF AGREEMENT

You will be in default under this Agreement upon: (a) your failure to make at least the Minimum Payment when due; (b) your violation of any other provision of this Agreement; (c) your death; (d) your becoming the subject of bankruptcy or insolvency proceedings; (e) your becoming the subject of attachment, foreclosure, repossession, lien, judgment or garnishment proceedings; (f) your failure to supply us with any information we reasonably deem necessary; (g) your supplying us with misleading, false, incomplete or incorrect information; (h) our receipt of information that you are unwilling or unable to perform the terms or conditions of this Agreement; (i) our receipt of information from third parties, including credit reporting agencies, which indicates a serious delinquency or charge-off with other creditors; (j) your default under any other loan or agreement you have with us or any of our affiliates; (k) your moving out of the U.S. or providing us with a non-U.S. mailing address; (l) your becoming incompetent; (m) your exceeding your credit limit; (n) your payment is returned unsatisfied by your bank or financial institution for any reason; or (o) any credit card check is returned unpaid by us. After your default, your Account balance will continue to accrue Finance Charges at the contract rate. Upon default, we have the right to terminate or suspend your credit privileges under this Agreement, to change the terms of your Account and this Agreement, to require you to pay your entire Account balance including all accrued but unpaid charges immediately; and to sue you for what you owe. You will pay our court costs,

reasonable attorneys' fees and other collection costs related to the default to the extent permitted by the law in the state in which you reside. Upon default, we will apply your payments first to attorneys' fees and then to principal and unpaid Finance Charges. We may notify your health club of your default and transfer back to your health club any remaining balance on your health club membership fee, in which case the original terms of your loan from the health club may be reinstated. Your health club may also elect to cancel your health club membership.

## CREDIT AUTHORIZATIONS

Some purchases will require our prior authorization and you may be asked by the merchant to provide identification. If our authorization system is not working, we may not be able to authorize a transaction, even if you have sufficient available credit. We will not be liable to you if any of these events happen. We are not responsible for the refusal of any merchant to accept or honor your Card.

## CARD RENEWAL

Cards are issued with an expiration date. We have the right not to renew your Card for any reason.

## CARD CANCELLATION

We can terminate or reduce your credit limit at any time and for any reason, subject to the requirements of applicable law. Balances outstanding under this Agreement when your credit limit is reduced or terminated will continue to accrue Finance Charges until paid in full and are subject to all the terms and conditions of this Agreement. You agree to return to us or destroy your Card(s) and any unused credit card checks and we will not honor any credit card check written on your Account if we receive the check after your Account is cancelled.

## CLOSING YOUR ACCOUNT

You can cancel or close your Account by writing to us at P.O. Box 80084, Salinas, CA 93912. Your notice becomes effective within ten days after we receive it. If you cancel the Account, you must immediately pay everything you owe us, including any amounts owed but not yet billed to you. If you do not pay us immediately, outstanding balances will continue to accrue finance and other charges and be subject to the terms and conditions of this Agreement. You also agree to return to us or destroy your Card(s) and any unused credit card checks. We will not honor any credit card check written on your Account if we receive the check after your Account is closed.

## LIABILITY FOR UNAUTHORIZED USE

You should retain copies of all charge slips until you receive your statement, at which time you should verify that the charges are true and the amounts unaltered. You may be liable for the unauthorized use of your credit card. You will not be liable for unauthorized use that occurs after you notify us of the loss, theft or possible unauthorized use. Notification must be given by writing us immediately upon learning of the loss, theft or possible unauthorized use at P.O. Box 80084, Salinas, CA 93912 or calling us at the telephone number listed on your billing statement. In any case, your liability for unauthorized use of your credit card will not exceed $50. However, unauthorized use does not include use by a person to whom you have given the credit card or authority to use the Account, and you will be liable for all use by such a user. To terminate this authority, you must retrieve the credit card from the previously authorized user and return it to us at the address mentioned above along with a letter explaining why you are doing so.

## SECURITY DEPOSIT (if applicable).

If you have completed a Security Agreement for your Card Account, you have given us funds to secure all or certain of the balances owing on your Card Account. You have requested and authorized us to use the funds to open an FDIC-insured Savings Deposit Account ("Deposit Account") with Orchard Bank, a division of Household Bank, f.s.b. in your name.

