**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

May 1, 2007

# NOTICE OF CORRECTION

**From:  Clerk's Office**

**Case Style:  Holley v. Worldwide Asset Purchasing, LLC et al**

**Case Number:  1:06cv00677-WKW**

**This Notice of Correction was filed in the referenced case this date to correct the PDF documents previously attached to correct the case number.**

**The correct PDF documents are attached to this notice for your review.  Reference is made to document # 27 & #28  filed on  April 30, 2007.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY N. HOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06-cv-677-WKW |
| | ) | |
| WORLDWIDE ASSET | ) | |
| PURCHASING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW, the Defendants Worldwide Asset Purchasing, LLC, the Law Offices of Gerald E. Moore & Associates, P.C., Gerald E. Moore, and Danielle M. Hill (Defendants), and move this Honorable Court to enter, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Summary Judgment on Cause of Action One and Three of the Plaintiff's complaint, as there are no genuine issues of material fact and because Defendants are entitled to a judgment as a matter of law.   Defendants further requests that Summary Judgment be entered as to each and every Defendant pursuant to Rule 54(b) of the Federal Rules of Civil Procedure as there is no just reason for delay.  As grounds for this motion, Defendants state as follows:

1. This case concerns a disputed credit card account.  The disputed account is owned by the defendant, Worldwide Asset Purchasing, LLC, who assigned the account to the Moore Law Firm for collections.  Ms. Kimberly Holley, the plaintiff,  disputed responsibility for the account during the collection process.  The account was then referred to arbitration at which point Ms. Holley retained counsel and, consistent with her request, the arbitration proceeding was voluntarily dismissed.

2.      The plaintiff filed this lawsuit and presents to the Court three questions:
Whether she is responsible for the account; whether Defendants' conduct violates the law of the
state of Alabama; and, whether the Defendants' conduct violates the Fair Debt Collection
Practices Act.  This motion for summary judgment filed by the Defendants, supported by a
Memorandum Brief containing a statement of undisputed facts, addresses only the latter two
questions identified above.

3.      Regarding the state law claims, the plaintiff seeks to recover for defamation based
on the Defendants' third party communications in this matter.  These third party communications
consist of the Defendants' communications and filings with the National Arbitration Forum, the
entity hired to administer the arbitration proceeding referenced above.  The Defendants are not
liable for any statements made to NAF because such statements were made in the initiation of
and furthererance of a quasi- judicial proceeding.  Accordingly, the defendants are protected by
the litigation privilege and have no liability to the plaintiff even if the contents of the filings with
the NAF were  intentionally false.  The state claim asserted is due to be dismissed.

4.      The alleged violations of the FDCPA are also premised on the contents of
the communications with NAF.  Specifically, the plaintiff claims that the defendants falsely
misrepresented the nature and character of this debt by filing an affidavit with the NAF alleging
Ms. Holley to be the party legally responsible for the indebtedness.  Since Ms. Holley disputes
the account, she reasons that any information about this account must be false, as the account is
not hers.  Though the FDCPA was enacted to prevent people from mischaracterizing the nature
and legal status of consumer debts, it does not follow that a party is automatically liable under
the FDCPA if it seeks to enforce a legal instrument and the plaintiff ultimately proves she is not
the responsible party.  If this were the case, any creditor who sued to enforce its rights pursuant

to a credit agreement would automatically violate the FDPCA <u>simply by filing suit</u> if the debtor ultimately proves he or she is not responsible for the debt.  Such an interpretation would prevent a party from accessing the judicial system for fear of violation the FDCPA.  Not only is this nowhere in the FDCPA itself, but it is contradictory to the Noerr-Pennington Doctrine, Litigation Privilege Doctrine, and Witness Immunity Doctrine.  Filing a lawsuit or initiating an arbitration proceeding claiming Ms. Holley to be responsible for the debt is not the type of "false and misleading" representations the FDCPA was designed to prevent.

5.    It should be noted that the plaintiff has filed a separate Motion for Summary Judgment on the declaratory judgment aspect of this case as well as on the FDCPA violations. This Motion for Summary Judgment and accompanying brief <u>are not intended to respond to the plaintiff's Motion for Partial Summary Judgment</u>.  This motion and attached Memoranda were prepared independently of any filings of the plaintiff.  The defendant will file a reply to the plaintiff's Motion for Partial Summary Judgment under separate cover.  By not addressing the issues asserted by the plaintiff, or distinguishing the cases upon which the plaintiff seems to rest, the defendant is not tacitly admitting or conceding any of these points.  This is an independent Motion for Summary Judgment rather than a reply.  The reply will follow.

6.    There is no genuine issue as to any material fact regarding the viability of the plaintiff's state law claim or FDCPA claims.  These are purely legal issues for the Court's determination.  The claims based on the petitioning conduct of the defendants should be dismissed as the defendants have the right to seek a redress of grievances and do not incur individual civil liability or statutory liability for doing so.

WHEREFORE, PREMISES CONSIDERED, the defendants respectfully request this Honorable Court for an entry of judgment in their favor, pursuant to Federal Rule of Civil

Procedure 56, dismissing all claims under the FDCPA and all state law claims, for there is no genuine issue of material fact remaining and the defendants are entitled to a judgment as a matter of law.

