IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY N. HOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:06-cv-677-WKW |
| | ) | |
| WORLDWIDE ASSET | ) | |
| PURCHASING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW Defendants Worldwide Asset Purchasing, LLC, the Law Offices of Gerald E. Moore & Associates, P.C., Gerald E. Moore, and Danielle M. Hill ("Defendants") and file their response to Plaintiff's Motion for Partial Summary Judgment, as follows:[1]

Plaintiff's Complaint asserts three causes of action against Defendants: (1) violation of various sections of the Fair Debt Collection Practices Act ("FDCPA"); (2) defamation; and (3) declaratory judgment that Plaintiff is not responsible for the debt made the basis of this lawsuit. Plaintiff moves for summary judgment on the FDCPA and declaratory judgment claims but not on the defamation claim. For the reasons stated below, Plaintiff is not entitled to summary judgment on any claim.

I.   **Fair Debt Collection Practices Act Claim**

---

[1] Defendants assert and incorporate herein all the arguments raised in support of their Motion for Summary Judgment, which is pending before the Court. Such arguments, in addition to the ones asserted in this Response, all necessitate the conclusion, first, that Defendants themselves are entitled to summary judgment as set forth in their motion, and second, even assuming they are not so entitled, Plaintiff's Motion for Partial Summary Judgment, at the very least, is due to be denied.

A. <u>The FDCPA's focus is on Defendants' specific conduct in attempting to collect the debt from Plaintiff, not on whether Plaintiff actually owes the debt.</u>

Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. §§ 1692d (prohibiting collectors from engaging in conduct the natural consequence of which is to harass, oppress, or abuse a debtor), 1692e (generally prohibiting collectors from using false, deceptive, or misleading representations or means in connection with collecting any debt), 1692e(2)(a) (prohibiting any false representation of the character, amount, or legal status of any debt), 1692e(10) (prohibiting any false representation or deceptive means to collect or attempt to collect any debt), and 1692f (prohibiting a collector from using unfair or unconscionable means to collect a debt, and specifying that collecting an amount which is not expressly authorized in the agreement creating the debt or permitted by law is a violation of the act). Plaintiff predicates her FDCPA claim almost entirely on the allegation that Defendants falsely represented in their arbitration claim that Plaintiff is the individual who is contractually obligated on the subject debt. *See* Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, pp. 12-13. In other words, Plaintiff avers that because Defendants brought the arbitration proceeding against the incorrect individual, which Defendants deny, all statements in the arbitration petition are necessarily "false" and thus violative of the FDCPA.

Congress passed the FDCPA because of abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 461 (M.D. La. 1996) (citing 15 U.S.C. §§ 1692(a) and (b)). For purposes of Plaintiff's FDCPA claim, however, a judicial determination of whether she is obligated on the subject debt is not necessary. *See Ducrest*, 931 F. Supp. at 462. "The act (FDCPA) is designed to protect consumers who have been victimized by unscrupulous debt

2

collectors, *regardless of whether a valid debt actually exists*." *Id.* (emphasis added) (citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)). The court in *Ducrest* reasoned that the basis of the plaintiff's FDCPA claim should have been that the defendant acted unscrupulously in attempting to collect a debt from her, "not that the debt collector is attempting to collect a debt she doesn't owe. The validity of the debt would only be at issue if this were a suit by defendant to collect the debt. The focus of this [FDCPA] inquiry is on the debt collector's *conduct*." 931 F. Supp. at 462 (emphasis added). The court's reasoning in *Ducrest* continues as follows:

> Remembering the object of the FDCPA, and reading it as a whole, to state a claim under § 1692e(2), plaintiff would have to show that defendant knowingly misrepresented the character, amount, or legal status of the debt. The language "false representation of the character, amount, or legal status of any debt" in § 1692e(2)(A) must be read in conjunction with what it defines—a "false, deceptive, or misleading representation." These terms clearly contemplate a knowing and intentional act.

931 F. Supp. at 462 (citing *Hubbard v. National Bond and Collection Associates, Inc.*, 126 B.R. 422 (D. Del. 1991), aff. 947 F.2d 935 (3d Cir. 1991); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)).