To secure payment of all amounts you owe on the Card Account, you assign, pledge, and grant to us a first priority security interest under the Oregon Uniform Commercial Code in the Deposit Account and in all renewals, additions, substitutions, and proceeds thereto and thereof, and the interest accrued thereon, as provided in the Security Deposit Account Agreement you signed and delivered to us along with the funds. In connection with your Security Agreement, you certified that the Deposit Account is exempt from backup withholding under applicable state and federal law. The Deposit Account will be in your name, and will accrue interest at the rate established for savings deposit Accounts from time to time. You may not make withdrawals from the Deposit Account.

Upon cancellation of your Card Account, either by you or by us, and after any required notice, you authorize us to calculate and deduct from the Deposit Account the balance of your Card Account and then, subject to any claims or applicable laws, we will send you any remaining proceeds in the Deposit Account at the last address shown for you on our records.

If your Card Account has both secured and unsecured Credit Limits, and you ask us to return the Deposit Account to you, we will establish a new Credit Limit for your Account, providing that your Account qualifies to release the secured portion of your Account. We will return the Deposit Account to you, provided that we first will deduct from the Deposit Account and apply to your Card Account balance an amount equal to the amount, if any, by which your total Card Account balance exceeds your new Credit Limit.

## CHANGE OF NAME, ADDRESS, TELEPHONE NUMBER OR EMPLOYMENT

You agree to give us prompt notice of any change in your name, mailing address, telephone number or place of employment.

## FOREIGN TRANSACTIONS

If you effect a transaction with your MasterCard card in a currency other than U.S. dollars, MasterCard International Incorporated will convert the charge into a U.S. dollar amount. MasterCard International will use its currency conversion procedure, which is disclosed to institutions that issue MasterCard cards. Currently, the currency conversion rate used by MasterCard International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International. The currency conversion rate used by MasterCard International on the processing date may differ from the rate that would have been used on the purchase date or cardholder statement posting date.

## APPLICABLE LAW

This Agreement and your Account will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada. This Agreement is entered into in Nevada and all credit under this Agreement will be extended from Nevada. All terms and conditions of this Agreement including change of terms or applicable law provisions, the Finance Charge, late payment fee, returned payment fee, overlimit fee, credit line increase fee finance charge, monthly maintenance fee finance charge and research charges provided for in this Agreement are deemed to be interest under this Agreement and material to the determination of the Finance Charge.

## ASSIGNMENT OF ACCOUNT

We may sell, assign or transfer your Agreement and Account or any portion thereof without notice to you. You may not sell, assign or transfer your Account.

## CERTAIN PRIVACY PRACTICES

You agree that from time to time we may receive credit information concerning you from others, such as stores, other lenders, and credit reporting agencies, and that we may use this information to cancel or suspend your credit privileges under this Agreement even if you are

not in default with us. You agree that the Department of Motor Vehicles may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardmembers. For additional information regarding our privacy practices, please refer to our Privacy Statement previously provided to you.

## CREDIT REPORTING

If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a credit reporting agency. If any specific information related to your Account transactions or credit experience with us is inaccurate, you may notify us and request us to correct the inaccurate information (after confirmation of the alleged error) reported to any credit reporting agency by writing to us at P.O. Box 19360, Portland, OR 97280.

## WAIVER

We may choose to delay enforcing or waive any of our rights under this Agreement in certain situations. We can delay enforcing or waive any of our rights without affecting our other rights. If we waive a right, we do not thereby waive the same right in other situations.

## UPDATED FINANCIAL AND OTHER INFORMATION

Upon request, you agree to promptly give us accurate financial and other information about yourself.

## SEVERABILITY

If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule or regulation, all other provisions of this Agreement will remain valid and enforceable.

## ARBITRATION

You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below. Our address for service of process under this provision is Bankcard Services, P.O. Box 80084, Salinas, CA 93912. Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the arbitration administrator up to the amount

of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction. This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | JAMS |
|---|---|---|
| P.O. Box 50191 | 1150 Connecticut Ave., NW, 6th Floor | 45 Broadway |
| Minneapolis, MN 55405 | Washington, DC 20036-4104 | New York, NY 10005 |
| (800) 474-2371 | (800) 925-0155 | (800) 352-5267 |
| www.arb-forum.org | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer Disputes (Claims under $10,000) Commercial Arbitration Rules (all other claims). | Financial Services Arbitration Rules and Procedures. |

---

## WHAT TO DO IF THERE'S AN ERROR IN YOUR BILL

### YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your Account rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:
* Your name, account number and signature.