Respectfully Submitted,

/s/ Neal D. Moore, III                    .
Jon B. Minchin (ASB-0281-A58M)
Neal D. Moore, III (ASB-3971-M73N)

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama  35243
(205)879-8722

CERTIFICATE OF SERVICE

I hereby certify that I have on this the 30th day of April, 2007, served a copy of the foregoing pleading electronically via CM/ECF system on the following counsel of record:

Edward M. Wayland
Post Office Box 17
Montgomery, Alabama 36101

/s/ Neal D. Moore, III                       .
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY N. HOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06-cv-677-WKW |
| | ) | |
| WORLDWIDE ASSET | ) | |
| PURCHASING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW, Defendants Worldwide Asset Purchasing, LLC, the Law Offices of Gerald

E. Moore & Associates, P.C., Gerald E. Moore, and Danielle M. Hill (Defendants), and in

support of the Motion for Partial Summary Judgment submits the following Memorandum Brief:

### SUMMARY OF ARGUMENT:

The plaintiff's complaint alleges that the Defendants collectively violated the Federal

Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692d, e, e(2)(a), e(10), and f,

defamed the plaintiff, and further requests a Declaratory Judgment stating that the plaintiff is not

responsible for the debt in question.  Defendants are entitled to a judgment as a matter of law as

the communications from which the plaintiff derives her allegations were made in anticipation

of, in the initiation of, and in the furtherance of a quasi-judicial proceeding.  Therefore,

Defendants enjoy immunity from the plaintiff's claims under the Litigation Privilege and

Absolute Witness Immunity doctrine.  Finding that Defendants' communications violated the

FDCPA or amount to common law defamation would necessarily chill the Defendants' and all

claimant's ability to pursue legitimate claims and debts through judicial and quasi-judicial proceedings.  Such a result exemplifies the specific limiting effect the Litigation Privilege and Absolute Witness Immunity doctrine intend to avoid.  As shown below, the nature and contents of the relevant communications are not disputed; there are no genuine issues of material facts. As a matter of law, summary judgment is appropriate given the reach of the Litigation Privilege and Absolute Witness Immunity doctrine.

**SUMMARY OF UNDISPUTED MATERIAL FACTS**

1.     Worldwide Asset Purchasing, LLC purchased a debt from ACF Special Financing Unit, LLC naming Kimberly N. Holley as debtor and originated by Household Bank (SB) N.A., which had a payoff balance of $973.43 and post charge-off interest of $571.94 as of December 13, 2006.  (Defendants' Answers to Plaintiff's First Interrogatories, Questions 4 and 5, Also See Exhibit "A", Bill of Sale between Atlantic Credit  and Worldwide Asset Purchasing, LLC).

2.     On April 10, 2006, The Moore Law Firm, in an attempt to collect this debt for its client Worldwide Asset Purchasing, LLC, sent a letter to Kimberly N. Holley at 206 Foxfire Drive, Dothan, Alabama, signed by Danielle M. Hill, Esq., an associate attorney with the firm. The letter informed Ms. Holley that the Moore Law Firm was handling the collection of the Household Bank (SB), N.A. debt and that verification of the debt would be provided to Ms. Holley if she contacted the firm within 30 days of receipt of the letter.  (See Exhibit "B": April 10, 2006, letter from Danielle M. Hill, Esq. to Kimberly N. Holly.)

3.     On May 18, 2006, The Moore Law Firm sent a second letter to Ms. Holley by which Ms. Holley was informed that the Moore Law Firm intended to file a claim with the National Arbitration Forum if Ms. Holley failed to settle the debt within 10 days of receipt of the letter.  The letter also invited Ms. Holley to contact the Moore Law Firm to discuss making

2

monthly payments to settle the debt and offered to settle the debt for 80% of the current balance. (See Exhibit "C", May 18, 2006, letter from Gerald E. Moore and Associates, PC to Kimberly Holley).

4.    On May 31, 2006, the Moore Law Firm filed a claim for arbitration on behalf of Worldwide Asset Purchasing, LLC with the National Arbitration Forum.   In the claim for arbitration, Worldwide Asset Purchasing, LLC asserted that the respondent, Ms. Holley, owed the principal amount of the debt originated by Household Bank (SB) N.A., accrued interest, and reasonable attorney's fees.   (See Exhibit "D", Worldwide Asset Purchasing, LLC's claim for arbitration).

5.    On August 1, 2006, the plaintiff filed the complaint in this matter.  Based on the sworn averments, the communications referenced above constitute the entirety of the communications initiated by Worldwide Asset Purchasing, LLC, the Gerald E. Moore Law Firm, Gerald E. Moore, and Danielle M. Hill directed to Kimberly Holley and the National Arbitration Forum.  (See Plaintiff's Amended Complaint, Statement of Facts).

6.    The only individuals identified by Ms. Holley to whom a defamatory statement was made were individuals employed or at the National Arbitration Forum.  (See Exhibit "F", Plaintiff's Response to Defendant's Interrogatories, Interrogatory No. 10).