The court in *Ducrest* determined it was undisputed that the defendant collector relied on the information provided to it by the creditor in demanding payment of the debt from the plaintiff. 931 F. Supp. at 462. The plaintiff's claim under § 1692e(2), according to the court, thus had no merit because she failed to show that any misrepresentation of the amount of the debt claimed was knowing or intentional. *Id.* Similarly, the court reasoned that to state a claim under § 1692f(1), the plaintiff would have had to show that the collector was knowingly attempting to collect a charge not authorized by the agreement creating the debt and not permitted by law. *Id.* "A debt collector should be able to rely on the representation and implied

3

warranty from its client that the amount was due under either the lease or the law." *Id.* (citing *Howe v. Reader's Digest Ass'n, Inc.*, 686 F. Supp. 461, 467 (S.D.N.Y. 1988)). "The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt." 931 F. Supp. at 462 (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).

Finally, while Plaintiff in this case does not assert a claim under § 1692g(b) of the FDCPA, the plaintiff in *Ducrest* did assert such a claim. 931 F. Supp. at 462. The court's analysis of that claim is instructive in this case:

> Plaintiff claims that defendant violated § 1692g(b) of the act because defendant did not properly verify the debt before resuming its collection activity when the plaintiff informed defendant that she disputed the debt. Because the court finds that defendant may rely on representations made by its clients and that defendant did not have any duty to independently investigate the claims presented by its clients, the court finds no merit in this claim. The lease and the security deposit transmittal sufficiently verified this debt to the defendant. As defendant points out, § 1692g(b) only requires the debt collector to obtain verification of the debt, and this verification would necessarily come from the creditor.

931 F. Supp. at 462.

As in *Ducrest*, Plaintiff here impermissibly attempts to parlay her allegation that she is not *the* Kimberley Holley who is obligated on the subject debt into a violation of the FDCPA. The focus under the FDCPA, however, should be on Defendants' specific conduct with respect to its collection efforts toward Plaintiff and whether Defendants acted abusively, deceptively, unfairly, or unscrupulously. Instead, Plaintiff attempts to predicate her FDCPA claim not on Defendants' conduct in itself, but on the allegation that because Defendants allegedly sued the incorrect party, their conduct was necessarily false, deceptive, misleading, abusive, unfair, or unscrupulous. Moreover, it is undisputed that Defendants relied on the information provided to them by Atlantic Credit and Finance Special Finance Unit, LLC ("ACF") in demanding payment

4

of the debt from Plaintiff and in filing the arbitration claim against her. The FDCPA does not require Defendants to perform an independent investigation of the information provided by ACF but rather entitles Defendants to rely on information that ACF supplies. *See Ducrest*, 931 F. Supp. at 462 (citing *Smith*, 953 F.2d at 1032). *See also* Affidavit of Yale L. Hollander, ¶¶ 4-6, attached hereto as Exhibit A. Because of Defendants' reliance, and Plaintiff's failure to present any evidence that Defendants knowingly or intentionally misrepresented any aspect of the debt, Plaintiff's FDCPA claim has no merit. The FDCPA claim, therefore, should be dismissed or, at the very least, should survive Plaintiff's Motion for Partial Summary Judgment.

      B.    <u>Contrary to Plaintiff's assertion, Danielle Hill did not base Defendants' arbitration claim on her own personal knowledge.</u>

In response to Defendants' argument that they are entitled to rely upon the creditor's representation that Plaintiff owes the amount stated, Plaintiff asserts that Defendants are "entitled to rely on this information for their own internal purposes if they wish to do so, but they are not entitled to offer this fact as their principal evidence in support of their claim against Ms. Holley. And they are not entitled to rely on that information to obtain a binding arbitration award against a person who does not owe them any money." Plaintiff's Memorandum, pp. 13-14. Plaintiff cites no authority whatsoever to support her bald argument. Nor does Plaintiff provide any authority for her proposition that "[t]he filing of the arbitration claim and the use of a sworn statement containing incorrect information in these circumstances are *clearly* FDCPA violations." *Id.* p. 14 (emphasis added).