# EDWARD M. WAYLAND
## COUNSELOR AT LAW

P.O. BOX 17
492 SOUTH COURT STREET
MONTGOMERY, ALABAMA 36101
(334) 834-9901

(334) 264-8742 *Fax*                                    *E-mail* edwayland@yahoo.com

July 11, 2006

Danielle M. Hill, Esq.
Law Offices of Gerald E. Moore & Associates, P.C.
2253 Northwest Parkway, Suite 300B
Marietta, GA 30067

Re: Claim of Worldwide Asset Purchasing, LLC
NAF File No. FA0605000721187

Dear Ms. Hill:

I am writing to you on behalf of Ms. Kimberley Holley, who was named as the respondent in the above-described arbitration claim filed by your office with the National Arbitration Forum. Enclosed is a letter which I have sent to the NAF concerning this matter.

As you will see from this letter, Ms. Holley denies that she was ever a party to the contract on which this claim is based. Further, Ms. Holley has advised your office of this fact. Despite this, and despite the fact that your office apparently has no evidence to demonstrate that Ms. Holley owes the debt claimed, your office and Worldwide have pressured her to pay this debt. Now your office has filed an arbitration action in a further attempt to force Ms. Holley to pay this money.

If you have any evidence indicating that Ms. Holley agreed to arbitration of this dispute, I ask that you provide it to me. If you conclude that you do not have such evidence, then I ask that you dismiss the arbitration proceeding, with prejudice. I ask that you do one of these two things within 15 days of the date of this letter, i.e., on or before July 26, 2006.

If you do not do either of these things within that time, then it is our intention to file a lawsuit in the United States District Court for the Middle District of Alabama seeking a declaratory judgment that that Ms. Holley has not consented to arbitration of this dispute and that she will not be legally bound by any ruling rendered against her in an arbitration proceeding. If necessary, we will also seek an order staying further proceedings in the arbitration pending a final ruling by the court on this issue.

PLAINTIFF'S
EXHIBIT
2
(SJ)
PENGAD 800-631-6989

Danielle M. Hill, Esq.
Law Offices of Gerald E. Moore & Associates, P.C.
July 11, 2006
Page 2
-----------------------------------

  I also wish to advise you that it is Ms. Holley's intention to file a lawsuit against Worldwide Asset Purchasing, LLC raising claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., and the Alabama Deceptive Trade Practices Act, Code of Alabama, §8-19-1, et seq., among other things, based on its actions in seeking to collect this debt from her.  If we need to litigate the issue of the arbitration, then it is likely we will join these claims together in the same proceeding.

  If you would like to discuss this situation with me further, please do not hesitate to call me.

        Sincerely Yours,


        Edward M. Wayland


cc:  Ms. Kimberley Holley
  National Arbitration Forum

# EDWARD M. WAYLAND
## COUNSELOR AT LAW

P.O. BOX 17
492 SOUTH COURT STREET
MONTGOMERY, ALABAMA 36101
(334) 834-9901

(334) 264-8742 *Fax*

*E-mail* edwayland@yahoo.com

July 11, 2006

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405-0191
By first class mail and
by fax to 952-345-1160

Re: Claim filed with NAF by Worldwide Asset Purchasing, LLC
Forum File No. FA0605000721187

Dear Sir/Madam:

I am writing on behalf of Ms. Kimberley Holley, who has been named as the respondent by Worldwide Asset Purchasing, LLC, in the above-described claim. Ms. Holley received a copy of this claim, with supporting documents, on June 16, 2006.

Ms. Holley objects to arbitration of this claim. As she has advised the claimant's attorneys, Ms. Holley was never a party to the credit card agreement which is the basis of this claim. She never requested the credit card referred to, she never used that credit card, she never agreed to any terms with Household Bank or any other entity governing this credit card, and she never consented to submit any disputes relating to this agreement to arbitration. The documents the claimant has submitted with its claim do not offer any evidence suggesting that Ms. Holley was ever a party to this credit card agreement. The only evidence the claimant has offered on this point is the claimant's own unsubstantiated statement that this is so.

Despite the fact that the claimant and its attorneys have been advised that Ms. Holley was not a party to this alleged credit card agreement, and despite the fact that the claimant apparently has no proof indicating otherwise, the claimant and its attorneys have attempted to pressure and persuade Ms. Holley to pay this debt. Now they are escalating their tactics by using the processes of the NAF. Absent a court ruling requiring arbitration of this matter, Ms. Holley does not intend to participate in this arbitration proceeding. I would suggest, however, that the NAF, to safeguard the integrity of its own procedures, may want to scrutinize the claimant's evidence

National Arbitration Forum
July 11, 2006
Page 2
-------------------------------------

in support of its purported claim against Ms. Holley, and its allegation that she has agreed to arbitration, with care. I have prepared a paragraph by paragraph response to the claim filed against Ms. Holley, which I am enclosing with this letter in the hope that this information will be useful to NAF as it evaluates the way the claimant has used its procedures.