7.    Following Ms. Holley's dispute, the arbitration proceeding was voluntarily withdrawn by the defendants without prejudice.

**COMPLAINT SUMMARY**

Ms. Holley filed her amended complaint to include a third cause of action for defamation in addition to the existing First Cause of Action under the Fair Debt Collection Practices Act and the Second Cause of Action for a Declaratory Judgment stating the Ms. Holley may not be

legally compelled to submit her claim to arbitration.    Defendants' Motion for Summary Judgment seeks dismissal from the plaintiff's first cause of action for relief under the FDCPA and third cause of action for defamation.

Ms. Holley's complaint alleges that her causes of action arose because Defendants sent her "at least two letters…demanding that she pay a sum as due on a certain credit card account" even though she was never a party to any credit agreement with Defendants or their predecessors in interest.  (Plaintiff's Complaint, ¶¶ 11-13).  Ms. Holley further claims that Defendants filed a claim with the National Arbitration Forum (NAF) that contained false information in that it stated the Ms. Holley owed the debt when she did not. (Plaintiff's Complaint, ¶¶ 23-26).  Ms. Holley states that she was treated inappropriately over the phone when she telephoned the Moore Law Firm and that false representations were made by Defendants during these telephone calls. (Plaintiff's Complaint, ¶¶ 28, 29).

Ms. Holley's first cause of action is brought under the FDCPA, specifically 15 U.S.C. §§ 1692d, e, e(2)(a), e(10), f and k.  Through these sections, Ms. Holley claims the Defendants engaged in conduct the natural consequence of which was to harass, oppress or abuse Ms. Holley (§1692d), used false, deceptive or misleading representations in connection with the collection of the debt (§1692e), used a false representation of the character, amount, or legal status of the debt (§1692e(2)(a), used false representation or deceptive means to collect the debt or obtain information regarding Ms. Holley (§1692e(10)), used unfair or unconscionable means to attempt to collect the debt (§1692f), and should be awarded damages as a result in accordance with § 1692k.

Ms. Holley's alleges through her third cause of action that Defendants defamed her by making "statements to the effect that Ms. Holley owed a debt to Worldwide and that she had

4

failed to pay that debt when it was due despite 'repeated' requests for payment." (Plaintiff's

Complaint, ¶ 49).   Ms. Holley further claims that these statements were made with reckless

disregard for their veracity and "were published to third parties, including NAF and its staff."

Plaintiff's Complaint, ¶¶ 50-52).   Ms. Holley identified only the NAF and persons employed

there as the parties to whom the alleged defamatory statements were published. (See Exhibit "F",

Plaintiff's Response to Defendant's Interrogatories, Interrogatory No. 10).   Ms. Holly further

claims that the Defendant "failed to retract the statements when asked to do so by the plaintiff."

(Plaintiff's Complaint, ¶ 57).   As a result, Ms. Holley alleges that she is due to recover as she has

"suffered serious emotional distress, fear, anger, shame, and mental anguish." (Plaintiff's

Complaint, ¶ 55).   Ms. Holley is not claiming any out of pocket expenses as a result of her

allegations (Exhibit "F", Interrogatory No. 14),

## STANDARD OF REVIEW

Summary judgment should be granted only if "there is no issue as to any material fact
and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
The party seeking summary judgment bears "the initial burden to show the district court,
by reference to materials on file, that there are no genuine issues of material fact that
should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.
1991).   Once the moving party has satisfied its responsibility, the burden shifts to the
nonmovant to show the existence of a genuine issue of material fact. *Id.*   "If the
nonmoving party fails to make 'a sufficient showing on an essential element of her case
with respect to which she has the burden of proof,' the moving party is entitled to
summary judgment."   *Id.* (quoting *Celotex Corp., v. Catrett,* 477 U.S. 317, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986)(footnote omitted).   "In reviewing whether the nonmoving
party has met its burden, the court must stop short of weighing the evidence and making a
credibility determination of the truth of the matter.   Instead, the evidence of the non-
movant party is to be believed, and all justifiable inferences are to be drawn in his favor."
*Tipton v. Bergrohr GMBH-Seigen,* 965 F.2d 994, 999 (11th Cir. 1992)(internal citation
and quotations omitted).   However, the mere existence of any factual dispute will not
automatically necessitate denial of a motion for summary judgment; rather, only factual
disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of
Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

*Burroughs v. Smurfit Stone Container Corp.*, 2007 U.S. Dist. LEXIS 18061.

## ARGUMENT

**(1)    The plaintiff's allegations of Defamation are due to be dismissed as Defendant's are protected by the Litigation Privilege.**

The State of Alabama recognizes an absolute privilege regarding communications made in quasi-judicial proceedings. "The majority view, and the view we now adopt, is that an absolute privilege attaches to communications made in the course of quasi-judicial proceedings." *Webster v. Byrd,* 494 So. 2d 31 (Ala. 1986). In the *Webster* case, the plaintiff sued Byrd for damages related to alleged defamation. The alleged defamation was contained within a letter "written by Byrd to serve notice upon Webster of the proposed termination of him from his tenured position at (Wallace State Community College)." *Id.* Because the letter initiated a quasi-judicial proceeding, the Court deemed it to be "in the course of" the hearing and as a result the absolute privilege attached. *Id.* at 35.