The only authority Plaintiff provides in support of her FDCPA claim is a string of cases from an Illinois district court which are neither controlling nor persuasive here. *Id.* pp. 15-17. Following her misguided interpretations of the holdings in these cases, Plaintiff concludes with

5

yet another unsupported legal principle, which she refers to as a "basic rule"—"a debt collector such as Ms. Hill violates the FDCPA if she submits a sworn statement, *claiming to be based on her own personal knowledge*, if she does not in fact have the personal knowledge claimed and if her statement contains false information about a consumer's liability for a debt." *Id.* pp. 16-17 (emphasis added). First, and most important, Plaintiff entirely misrepresents the wording of Ms. Hill's statement in support of the arbitration claim. Ms. Hill did not state that her testimony is based on her own personal knowledge. Rather, as Plaintiff correctly quotes earlier in her Memorandum (*see* p. 12), Ms. Hill stated that she "asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are accurate." *See* National Arbitration Forum Claim, p. 2. Nowhere in the claim does Ms. Hill state that the information regarding the debt and Plaintiff's liability therefor is based on her own personal knowledge. Nor does Plaintiff provide any support for the proposition that a verification such as Ms. Hill's is to be treated the very same as one made on "personal knowledge." On this basis alone, Plaintiff's Motion for Partial Summary Judgment should be denied.

   C. <u>The National Arbitration Forum requires the very wording used by Ms. Hill in her statement in support of the arbitration claim.</u>

   Plaintiff herself acknowledges that the National Arbitration Forum, in which Defendants' arbitration claim was filed, *required* Ms. Hill to make the precise statement she in fact made to support the claim. *See* Plaintiff's Memorandum, p. 4, n.3 ("Under the rules of the NAF, an initial claim must include 'An Affidavit asserting that the statements and Documents in the Claim are *accurate*.' NAF Code of Procedure, Rule 12(A)(4) (emphasis added). Those Rules define an 'Affidavit' as 'A Written statement of a person who asserts the statement to be true under penalty of perjury or who makes the statement under oath before a notary public or other

authorized individual.'"). *See also* Plaintiff's Memorandum, p. 12 ("NAF's Code of Procedure, Rule 12(A)(4), requires an affidavit such as this to be submitted in support of every arbitration claim."). Plaintiff's argument, that Ms. Hill's statement violates the FDCPA, would result untenably in Defendants' never being able to submit any claim to the National Arbitration Forum without simultaneously violating the FDCPA. Such a result is not supported by the language of the FDCPA itself or the case law construing it.

D.  The line of cases which Plaintiff cites from the Northern District of Illinois is inapplicable to this action and does not establish an FDCPA violation by Defendants.

The Illinois cases cited by Plaintiff are simply inapposite to this case. Plaintiff erroneously cites *Young v. Meyer & Njus, P.A.*, 1997 WL 452685 (N.D. Ill.), for the blanket proposition that an attorney's review of a computer printout provided by the creditor showing the debt is due "cannot provide the basis for an attorney's verification of the facts based on personal knowledge." Plaintiff's Memorandum, p. 16. The court in *Young* was clear, however, in its conclusion that because the *particular printout at issue in that case*[2] would be insufficient to prove the subject debt at trial, the same document could not provide the basis for an attorney's verification of the facts based on *personal knowledge*. 1997 WL at *1. Again, Ms. Hill did not verify the claim based upon personal knowledge.

Additionally, the rationale in *Young* is specific to the facts of that case alone due to the unidentified peculiarities of the printout at issue. Furthermore, the court in *Young* did not determine that the collector's verification on personal knowledge violated the FDCPA. The court merely reasoned that because the printout would be insufficient to prove the debt at trial, the court could not grant the collector's motion to dismiss with respect to the plaintiff's FDCPA

---

[2] The court in *Young* did not identify the contents of the collector's printout, and thus we do not know in what manner the printout was insufficient to prove the debt or what type of evidence is necessary to prove a debt such as the one at issue in *Young*.