I have written to the claimant's attorneys and asked them to produce any evidence they may have showing that Ms. Holley has agreed to submit disputes regarding this account to arbitration. We do not believe there is any such evidence, but we believe the claimant should be given this opportunity. If, as we expect, the claimant is unable to produce any such evidence, then we are asking the claimant to dismiss the arbitration proceeding it has initiated with the NAF, with prejudice. We are asking the claimant to either provide this evidence to us or to dismiss the arbitration proceeding within 15 days of the date of our letter to them, i.e., on or before July 26, 2006.

If the claimant fails to produce evidence to support its claim that Ms. Holley has agreed to arbitration in this matter and also fails to dismiss the pending arbitration proceeding, then it is Ms. Holley's intention to file a lawsuit in the United States District for the Middle District of Alabama seeking a declaratory judgment that this matter should not be submitted to arbitration. We will also seek a stay of the arbitration proceeding pending a final resolution of this issue by the court if it appears that the claimant intends to proceed with the arbitration prior to a court ruling on this issue. Such a stay would avoid unnecessary prejudice to Ms. Holley's rights if the court should for some reason conclude that arbitration is appropriate in this case. It seems likely that the court would grant such a stay, especially if the claimant has still failed to offer any evidence that Ms. Holley has agreed to arbitration.

In our letter, we also advised the claimant that it is Ms. Holley's intention to pursue claims against it in federal court under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, and the Alabama Deceptive Trade Practices Act, Code of Alabama, §8-19-1, *et seq.*, among other things. If it is necessary to seek a ruling on the arbitration proceeding, these claims will likely be joined together in the same action with the arbitration issue.

A copy of our letter to the claimant concerning these matters is enclosed. I have also sent the claimant's attorney a copy of this letter and of the enclosures.

If you have any questions about any of this, please do not hesitate to contact me.

National Arbitration Forum
July 11, 2006
Page 3
-------------------------------------

                                        Sincerely Yours,


                                `       Edward M. Wayland


cc:  Ms. Kimberley Holley
     Danielle M. Hill, Esq.

Date: July 11, 2006

To: National Arbitration Forum

From: Edward M. Wayland
    Counsel for Kimberley Holley

Re: Claim of Worldwide Asset Purchasing, LLC against Ms. Holley
    NAF File No. FA0605000721187


Without waiving her objection to this arbitration, as described in my letter to NAF dated July 11, 2006, Ms. Holley states the following regarding the claim submitted by Worldwide Asset Purchasing, LLC:

1. The allegations in paragraph 1 of the claim are denied. Ms. Holley was never a party to the contract with Household Bank, N.A. described by the claimant. Ms. Holley is without sufficient information to admit or deny the allegation that the claimant is the lawful successor in interest to Household Bank on this contract, and therefore denies that allegation as well.

2. Ms. Holley agrees that the statement quoted in paragraph 2 of the claim is an accurate quote from the document submitted by the claimant as Exhibit A to its claim. She denies that she was a party to that agreement.

3. Ms. Holley agrees that the statement quoted in paragraph 3 of the claim is an accurate quote from the document submitted by the claimant as Exhibit A to its claim. She denies that she was a party to that agreement.

4. With regard to the allegations in paragraph 4 of the claim, Ms. Holley agrees that the claimant has contacted her in an effort to get her to pay this alleged debt. She has advised the claimant that she was not a party to the underlying contract and that any sums owing under this agreement are not owed by her. The claimant has refused to provide Ms. Holley with any

documents or other proof establishing her responsibility for this debt, and it has ignored Ms.

Holley's repeated efforts to explain the situation. The claimant has instead insisted that she pay

money she does not owe. The claimant's action in filing an arbitration proceeding with the NAF

against a person who was not a party to the agreement is a continuation of these oppressive,

dishonest and unlawful collection tactics.

5. Ms. Holley denies the allegations in paragraph 5 of the claim for the reasons

previously stated.

6. Ms. Holley denies the allegations of paragraph 6 of the claim insofar as they allege

that she was a party to the contract which is the subject of this dispute and that she owes any debt

to the claimant. Ms. Holley is without sufficient information to admit or deny the remainder of

the allegations of paragraph 6 and accordingly they are denied.

7. Ms. Holley denies the allegations of paragraph 7 of the claim.

8. Ms. Holley agrees that the statement quoted in paragraph 8 of the claim is an accurate

quote from the document submitted by the claimant as Exhibit A to its claim. She denies that

she was a party to that agreement.