A proceeding is quasi-judicial when it "is conducted with the same safeguards as those provided in judicial proceedings, e.g., notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witness, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision maker." *Id.* At 34. Further, "A quasi-judicial proceeding is initiated when the statutory notice is dispatched." *Id.* At 34. The National Arbitration Forum Code of Procedure provides each of these safeguards. (See Exhibit "F", NAF Code of Procedure).

To successfully claim she was defamed, the plaintiff must "prove that a defendant intentionally made an unauthorized, unprivileged, false statement about the plaintiff to a third party, which injured the plaintiff's reputation in the eyes of his friends or the community and

proximately caused the plaintiff to suffer damages." *Borden v. Clement, Jr.,* 261 B.R. 275, 2001 U.S. Dist. LEXIS 4613 (N.D. Ala. 2001).  The *Webster* case allows that a party may lose its absolute privilege if publication is made to a party "outside the confines of the quasi-judicial proceeding." *Webster*, 494 So.2d at 35.

The only statement or communication alleged and/or identified by the plaintiff in this matter to be published to a third party was the claim for arbitration filed with the National Arbitration Forum (NAF).  (*See* Exhibit "F": Plaintiff's Responses to Defendants' Interrogatories, Interrogatory No. 10).  The NAF was a necessary party to the quasi-judicial proceeding initiated by the Defendants' Claim for Arbitration.  This communication was directed to an essential party in a quasi-judicial proceeding through which absolute immunity attaches. As a result, Defendants have done nothing to lose or diminish the absolute privilege that attached to the communications through the initiation of a quasi-judicial proceeding.

In fact, the Alabama Supreme Court holds that even communications made prior to commencement of an action are privileged.  "The Alabama Supreme Court affirmed and held that a defamatory statement made even before the commencement of a lawsuit is absolutely privileged if the statement is relevant or material to the contemplated lawsuit.  *Borden,* 261 B.R. at 283-4 (citing *Barnette v. Mobile County Personnel Bd.*, 536 So.2d 46 (Ala. 1988)).  As a consequence, the absolute immunity from an allegation of defamation attached to communications made during a quasi-judicial proceeding also attaches to communications made prior to and in relation to that quasi-judicial proceeding.  As a result, all communications referenced by the plaintiff in this case enjoy the absolute immunity brought by each statement's relation to the initiation of and participation in the arbitration proceeding.

In response to Defendant's Interrogatory No. 10 which reads, "Please identify all individuals to whom you claim a defamatory statement was made. Include in your answer the address for the individual and the content of the defamatory statement," the plaintiff only identified the National Arbitration Forum and persons employed there. Further she identifies the specific defamatory statements as those that "were contained in the claim sent to the NAF stating that I owed money." (Exhibit "F", Interrogatory No. 10). The remainder of Ms. Holley's response simply adds that any other statements made by Defendants to third parties regarding the debt would be defamatory, but fails to identify specific statements or third parties, and is therefore insufficient to create a triable issue of fact or defeat summary judgment.

The motive behind any alleged defamatory communication is immaterial and not to be considered when absolute privilege attaches. Malice cannot overcome the absolute privilege. "In questions falling within this absolute privilege, the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy, and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander." *Walker v. Majors, Jr.,* 496 So.2d 726, 729 (Ala. 1986)(quoting *O'Barr v. Feist*, 292 Ala. 440, 296 So.2d 152 (1974)).

There are no genuine issues of material fact in this matter. The number and contents of the communications between the Moore Law Firm and Ms. Holley are not disputed by the parties. The Court, therefore, can appropriately answer the resulting question of law; whether the communications in the matter were privileged and prevent the plaintiff was recovering defamation damages as a result. "It is … well-established that whether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court." *Walker*, 496 So.2d at 730. The defamation allegations

against Defendants are due to be dismissed as each and every communication between Defendants and the plaintiff was in anticipation of arbitration, necessary to initiate arbitration or in furtherance of the claim for arbitration.  Each communication, therefore, enjoys the absolute privilege announced above.   There are no genuine issues of material fact and as the communications are privileged as a matter of law, summary judgment is due to be granted in favor of Defendants regarding the plaintiff's claim for defamation.

**(2)     Defendants have absolute witness immunity from the plaintiff's claims under the Fair Debt Collection Practices Act.**

As shown above, the communications between Defendants and Ms. Holley are each related to the initiation of and participation in a claim for arbitration; a quasi-judicial proceeding. The plaintiff's remaining claims are brought under the *Fair Debt Collection Practices Act* (FDCPA), specifically 15 U.S.C. §§ 1692d, e, e(2)(a), e(10), and f.[1]  Plaintiff's allegations under these sections are due to be dismissed as Defendants are protected under the Absolute Witness Immunity doctrine.  Based on the complaint and discovery, the "false representations" in this matter consist of the sworn averments regarding the amount of the debt and Ms. Holley's responsibility for it.  The communications from Defendants to Ms. Holley were related to and

---

[1] 15 U.S.C. 1692d prohibits a debt collector from conducting any activity "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  The statute gives six activities, in a non-exclusive list, that violate this section: "(1) The use or threat of use of violence…, (2) The use of obscene or profane language…(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency…(4) The advertisement for sale of any debt to coerce payment of the debt. (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass…(6) …the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. 1692d

15 U.S.C. 1692e prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with collection of any debt." 15 U.S.C. 1692e

15 U.S.C. 1692e(2)(a) declares the "false representation of the character, amount, or legal status of any debt" to be a violation of § 1692e.  15 U.S.C. 1692e(2)(a)

15 U.S.C. 1692e(10) declares that "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" to be a violation of § 1692e.  15 U.S.C. 1692e(10).