7

claim. Plaintiff's reliance upon *Young* is misplaced, as it cannot support her contention that a collector's statement that the information contained in an arbitration claim is accurate—a statement which the National Arbitration Forum requires—violates the FDCPA.

E.    <u>Defendants are not required to prove a "chain of title" to establish their ownership of the subject debt and concomitant right to collect the debt from Plaintiff.</u>

Plaintiff cites *Ford Motor Credit Co. v. Rutherford*, 481 So. 2d 870, 871 (Ala. 1985), for the proposition that Defendant Worldwide "cannot assert a claim to payment of the Household Bank credit card debt if it cannot prove a chain of title tracing that right to an assignment by Household Bank." Plaintiff's Memorandum, p. 13. First, with respect to credit card debt, there is no "title" to trace, and not even *Rutherford*, a case involving the purchase and financing of vehicles, appears to use the phrase "chain of title." Further, *Rutherford* certainly cannot be read to impose such an obligation on creditors and collectors like Defendants in this case. Nor does it hold that an entity's failure or inability to prove a "chain of title" prior to the institution of an arbitration proceeding violates the FDCPA, which Plaintiff seems to imply. *See* Plaintiff's Memorandum, p 13.

For all these reasons, Defendants are entitled to summary judgment on Plaintiff's claim arising under the FDCPA. Even assuming it is not, however, Plaintiff has failed to present substantial evidence that she is entitled to summary judgment on the FDCPA claim, and thus her Motion for Partial Summary Judgment, with respect to that claim, should be denied.

II.    **Declaratory Judgment Claim**

Plaintiff essentially argues in her Motion that because she disputes she is responsible for the subject debt, and because Defendants have not presented documentation bearing her signature or showing that she is a party to the credit card agreement, she is entitled to summary

8

judgment on her declaratory judgment claim. Plaintiff has failed to establish that no genuine issue of material fact exists as to Defendants' ownership of the subject debt and Plaintiff's responsibility for the debt. Plaintiff argues speciously that because Defendants have not produced documentation evidencing her signature or otherwise showing her acknowledgment of the account (i.e., proof of a contract), there can be no genuine issue that Plaintiff did not "contract" with Defendants or their predecessors. Plaintiff's Memorandum, pp. 6-9. It is noteworthy that Plaintiff fails to cite any authority whatsoever establishing a creditor's or collector's obligation, in a suit to collect a credit card debt, to produce a signed application or other documentation evidencing the signature or similar "acknowledgment" of a cardholder.

Credit card agreements are contracts whereby the issuance and use of a credit card, not the customer's signature, creates a legally binding agreement. *Discover Bank v. Poling*, 2005 WL 737404, *4 (Ohio App. 10 Dist. March 31, 2005) (quoting *Bank One, Columbus, N.A. v. Palmer*, 579 N.E.2d 284 (Ohio App. 1989) (other citations omitted)). "[A] creditor need not produce a signed credit card application to prove the existence of a legally binding agreement because the credit card agreement created one." *Poling*, 2005 WL at *4 (emphasis added). *See also Walker Bank & Trust Co. v. Jones*, 672 P.2d 73, 76 (Utah 1983) (holding that liability for the defendants' husbands' use of the credit cards at issue was governed by the cardholder agreements applicable to the accounts); *Athon v. Direct Merchants Bank*, 2007 WL 1100477, *4 (M.D. Ga. April 11, 2007) (rejecting plaintiffs' argument that because they did not sign the cardholder agreement pertaining to the subject credit card account, they were not bound by the agreement's arbitration provision). The court in *Poling* explained that by Poling's use of the credit card, he became bound by the terms and conditions set forth in the cardmember agreement. 2005 at *5. Therefore, according to the court, the cardmember agreement is a

9

"legally binding agreement" between the parties. *Id.* at *5 (quoting *Palmer*, 579 N.E.2d at 284). By defaulting on the account, according to the court, Poling breached the cardmember agreement. 2005 WL at *5. The court determined that the evidence was sufficient for the trial court to find that a contract existed between the parties, that Poling breached the contract, and that Discover was damaged as a result. *Id. See also Municipal Employees Credit Union v. Sanders*, 1997 WL 412108, *1 (Tenn. Ct. App.) (responding to the appellant-wife's argument that she did not sign the credit card application submitted by her deceased husband and hence cannot be liable for the debt, the court reasoned, "[t]he proof was sufficient to justify a finding that the appellant inferentially acquiesced in the incurrence of these debts.").