9. To the extent that paragraph 9 of the claim alleges that Ms. Holley owes the claimant

any sums, whether for attorney's fees, costs or otherwise, those allegations are denied.

10. To the extent that paragraph 10 of the claim alleges that Ms. Holley owes the

claimant any sums, whether for attorney's fees, costs or otherwise, those allegations are denied.

The respondent observes that the allegations in paragraph 10 of the claim appear to be

inconsistent with the allegations in paragraph 9 of the claim.

In general, Ms. Holley denies that the claimant is entitled to an award of any sums from

her, for the reasons stated above.

I hereby certify that a true copy of the foregoing document was sent, along with a copy of my letter dated July 11, 2006 to NAF, to Danielle M. Hill, Esq., Law Offices of Gerald E. Moore & Associates, P.C., 2253 Northwest Parkway, Suite 300B, Marietta, GA  30067, on this 11th day of July, 2006.

Edward M. Wayland



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

MARIETTA GA 30067

| | | |
|---|---|---|
| Postage | $ | $0.63 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $4.88 |

Sent To
DANIELLE M. HILL, ESQ, SERVICE MORE AGENT
Street, Apt. No.; or PO Box No. 2253 NORTHWEST Pkwy, SUITE 300B
City, State, ZIP+4 MARIETTA, GA 30067

PS Form 3800, June 2002                See Reverse for Instructions

7006 0100 0002 0279 2750

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

DANIELLE M. HILL, ESQ.
LAW OFFICES OF GERALD E.
MOORE + ASSOCIATES, P.C.
2253 NORTHWEST PARKWAY
SUITE 300B
MARIETTA, GA 30067

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *James Veal*      ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
James Veal                        7/1/6

D. Is delivery address different from item 1?  ☑ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0002 0279 2750

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EDWARD M. WAYLAND
## COUNSELOR AT LAW

P.O. BOX 17
492 SOUTH COURT STREET
MONTGOMERY, ALABAMA 36101
(334) 834-9901

(334) 264-8742 *Fax*

*E-mail* edwayland@yahoo.com

August 2, 2006

To: Worldwide Asset Purchasing, LLC
    Law Offices of Gerald E. Moore
    Gerald E. Moore, Esq.
    Danielle M. Hill, Esq.

Re: Kimberley N. Holley v. Worldwide Asset Purchasing, LLC, et al.
        Civil Action No. 2:06-cv-677

From: Edward M. Wayland

This is to advise you that a lawsuit was filed against you on August 1, 2006 by Ms. Kimberley N. Holley in the United States District Court for the Middle District of Alabama. I am enclosing with this cover memo the following documents:

1. Complaint
2. Motion for a Preliminary Injunction seeking a temporary stay of the NAF arbitration proceeding filed against Ms. Holley
3. Declaration of Kimberley N. Holley, with Exhibit.
4. Plaintiff's Memorandum in Support of Her Motion for a Preliminary Injunction
5. Cover letter to the Clerk of the Court.

I ask that you advise me as soon as possible who will be representing each defendant so that I may communicate with that person about scheduling a date for oral argument on the preliminary injunction motion.

Naturally, if you are willing to have the court enter a stay order by consent of all parties, I would be pleased to discuss that. Such a move would save time and expense on all sides.

cc: Ms. Kimberley N. Holley
    National Arbitration Forum



PLAINTIFF'S
EXHIBIT
3
(SJ)

PENGAD 800-631-6989

**U.S. Postal Service**

**CERTIFIED MAIL™ RECEIPT**

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

MARIETTA GA 30067

| | | |
|---|---|---|
| Postage | $ | $2.07 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.32 |

Sent To
WORLDWIDE ASSET PURCHASING LLC
Street, Apt. No.; or PO Box No. C/O LAW OFFICES OF GERALD MOORE
2253 NORTHWEST PKWY, STE 30B
City, State, ZIP+4 MARIETTA, GA 30067

PS Form 3800, June 2002         See Reverse for Instructions

7006 0100 0002 0279 2781

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

WORLDWIDE ASSET
PURCHASING, LLC
C/- LAW OFFICES OF
E. GERALD E. MOORE
2253 NORTHWEST PKWY
SUITE 30B
MARIETTA, GA 30067

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X James V.     ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
J. Veol     8 4

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service)     7006 0100 0002 0279 2781

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

MARIETTA GA 30067

| | | |
|---|---|---|
| Postage | $ | $2.07 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.32 |