15 U.S.C. 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. 1692f.

constitute the initiation of an arbitration proceeding. Therefore, Defendants are protected from civil liability by the Absolute Witness Immunity doctrine. Defendants are absolutely immune from suit for statements made in the course of quasi-judicial proceedings, because the statements alleged to violate the FDCPA are absolutely privileged at Common Law. The FDCPA contains no language evidencing intent to abrogate the litigation privilege discussed above or the witness immunity discussed below.

>>>>    (a)    **The Plaintiff's claims are due to be dismissed because the Defendants are protected by the doctrine of absolute witness immunity.**

The United States District Court for the Northern District of Florida held in *Beck v. Codilis &Stawiarski, P.A., et al.,* that attorneys who inexcusably filed false affidavits in a state court action to collect a debt were nonetheless immune from civil liability on the grounds of common law witness immunity. *Beck v. Codilis & Stawiarski, P.A., et al.,* 2000 U.S. Dist. LEXIS 22440 (N.D. Fla. 2000). The plaintiff in *Beck* brought claims under the FDCPA alleging that the defendants violated 15 U.S.C. §§ 1692f(l), e(2), and 10 by demanding attorney's fees and title search fees not based on hours worked, demanding amounts not incurred by the firm, and submitting false affidavits. *Id.* The Court dismissed each of the plaintiff's claims based on the common law right of witness immunity. "That the affidavits were false does not, however, mean that plaintiffs may recover in this action. To the contrary, the longstanding principle of absolute witness immunity bars plaintiffs' claims." *Id.* at 18.

Further, the Court determined that claims filed under the FDCPA do not override common law immunity. "In the absence of any express indication that Congress intended a different result, absolute witness immunity would be held applicable to actions under the [FDCPA]." *Id.* at 19. The court continued, "When Congress adopted the Fair Debt Collection

Practices Act, it presumably was aware of absolute witness immunity. Congress gave no express indication, however, of any intent to override that doctrine. Here … plaintiff's interests 'must yield to the dictates of public policy'; their claims based on the giving of false testimony are barred." *Id.* at 20. The plaintiff could not succeed in her suit because the Defendants statements were made in the course of pending litigation.

Similarly, Ms. Holley brought suit against Defendants based on violations of the FDCPA. Specifically, she alleges that the Defendants breached the FDCPA, 15 U.S.C. §§ 1692d, e, e(2)(a), e(10), and f through statements made in communications between herself, the Moore Law Firm on behalf of Worldwide Asset Purchasing, LLC, and the National Arbitration Forum. As shown above, each communication was generated or took place in anticipation of initiating a claim in arbitration, to actually initiate a claim in arbitration, or in furtherance of Defendants' claim in arbitration. As each communication implicates a quasi-judicial proceeding, the common law witness immunity discussed by the *Beck* Court applies and requires the dismissal of the plaintiff's FDCPA claims.

The United States District Court for the Eastern District of Kentucky held that a law firm and its debt collector client were immune from civil prosecution under the FDCPA for allegedly false claims made in an affidavit filed with the District Court in an action to collect a debt. *Etapa v. Asset Acceptance Corp. and Greene & Cooper, P.S.C.,* 373 F.Supp.2d 687, 2004 U.S. Dist. LEXIS 27315 (E.D. Kent. 2004). Regarding the debt collector client, Asset Acceptance Corp, the Court concluded that "Asset Acceptance's statement qualifies for protection under the doctrine of absolute witness immunity." *Id.* at 690-691.

The Court then discussed the possibility that the FDCPA abrogated the doctrine of witness immunity, ultimately holding, "There is nothing on the face of the FDCPA that suggests that Congress intended for it to abrogate the doctrine. Accordingly, the Court finds that the FDCPA does not abrogate the doctrine of absolute witness immunity." *Id.* at 691. After finding the debt collector client immune from civil liability claims under the FDCPA arising from false affidavits, the Court next considered whether the law firm that filed the affidavits enjoyed the same immunity.

The Court answered this question affirmatively even though the pleadings would have been insufficient in and of themselves to hold the law firm liable.

> Even if the Court was inclined to find that Asset Acceptance's allegedly false statement should be attributed to Greene & Cooper, the Court would nevertheless conclude that Greene & Cooper was entitled to judgment on the pleadings. The Supreme Court has recognized that witnesses, prosecutors, and other attorneys are immune from damages liability for making false statements in judicial proceedings, as long as those statements are related to the action at hand ... As the Court has previously found in its discussion of Asset Acceptance's motion for judgment on the pleadings, there is nothing on the face of the FDCPA that suggests an intention to abrogate these longstanding immunity doctrines.