In sum, Plaintiff's argument that she is due summary judgment on her declaratory judgment claim on the basis that Defendants have failed to produce evidence of a signed contract, application, or cardholder agreement, is not grounded in the law. To the contrary, the law provides that the cardholder agreement which Household Bank originally provided to Plaintiff created the legally binding agreement. As established previously, Defendant Worldwide is the assignee with respect to Plaintiff's debt and is entitled to enforce the legally binding agreement.

## **CONCLUSION**

The Plaintiff argues she is entitled to summary judgment on the FDCPA claims because the affidavit submitted by Ms. Hill misrepresents the nature, amount and legal status of the debt. This argument is disingenuous. There is only one real contest regarding the affidavit: is the Plaintiff <u>the</u> Kimberly Holley responsible for this debt. If any other statement in the affidavit is false, it is false <u>only</u> because the wrong Ms. Holley is identified. Thus, the dispositive issue becomes whether the Plaintiff would simultaneously prove a violation of the FDCPA if she can

prove she is not the correct debtor on this account. At a minimum there is a genuine issue of material fact regarding this issue that precludes summary judgment for the Plaintiff. In fact, even in a light most favorable to the Plaintiff, the weight of the law actually supports summary judgment for the Defendants.

The proper focus of an FDCPA claim is on the conduct of the Defendant while collecting the account. Even if the debt is not disputed, a debtor can maintain an FDCPA claim if the conduct of the collector was harassing or deceptive. Conversely, the plaintiff need not owe any money whatsoever yet can still recover under the FDCPA *if* subjected to abusive collection activity. Simply being named as the debtor in a lawsuit (or arbitration), even if named incorrectly, is not in and of itself a violation of the FDCPA. In this case it is instructive to consider the Plaintiff's argument in reverse: if she *is* the correct debtor then by her own arguments and admissions, the FDCPA case would be moot. That is because she is not complaining of the collection activity itself (governed by the FDCPA) but is complaining only because she was named in the dispute (to be resolved by the declaratory judgment action). Proving one does not prove the other, and in this case Plaintiff has premised her entire right to recover under the FDCPA on the assumption she can prove she is not the debtor. Even if she is correct, she has not proven anything relevant to the collection activity itself, and thus nothing relevant to the FDCPA.

The only other alleged FDCPA violation asserted by Plaintiff is that the attestation to Danielle Hill's signature on the arbitration affidavit somehow violates the FDCPA. The cases cited by Plaintiff do not support this contention. Moreover, even if Plaintiff's undocumented "rule" was correct, i.e., that attesting to the validity of the cardholder documents via personal knowledge violates the FDCPA, Danielle Hill did nothing of the sort in this case. Hill's affidavit

11

is not premised on her personal knowledge and mirrors the language required by the National Arbitration Forum to initiate the dispute. Plaintiff's arguments that the affidavit violates the FDCPA are wrong factually and legally.

Plaintiff's Motion for Partial Summary Judgment on the declaratory judgment claim is also due to be denied. The account at issue in the declaratory judgment action was purchased without notice of a dispute from a successor in interest to the original creditor. Though the case law is clear that Defendants are not required to prove the origination of the debt in order to file suit over the indebtedness, Defendants have produced documents sufficient to trace this account back to the original creditor. These documents alone create a genuine issue of material fact regarding Plaintiff's entitlement to a declaratory judgment.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court deny, in its entirety, Plaintiff's Motion for Partial Summary Judgment.