Sent To LAW OFFICES OF GERALD E MOORE + ASS
Street, Apt. No.; or PO Box No. 2253 NORTHWEST PKWY, STE 300B
City, State, ZIP+4 MARIETTA, GA 30067

PS Form 3800, June 2002        See Reverse for Instructions

7006 0100 0002 0279 2798

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

LAW OFFICES OF
GERALD E. MOORE + ASSIC.
2253 NORTHWEST PKWY
SUITE 300B
MARIETTA, GA 30067

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _James V._     ☐ Agent
                ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
J. Veal                          8/4/06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7006 0100 0002 0279 2798

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

MARIETTA GA 30067

| | | |
|---|---|---|
| Postage | $ | $2.07 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.32 |

Postmark Here — MONTGOMERY AL 36104 AUG 2 2006

Sent To GERALD E. MOORE, ESQ
Street, Apt. No.; LAW OFFICES OF GERALD E. MOORE
or PO Box No. 2255 NORTHWEST PKWY, STE 300B
City, State, ZIP+4 MARIETTA, GA 30067

7006 0100 0000 0279 2804

PS Form 3800, June 2002          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gerald E. Moore, Esq.
Law Offices of
Gerald E. Moore + Assoc.
2255 Northwest Pkwy
Suite 300B
Marietta, GA 30067

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X James V.    ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
J. Vest    8/6/06

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7006 0100 0002 0279 2804

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

MARIETTA GA 30068

| | | |
|---|---|---|
| Postage | $ | $1.83 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.08 |

Sent To
DANIELLE M. HILL, ESQ
Street, Apt. No.; LAW OFFICES OF GERALD E. NAIER
or PO Box No. 2253 NORTHWEST PKWY, STE 300B
City, State, ZIP+4 MARIETTA, GA 30067

PS Form 3800, June 2002     See Reverse for Instructions

7006 0100 0002 0279 2811

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

DANIELLE M. HILL, ESQ
LAW OFFICES OF
GERALD E. NAIRE & ASSOC.
2253 NORTHWEST PKWY, STE 300B
MARIETTA, GA 30067

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _James V._          ☐ Agent
                      ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
J. Veal                              8/7/1

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☒ Certified Mail     ☐ Express Mail
☐ Registered         ☐ Return Receipt for Merchandise
☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7006 0100 0002 0279 2811

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540



NATIONAL ARBITRATION
# FORUM

*A FORUM Dispute Management Organization*

August 08, 2006

Kimberly Holley
c/o Edward M. Wayland
P.O. Box 17
Montgomery, AL  36101

Worldwide Asset Purchasing, LLC
c/o Law Offices of Gerald E. Moore & Assoc, P.C.
Gerald E. Moore
2253 Northwest Parkway Suite 500
Marietta, GA  30067

**RE:  Worldwide Asset Purchasing, LLC v Kimberly Holley**
**File Number:  FA0605000721187**
**Claimant Account Number:** ███████████
**Claimant Reference Number:  01157233**

Dear Parties:

The Claimant requested this matter be Dismissed.  Pursuant to Rule 40 of the Code of Procedure, the Forum has granted the Dismissal, and the above matter is Dismissed without Prejudice.

This case is now closed with the National Arbitration Forum.  All future inquiries regarding this case should be directed to the opposing party.

Sincerely,

*Jill Surine*

Jill H Surine
Case Coordinator

PLAINTIFF'S
EXHIBIT
*4*
(5J)
PENGAD 800-631-6989



Toll Free    (800) 252-9284
Facsimile    (770) 618-2227

ψ  Gerald E. Moore, Esq.
◆  John M. Patton, Esq.
•  Yale E. Hollander, Esq.
◆  Rosselle M. Hill, Esq.
    Janné McKamey, Esq.

GEMA Hours of Operation
Mon - Thurs 8am - 9pm EST
Friday 8am - 5pm EST



LAW OFFICES OF
# GERALD E. MOORE & ASSOCIATES, PC
P.O. Box 672257
Marietta, Georgia 30006

August 7, 2006

**PERSONAL & CONFIDENTIAL**
KIMBERLY HOLLEY
c/o Edward Wayland 492 S. Court St. PO Box 17
Montgomery AL 36101

Worldwide Asset Purchasing, LLC v. KIMBERLY HOLLEY
FileNumber:      FA0605000721187
Account Number: ▮▮▮▮▮▮▮▮▮▮▮▮
GEMA No.         01157233

Dear KIMBERLY HOLLEY:

    We have requested a dismissal from The National Arbitration Forum in the above-referenced claim. The National Arbitration Forum will mail verification of the dismissal to the above-stated address within ten days of the date of this letter.