*Id.* at 692-693.

This case should yield the same result.[2]  The FDCPA properly prohibits misleading and deceptive collection tactics, but does not work to restrict the litigation process.  To hold otherwise would render every lawyer or witness civilly liable if an affidavit evidencing a disputed indebtedness was at all inaccurate.  More than that, should the plaintiff prevail regarding a contested debt, the filing party would automatically be liable under the FDCPA because the complaint initiating the suit "misrepresented" the debt.  The position advanced by the plaintiff is akin to holding a claimant in a civil fraud case liable to the defendant for defamation should the civil suit fail.  In that scenario, the statement was "published" when the complaint was filed and must have been false or else the jury would not have found for the defense.  This is the very result the Witness Immunity Doctrine was created to <u>prevent</u>.  The rules have not changed simply because this case is brought pursuant to the FDCPA.  Had the drafters of the FDCPA, or any of the committees participating in revisions to the FDCPA, intended such a result it surely would have been explicit in its language.  There is nothing in the

---

[2] An alternate line of cases has developed in the 6th Circuit Court of Appeals and District Courts.  The arguments and holdings of these cases are best summarized in the District Court for the Southern District of Ohio, Western District's decision in the *Delawder v. Platinum Financial Services, Corp. et al* case.  443 F. Supp. 2d 942 (S.D. Ill. 2005).  In the *Delawder* case the plaintiff filed a complaint alleging that Platinum Financial was a debt collector that violated the FDCPA by filing suit to collect a debt owed by the plaintiff accompanied by a supporting affidavit while knowing that they could not prove the debt. *Id*  The District Court denied the Defendant debt collector's motion to dismiss for failure to state claim holding that the "doctrines of witness immunity, the litigation privilege, judicial immunity, and immunity under the *First Amendment* right to petition" did not apply to the defendant's pleadings as "[a]pplying any of these immunity doctrines to bar Delawder's claim under the FDCPA would be contrary to the FDCPA's statutory purpose." *Id.* at 949, 951.  The Ohio District Court recognized, a split in the Sixth Circuit represented by the *Etapa* case, and that a separate line of cases existed outside the Sixth Circuit holding that common law immunities survived the elimination of the lawyer exemption from the FDCPA.  "Defendant's arguments for immunity in their Motion to Dismiss are based largely on *Etapa v. Asset Acceptance Corp...* wherein the court found that the doctrine of witness immunity protected the kind of behavior alleged here…The Court declines to follow *Etapa* and *Beck*, and instead agrees with its sister court's opinions in *Hartman* and *Blevins*." *Id.* at 949(internal citations omitted).  The *Delawder* case recognized a conflict within the Sixth Circuit and declined to follow *Etapa*, but also recognized a split among circuits regarding the relation between established common law immunities and the elimination of the FDCPA's lawyer exemption and the Circuits' interpretation of the *Heinz v. Jenkins* case.  The *Beck* case represents this relationship as it is understood and applied in the Eleventh Circuit.  The issue of "lawyer exemption" and the FDCPA is addressed in Section 3(b).  Though the finding of the Sixth Circuit Court of Appeals and District Court is in no way binding on this Honorable Court, and though the rationale advanced by the Court in *Delawder* badly misconstrues the FDCPA and the doctrines of statutory interpretation cited herein, both the Court and opposing counsel should be made aware of the existence of these cases consistent with counsel's ethical obligations of full disclosure to the Court.

FDCPA indicating this is the one area of the law where witness immunity does not apply.  The types of "false" and "misleading" statements prohibited by the FDCPA concern unscrupulous debt collectors telling debtors they will go to jail if a debt is not paid, telling the debtors fictitious deadlines exist regarding payment, or otherwise leaving the debtor to believe untrue things about the indebtedness in order to inspire payment.  The present case has nothing to do with these types of abuses.

Simply put, this is an alleged case of mistaken identity.  Either Kimberly Holley is the Kimberly Holley responsible for this debt, or it is some other person named Kimberly Holley.  Assuming she prevails on this point (and for purposes of summary judgment, it is appropriate to assume so), Ms. Holley asks this Court to find that the defendants have necessarily violated the FDCPA and/or falsely represented the nature and character of the debt simply by initiating arbitration to end the dispute regarding who is responsible.  If the affidavit filed by Danielle Hill is false, it is false only because the wrong Kimberly Holley is involved in this litigation.  Filing this affidavit, even if it ultimately turns out to be inaccurate is not the type of "false" or "misleading" collection conduct the FDCPA seeks to address.

Consider that the collections company in this or any other case is not required to attempt to collect the debt before litigation is initiated.  Assuming licensed counsel is obtained in the appropriate jurisdiction, suit could be initiated by the debt collector immediately upon assignment.  If the debtor is able to prove he or she is not truly the responsible party, the debtor will prevail on the merits.  Moreover, if it is proven that the suit was brought without good faith or a reasonable expectation of success on the merits, the aggrieved party would have remedies for abuse of process or malicious prosecution, depending on the facts and circumstances.  However, should this Court adopt the legal proposition advanced by the plaintiff, the filing party

would <u>automatically</u> have violated the FDCPA <u>simply by filing suit.</u>  Such a result is not sound

and should not be adopted as the rule of law in this District.