Respectfully Submitted,

/s/   Neal D. Moore, III
Neal D. Moore, III (ASB-3971-M73N)
L. Jackson Young, Jr. (YOU035)
*Attorneys for Defendant Worldwide Asset Purchasing, LLC*

Of Counsel:
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama  35243
205-879-8722 – telephone
205-879-8831 – telecopier

## CERTIFICATE OF SERVICE

  I hereby certify that I have on this the 21st day of May, 2007, served a copy of the foregoing pleading electronically via CM/ECF system on the following counsel of record:

Edward M. Wayland, Esq.
Post Office Box 17
Montgomery, Alabama 36101

                /s/   Neal D. Moore, III
                OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLEY N. HOLLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:06cv-677-WKW |
| WORLDWIDE ASSET | ) |
| PURCHASING, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF YALE L. HOLLANDER

STATE OF _Missouri_ )
COUNTY OF _St. Louis_ )

1. My name is Yale L. Hollander, and I am a resident of _St. Louis_ County, _Missouri_. I am more than twenty-one years of age. This affidavit is made from my personal knowledge. I also have personal knowledge as to the accuracy and origin of the exhibits attached to this affidavit. I am submitting this affidavit in support of Defendants Worldwide Asset Purchasing ("Worldwide"), LLC's, the Law Offices of Gerald E. Moore & Associates, P.C.'s, Gerald E. Moore's, and Danielle M. Hill's Response to Plaintiff's Motion for Partial Summary Judgment.

2. I am the litigation manager for the Law Offices of Gerald E. Moore & Associates, P.C. ("GEMA"). My duties and responsibilities in my position at GEMA include serving as legal counsel for Worldwide in the collection of outstanding credit card debt due and owing to Worldwide, including the debt at issue in this action.

3. Attached hereto as Exhibit 1 is a Purchase and Sale Agreement, dated May 14, 2004, between Defendant Worldwide and non-party Atlantic Credit and Finance Special Finance Unit, LLC ("ACF"). Exhibit 1, including all exhibits and attachments thereto, is an accurate and complete copy of the Purchase and Sale Agreement between Worldwide and ACF and is maintained in the normal course and scope of business at GEMA, through its representation of Worldwide. I am familiar with this material based on my position with GEMA.

4. The attached documents evidence the negotiations of Worldwide in purchasing this account, including the contingency that ACF could not sell the account unless the original creditor, Household Card Services, Inc. satisfied its performance

obligations which included, among others, that the information in the sales file is true and correct in all material respects.

5. Based on GEMA's history of representing Worldwide, and collecting for Worldwide, GEMA relies on the information provided by Worldwide regarding the assigned accounts. GEMA is aware the accounts are purchased with assurances that the information pertaining to the account is true and correct. Based on GEMA's previous business dealings with Worldwide, GEMA reasonably relied on the information provided to them by Worldwide, including but not limited to Exhibit B to Exhibit 1, entitled "Receivables Purchase Agreement," as well as the Bills of Sale also comprising Exhibit 1, in determining the legality and validity of the subject debt; in determining Plaintiff's responsibility for the debt; in demanding payment of the debt from Plaintiff; and in filing the arbitration claim against her.

6. The FDCPA does not require Defendants to perform an independent investigation of the information provided by ACF but rather entitles Defendants to rely on information that ACF supplies. *See Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).

Further affiant saith not.

_____
Yale L. Hollander

STATE OF _MISSOURI_ )
COUNTY OF _ST. LOUIS_ )

BEFORE ME, the undersigned Notary Public in and for said County and State, personally appeared YALE L. HOLLANDER, the _MANAGING ATTORNEY / LITIGATION MGR._ of the Law Offices of Gerald E. Moore & Associates, P.C., whose name is signed to the foregoing Affidavit, and who is known to me and who, being by me first duly sworn, on oath deposes and says that he has personal knowledge of the statements contained in the foregoing Affidavit and that they are true and correct.

SWORN TO and subscribed before me on this the 21st day of May, 2007.

_Victoria M Swoboda_
NOTARY PUBLIC

My Commission Expires: _10-24-08_

VICTORIA M. SWOBODA
My Commission Expires
October 24, 2008
St. Louis County
Commission #04408896

Exhibits Filed UNDER SEAL