    If you would prefer that the verification be mailed to an alternative address, please contact The National Arbitration Forum at (877) 655-7755 and reference FA0605000721187.

                                    Sincerely,
                                    GERALD E. MOORE & ASSOC., P.C.

                    By:    _____
                                    Janné Y. McKamey, Esq.

PLAINTIFF'S
EXHIBIT
5
(SJ)
PENGAD 800-631-6989

ψ  Admitted in Georgia &
    California
◆  Admitted in Georgia
•  Admitted in Missouri &
    North Carolina
◆  Admitted in Georgia
•  Admitted in Georgia

jmp

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector.

***SEE REVERSE SIDE OF THIS LETTER FOR IMPORTANT INFORMATION***



LAW OFFICES OF
GERALD E. MOORE &
ASSOCIATES, PC
P.O. Box 672257
Marietta, Georgia 30006

FMAYNMP 36101



**Defendants' Responses to Requests for Admission**

**Kimberley N. Holley v. Worldwide Asset Purchasing, LLC, et al.**
**United States District Court, Middle District of Alabama**
**Case No. 1:06-cv-677**

**Responses Served on Plaintiff December 20, 2006**

## REQUEST FOR ADMISSION NO. 1:

*During the times relevant to this action, defendant Worldwide Asset Purchasing, LLC, was, in its actions with regard to its claim that the plaintiff, Kimberley N. Holley, owes a debt based on the Household Bank credit card account, a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6).*

**RESPONSE:** Admitted.

## REQUEST FOR ADMISSION NO. 2:

*During the times relevant to this action, defendant Law Offices of Gerald E. Moore & Associates, P.C., was, in its actions with regard to the claim that the plaintiff, Kimberley N. Holley, owes a debt based on the Household Bank credit card account, a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6).*

**RESPONSE:** Admitted.

## REQUEST FOR ADMISSION NO. 3:

*During the times relevant to this action, defendant Gerald E. Moore was, in his actions with regard to the claim that the plaintiff, Kimberley N. Holley, owes a debt based on the Household Bank credit card account, a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6).*

RESPONSE: Denied.



PENGAD 800-631-6989

**PLAINTIFF'S
EXHIBIT**
6
(SJ)

**REQUEST FOR ADMISSION NO. 4:**

*During the times relevant to this action, defendant Danielle M. Hill was, in her actions with regard to the claim that the plaintiff, Kimberley N. Holley, owes a debt based on the Household Bank credit card account, a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. §1692a(6).*

**RESPONSE**:  Denied.

**REQUEST FOR ADMISSION NO. 5:**

*The plaintiff, Kimberley N. Holley has never been a party to the Household Bank credit card account or the agreement setting up that account, and she does not owe any debt to any person based on that credit card account.*

**RESPONSE:**

Defendants state they have made a reasonable inquiry regarding this request for

admission and that the information is not known or readily obtainable to the parties.

Specifically, Defendants are unsure of the debtor's full name and therefore cannot admit or deny

that Kimberly N. Holley has ever been a party to the Household Bank credit card account or the

agreement setting up that account or if she owes any debt to any person based on that credit card

account.

Defendants' Responses to Selected Interrogatories

**Kimberley N. Holley v. Worldwide Asset Purchasing, LLC, et al.**
**United States District Court, Middle District of Alabama**
**Case No. 1:06-cv-677**

**Responses Served on Plaintiff December 20, 2006**

## INTERROGATORY NO. 2:

*Describe in detail the relationship between Worldwide, the Law Offices of Gerald E. Moore and Associates, L.P., and Gerald E. Moore.*

**RESPONSE:** Worldwide Asset Purchasing, LLC, owns debt allegedly owed by others. Worldwide Asset Purchasing, LLC is a client of the Law Offices of Gerald E. Moore & Associates, P.C., incorrectly design[ated] by Plaintiff as "L.P." The Law Offices of Gerald E. Moore & Associates, P.C., collects debt on behalf of Worldwide Asset Purchasing, LLC and provides other legal services as are requested. Gerald E. Moore is the CEO of The Law Offices of Gerald E. Moore & Associates, P.C.

## INTERROGATORY NO. 4:

*Explain in detail how Worldwide acquired the right to collect the debt owed on the Household Bank credit card. Identify the person or entity to whom the debt was originally owed and any other person or entity to whom the debt has ever been owed, and describe in detail the terms under which the right to collect the debt passed from any of these entities to Worldwide. Identify all documents which contain any of this information.*

**RESPONSE:** Worldwide purchased the Household account from ACF Special Finance Unit, LLC. Household Bank (SB) NA was the original creditor. Worldwide is without sufficient information to respond with regard to any other persons or entities to whom the debt was ever owed. The Bill of Sale.