>   **(b)    The United States Supreme Court's holding in *Heinz v. Jenkins* does not preclude the application of the witness immunity doctrine to debt collectors otherwise subject to the FDCPA.**

In the *Heinz v. Jenkins* case, the Unites States Supreme Court ruled that attorneys who

engage in debt collecting as defined by the FDCPA must comply with the FDCPA.  The Court

concluded, "[T]he [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-

collection activity, even when that activity consists of litigation."  *Heinz v. Jenkins,* 514 U.S.

291, 299; 115 S.Ct. 1489, 1493; 131 L.Ed.2d 395, 402 (1995).  In so ruling, the Court upheld the

Seventh Circuit's decision overturning a District Court's decision to dismiss the action for failure

to state a claim.  The plaintiff alleged violations of the FDCPA after a creditor, through its

attorney, sent a letter to the debtor seeking to settle pending litigation and seeking an amount that

included sums it was prohibited from collecting by the FDCPA.  *Id.* at 292.  The Court

concluded that attorneys were subject to the FDCPA even when their debt-collecting activities

consisted primarily or wholly of litigation.  *See Id.*

The *Heinz* Court, however, does not speak to the issue of witness immunity and its

application to creditors and attorneys who seek to collect through the litigation process.  The

*Etapa* Court discussed this omission:

>   In *Heinz*, the Supreme Court did articulate the general rule that attorneys that engage in debt collection activities are required to comply with the FDCPA even when they engage in litigation activities.  In reaching that determination, however, the Supreme Court did not address the issue of the availability of absolute witness immunity for statements made in the course of legal proceedings.

*Etapa,* 373 F.Supp.2d at 691. Accordingly, the common law right of absolute witness immunity is not abrogated by the removal of the attorney exemption from the FDCPA. Defendants, as a result, are immune from liability under the FDCPA as the communications complained of by the plaintiff were in anticipation of and caused the initiation of a quasi-judicial proceeding.

This distinction makes perfect sense and is harmonious with the FDCPA. Both lawyers and non-lawyers who engage in debt collection are subject to the provisions of the FDCPA. They are on equal footing. If either a lawyer or a non-lawyer debt collector attempts to collect fees and expenses prohibited by the FDCPA, they rightfully incur liability. That example, and the issue addressed by *Heinz*, has nothing to do with the issue before this Court. The Witness Immunity Doctrine would not protect an attorney debt collector from liability for seeking to collect disallowed fees; similarly, the FDCPA does not abrogate the doctrine of witness immunity for statements made in conjunction with the invocation of the litigation process.

**(c)     The plaintiff's allegations that Defendants violated the FDCPA must be dismissed.**

The *Etapa* decision is based on facts strikingly similar to the instant matter; a creditor and a law firm were found to enjoy absolute witness immunity as it related to alleged false statements made through an affidavit filed with the District Court in an action to collect a debt. In this matter the plaintiff alleges that Defendants violated the FDCPA by filing a sworn statement with the National Arbitration Forum, initiating a quasi-judicial proceeding that enjoys litigation immunity in Alabama, and, in anticipation of arbitration, sending two letters to Ms. Holley regarding the debt. No matter the content of these letters or the veracity of the plaintiff's allegations regarding the nature of the assertions contained in them, Defendants in this matter are subject to the absolute witness immunity discussed in the *Etapa* and *Beck* decisions outlined

above.  As a result, the plaintiff's allegations of FDCPA violations are due to be dismissed as there is no genuine issue of material fact, no just reason for delay, and no method by which the plaintiff's allegations survive absolute witness immunity.

(3)    **The *Noerr-Pennington* doctrine requires a restricted reading of the FDCPA when the *Right to Petition* is implicated, and the Plain Meaning Rule must be circumvented to avoid infringing on the Right to Petition, Litigation Privilege and Absolute Witness Immunity.**

   (a) The *Noerr-Pennington* Doctrine

   The *Noerr-Pennington* doctrine generally provides immunity for those who petition the government against claims that may arise from the petition itself or the petitioning behavior. "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  *Sosa, et al. v. Directv, Inc.,* et al. 437 F.3d 923; 2006 U.S. App. LEXIS 3541 (9th Cir. 2006).  At the heart of the *Noerr-Pennington* doctrine is the understanding that statutes must be interpreted to avoid burdening access to the judicial process.  *See Id.* at 930.  Defendants in the instant matter attempted to gain access to a quasi-judicial process seeking satisfaction of a debt owed and has no liability to the plaintiff under the FDCPA by virtue of filing the petition.