PENGAD 800-631-6989

**PLAINTIFF'S EXHIBIT**
7
(SJ)

**INTERROGATORY NO. 6:**

*Each defendant is asked to describe in detail the procedure used by that defendant to determine that the debt owed on the Household Bank credit card account was owed by the plaintiff in this action, Ms. Kimberley N. Holley, and not by some other person. Identify all documents which describe the procedure used and upon which each defendant relied.*

**RESPONSE:** Defendants, GEMA, Gerald Moore, and Danielle Hill, rely on the account information and documents of the client; including credit bureau report, payment history, statement(s), card member agreement, information regarding the debtor and information regarding the debt. GEMA, Moore, and Hill also rely on disputes received pursuant to the FDCPA, policies and procedures of the firm, electronic data regarding the debtor and debt, the credit bureau report, payment history, client account statement, and card member agreement. WAP objects to interrogatory number 6 to the extent it reque3sts information regarding an individual named Kimberley N. Holley. To the extent that WAP purchased an account from a third party alleged to be owed by an individual named "Kimberly Holley," WAP relied on the information provided by the third party to enforce its rights under the terms of the card member agreement against Kimberly Holley. The BFrame account information sheet, electronic data identifying the debtor and debt owed, credit bureau report, payment and charge-off history, card member agreement, account statement, and policies and procedures of the firm.

2

**INTERROGATORY NO. 8:**

*Each defendant is asked to describe in detail the procedures used by that defendant, if any, for verifying that a person who is believed to owe a debt is in fact the person who owes that debt. Identify any documents which contain any of this information.*

**RESPONSE:** Defendants object to this interrogatory on the ground that it is vague. Plaintiff has failed to distinguish between the procedures used by any Defendant as soon as that Defendant reviews the debt or the procedures used after receiving a dispute regarding the debt. Defendants state they are entitled to rely on information from creditors from whom the debt is purchased at the time of the purchase that the debt is valid.

**INTERROGATORY NO. 11:**

*Describe in detail all information provided to defendant Danielle M. Hill and identify each document which was relied on by her in preparing and submitting to the NAF the arbitration claim against Ms. Holley.*

**RESPONSE:** Defendant Hill responds that she relied on the electronic data identifying the debtor and debt owed provided by client to firm, credit bureau report, payment and charge-off history, card member agreement, account statement, and account notes between client and firm.

**Defendants' Responses to Selected**
**Requests for Production of Documents**

**Kimberley N. Holley v. Worldwide Asset Purchasing, LLC, et al.**
**United States District Court, Middle District of Alabama**
**Case No. 1:06-cv-677**

**Responses Served on Plaintiff December 20, 2006**

## REQUEST FOR PRODUCTION NO. 2:

*All documents signed by Ms. Holley asking that the Household Bank credit card account be opened in her name.*

**RESPONSE:** None.

## REQUEST FOR PRODUCTION NO. 3:

*All billing statements, documents showing charges to the credit card, records of payments made, or communication to or from Ms. Holley or any other person authorized to use the credit card relating to the Household Bank credit card account.*

**RESPONSE:** Produced.



PLAINTIFF'S
EXHIBIT
8
(SJ)

**Excerpts from Letters Sent by Counsel Regarding Discovery Questions**

Excerpt from letter sent by Edward M. Wayland, counsel for the plaintiff, Kimberley N. Holley, to Neal D. Moore, III, counsel for the defendants, dated January 19, 2007:

> **Request to Produce Documents #3.** In this request, we asked for "billing statements, documents showing charges to the credit card, records of payments made" and so on. In other words, we were looking for the basic documents showing the history and use of the alleged credit card account. Based on our conversations about this case, I assumed that your response would be that you didn't have these documents. Instead, the response was "Produced". But I did not see anything responsive to this request in the documents produced. If such documents were in fact produced, I must have misplaced them. If so, would you mind sending me another copy? If they were not produced because you don't have them, may I suggest that the answer be changed in a supplemental response to "none" or something like that?

Excerpt from letter sent by Mr. Moore to Mr. Wayland in reply, dated March 1, 2007:

> Regarding request for production item 3, I do not at this time have any documents evidencing your client's use of the credit account in question. Subject to the understanding that my clients do not concede that no such documents exist, you are correct that I have no items in this regard that have not been produced.



PLAINTIFF'S
EXHIBIT
9
(JJ)
PENGAD 800-631-6989