   In *Sosa*, the plaintiff's sued alleging that DirecTV violated the Racketeer Influenced and Corrupt Organizations Act (RICO) by sending letters to customers of a seller of illegal satellite television descrambling devices, demanding that each customer forfeit the equipment purchased, agree to never attempt to illegally obtain satellite television again, and pay a to be determined settlement amount to DirecTV.  *See Sosa*, 427 F.3d at 928.  The Federal District Court for the Central District of California dismissed the plaintiff's RICO claims based upon the *Noerr/Pennington* doctrine.  Finding that the *Noerr/Pennington* protected not only petitions sent

directly to the court but also , "conduct incidental to the prosecution of a suit," the Ninth Circuit Court of Appeals upheld the District Court's dismissal.  *Id.* at 934.   The Court held that DirecTV's letters to alleged tortfeasors demanding specific action and payment of damages sent prior to filing suit were nonetheless protected as a petitioning activity.  *See Id.*

To find in the plaintiff's favor this Court must determine that the Litigation Privilege and the Absolute Witness Immunity Doctrines are both abrogated by the terms of the FDCPA.  Such a result would fly in the face of the *Noerr-Pennington* doctrine which requires construing "federal statutes so as to avoid burdening conduct that implicates the protections afforded by the *Petition Clause* unless the statute clearly provides otherwise."  *Id.* at 931.   The *Sosa* Court concludes "that the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the *Petition Clause.*"  *Id.*   *Noerr-Pennington* also provides immunity for communications deemed to sufficient to implicate the *Right to Petition*.  *Id.* at 935-936. These types of communications, therefore, cannot serve as the basis for a civil suit for damages.

Just as a claim in arbitration is a quasi-judicial proceeding in Alabama, arbitration agreements and the arbitration process are enforced and protected by the federal judiciary and jurisdiction remains with the federal judiciary to settle disputes and controversies that arise in the process.  9 U.S.C §§ 2, 6.  As a result, communications intending to initiate or referring to the initiation of arbitration proceedings invoke the *Right to Petition*.  Further, the Ninth Circuit holds that communications outside the normal litigation channels, such as offers of settlement or offers to enter into settlement discussions, enjoys the protection of *Noerr-Pennington* immunity as this type of communication is vital to the litigation process and sufficiently related to the *Right to Petition*. *See Id.* at 936.

### (b) *Plain Meaning Rule*

Prior to 1986, attorneys who engaged in debt collection were <u>not</u> bound by the FDCPA. The predictable inequities created by this omission were remedied by the United States Congress when it removed the exemption from the FDCPA that excluded attorneys from the definition of a debt collector. *Heinz,* 514 U.S. at 294.   The *Heinz v. Jenkins* decision came after the removal of this exemption.   The purpose was to place both non-attorney and attorney debt collectors on equal footing, subject to the same rules and regulations.   While potential litigants may read *Heinz* to include all litigation activities within the purview of the FDCPA, the *Etapa* Court made a clear distinction between conforming litigation activities to the FDCPA and the doctrine of absolute immunity.   If the *Heinz* Decision is read to find litigants, witnesses, and advocates liable for statements made during and in anticipation of judicial and quasi-judicial proceedings, such an interpretation necessarily results in the abrogation of long-standing common law privileges such as absolute witness immunity, the litigation privilege, and even the constitutional *Right to Petition* the Courts for redress.   "[D]eference to the plain meaning rule should not be unthinking or blind.  We would go beyond the plain meaning of the statutory language when adherence to it would produce an absurd result or an unreasonable one plainly at variance with the policy of the legislation as a whole."   *Greenwood Trust Company v. Massachusetts, et al.,* 971 F.2d 818, 825; 1992 U.S. App. LEXIS 17973 (1st Cir. 1992).   As the *Etapa* Court understood, without express legislative language or intent to abrogate these long standing Common Law and Constitutional rights, the FDCPA should be interpreted to avoid overstepping the intent of the legislature and to preserve Common Law and Constitutional rights.

CONCLUSION

Defendants are due final summary judgment as to Counts II and III of the plaintiff's claims against them. There is no dispute in this matter as to the content and circumstances of the communications between The Moore Law Firm, representing Worldwide Asset Purchasing, LLC, and Ms. Holley. The Defendants are entitled to a judgment as a matter of law based upon the Litigation Privilege and Absolute Witness Immunity discussed above, as the communications in question cannot serve as the basis for damages in tort or under the Fair Debt Collection Practices Act.

WHEREFORE, Premises considered, Defendants respectfully request that this Honorable Court enter a Final Judgment in favor of Worldwide Asset Purchasing, LLC, The Law Offices of Gerald E. Moore and Associates, P.C., Gerald E. Moore, and Danielle M. Hill as there is no just reason for delay, no genuine issue of material fact, and each defendant is entitled to judgment as a matter of law, and any and all further relief the Court may deem appropriate.

Respectfully Submitted,

/s/ Neal D. Moore, III                    .
Jon B. Minchin (ASB-0281-A58M)
Neal D. Moore, III (ASB-3971-M73N)

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama  35243
(205)879-8722

CERTIFICATE OF SERVICE

I hereby certify that I have on this the 30th day of April, 2007, served a copy of the foregoing pleading electronically via CM/ECF system on the following counsel of record:

Edward M. Wayland
Post Office Box 17
Montgomery, Alabama 36101

        /s/ Neal D. Moore, III                         .
OF COUNSEL