IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Southern Division

**KIMBERLEY N. HOLLEY,**

      **Plaintiff,**

v.

                                                                           Civil Action No.
                                                                       1:06-cv-677-WKW

**WORLDWIDE ASSET**
      **PURCHASING, LLC, et al.,**

      **Defendants.**


**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO THE DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

      The defendants in the above-entitled action have filed a motion for partial summary judgment as to the causes of action asserted by the plaintiff, Kimberley N. Holley, for defamation and for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 et seq.  The parties have agreed that the cause of action for defamation should be dismissed, and they have filed a joint stipulation of dismissal as to that claim.  The plaintiff contends, however, that the defendants' argument that they are entitled to summary judgment on her cause of action under the FDCPA is without merit and should be denied.

      In support of her position, the plaintiff relies on the evidence and arguments she previously submitted in support of her own motion for summary judgment as to the defendants' liability under her FDCPA cause of action.  In this Memorandum, the plaintiff addresses the arguments presented by the defendants in their motion on this issue.

**Introduction and Summary of Argument**

The motions presented by the parties make it clear that there is broad agreement as to the facts and as to applicable law. The plaintiff agrees with the defendants that her cause of action for violation of the FDCPA is based on statements made by defendant Danielle M. Hill in the sworn arbitration claim she submitted to the National Arbitration Forum (NAF). The defendants' sole argument supporting their contention that they are entitled to summary judgment is that statements made as part of an arbitration proceeding enjoy a special protected status which immunizes the person making them from liability under the FDCPA.

The plaintiff agrees that statements made in court enjoy a broad immunity that prevents them from being used as the basis of a later claim for certain tort damages. It is well-settled, however, that this immunity does not protect debt collectors and their attorneys from FDCPA liability for statements they make in the course of litigation which are false or misleading or which otherwise violate the provisions of the FDCPA. In addition, there is no authority which would justify extending the immunity claimed by the defendants for statements made in a judicial proceeding to the arbitration proceeding involved in this action. The defendants' motion for summary judgment on this claim should, therefore, be denied.

**A. The Defendants' statements to the NAF were not privileged.**

The defendants' statements to the NAF are contained in the claim they submitted to the NAF to initiate an arbitration proceeding there. (This document has previously been submitted to the Court as Pl. SJ Ex. 1.) The defendants argue that statements made by either a litigant or a witness in a judicial proceeding are absolutely privileged and cannot be the basis for a later tort action. The defendants then assert that an NAF arbitration proceeding is a quasi-judicial

2

proceeding, and that statements made as part of an arbitration proceeding are also entitled to this absolute privilege. E.g., *Webster v. Byrd*, 494 So.2d 31 (Ala. 1986); Defendants' Memorandum at 6-9. While the *Webster* analysis could apply to some arbitration proceedings, it is not necessarily true that it would apply to all arbitration proceedings.

      The *Webster* case dealt with an administrative proceeding established under Alabama state law to review employment termination decisions. The court concluded that the administrative proceeding qualified as a "quasi-judicial" proceeding and that, therefore, the litigation immunity would apply to statements made as part of that proceeding. *Webster* did not involve a private arbitration proceeding and so is not direct authority for the proposition that this immunity would apply to statements made in arbitration. The defendants have pointed to no decisions of the Alabama Supreme Court extending *Webster* to include arbitration proceedings, and there are none. Instead, the defendants ask this Court to extend *Webster* to cover their actions in this case.

      In *Webster*, the Alabama Supreme Court set out a list of qualities which describe a "quasi-judicial" proceeding and which are therefore covered by the litigation privilege. These qualities included "notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision maker." 494 So.2d at 34. The defendants have offered no evidence in support of their summary judgment motion showing that the NAF proceeding involved here meets this test.

      Arbitration proceedings often have significant procedural limitations when compared to

other judicial and quasi-judicial proceedings.[1] There is typically, for example, only an extremely limited right of review of the final determination of the arbitrator, whose decision is final in almost all cases. This is central to the whole idea of arbitration, since it is a procedure which promises a speedy, final and relatively inexpensive process. By contrast, the parties in typical judicial or quasi-judicial proceedings typically have a right to some kind of review of the decision in their case.

It is significant that arbitration procedures are created and defined by contracts between private parties, not by the state. E.g., *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960) (arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). As a result, those procedures may vary widely from one situation to another. At the very least, courts considering claims of privilege should look at the facts of each arbitration agreement to determine whether the process involved satisfies the basic elements of a quasi-judicial proceeding, such as those set forth by

---

[1] These limitations have caused questions to be raised about the fairness of arbitration procedures. On October 17, 2006, for example, Congress enacted legislation to prohibit the use of arbitration clauses in credit contracts with members of the United States Armed Forces (codified at 10 U.S.C. §987(f)(4)). On April 17, 2007, Senator Jeff Sessions (R-Alabama) introduced the Fair Arbitration Act of 2007 (S.B. 1135), which would reform federal arbitration law by providing a number of procedural protections to consumers involved in arbitration proceedings. See also, e.g., *Birmingham News Co. v. Horn*, 901 So.2d 27, 66-67 (Ala. 2004) (rejecting 11th Circuit ruling in *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186, 1191 (1995) and finding that the court's involvement in enforcing arbitration awards provides sufficient state action to support application of basic due process considerations in reviewing such awards); Gretchen Morgenson, "Dear S.E.C., Reconsider Arbitration," New York *Times*, May 6, 2007, Section 3, page 1 (reporting on a letter sent by Senators Patrick J. Lahey (D-Vermont) and Russell D. Feingold (D-Wisconsin), asking the Chair of the S.E.C. to ban mandatory arbitration in securities disputes "in fulfillment of its statutory duties to protect individual investors"); Gaines and Walsh, "After the Battle Over Arbitration: An Analysis of Post-Enforceability Issues", *The Alabama Lawyer*, Nov. 2005 (Vol. 66, No. 7), 443-49, (advising, at 449, among other things, that "potential defendants and their counsel should consider reexamining both the use of arbitrations and the terms employed. . . .").

the Alabama Supreme Court in *Webster*. The defendants have not offered any evidence in support of their motion which would all this Court to do that.

In addition, in the present case, there is a far more basic reason to reject the defendants' claim that they are entitled to the protection of an absolute privilege. Arbitration is a procedure which is created and which exists only when the parties voluntarily enter into a contract agreeing to be bound by such a procedure for settling disputes. In the present case, there was no contract. Ms. Holley never entered into an agreement to set up the credit card account in the first place, and she did not agree to settle disputes by arbitration. See Plaintiff's Memorandum in Support of Her Motion for Partial Summary Judgment at 6-8. There was, therefore, no arbitration proceeding, and there could be no privilege. The arbitration "proceeding" initiated by the defendants was a "legal nullit[y] from the start." *Klay v. United Healthgroup, Inc.*, 276 F.3d 1092, 1112, n. 20 (11th Cir. 2004) (injunction not appropriate to stop arbitration of claims not covered by an arbitration agreement as such a proceeding would be without legal effect).

The defendants claim that they are protected by an absolute privilege, even if a claim against them is based, as it is in this case, on a sworn document containing false statements of fact. In such a case, the burden is clearly on the defendants to establish they are entitled to such sweeping protection from being held accountable for the harm which flows inevitably from such an action. As the Alabama Supreme Court said in *Webster,* "the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." 494 So. 2d at 35.

The defendants initiated an arbitration proceeding against someone who had not agreed to arbitration and who did not owe the debt, without any admissible evidence to support their

5

claims. The privilege they claim exists to protect the broad public interest in the pursuit of the truth. These defendants cannot claim the protection of that privilege when they are asked to be accountable for the damage they have caused by doing business in this way.

The arbitration proceeding in this matter was not a quasi-judicial proceeding at all. The defendants are not entitled, therefore, to a privilege against liability under the FDCPA based on their claim of immunity for their false statements as a part of that arbitration proceeding.

**B. Even if a privilege protects statements made in an arbitration proceeding from some subsequent tort claims, that privilege does not shield attorney debt collectors from liability under the FDCPA for making false statements, whether as part of an arbitration or in the course of litigation.**

The defendants argue that they cannot be found liable under the FDCPA as a matter of law for false statements made in support of the arbitration claim they initiated to collect a debt from the plaintiff, Ms. Kimberley N. Holley. They assert that this is so because such statements are protected by various privileges, including a litigation privilege and a witness privilege. The position argued by the defendants represents a radical departure from the conclusions drawn by almost every court to have considered these issues.

There is ample authority for the proposition that the FDCPA applies to statements made by an attorney debt collector in the course of litigation. In *Heinz v. Jenkins*, 514 U.S. 291 (1995), the United States Supreme Court said that "the [FDCPA] does apply to lawyers engaged in litigation." Id. at 294. The Fourth Circuit recently explained the *Heinz* ruling, referring to the Court's analysis of amendments to §1692(a)(6), the definition of "debt collector":

> The Court [in *Heinz*] further recognized that an earlier version of § 1692(a)(6) had provided an express exception for lawyers, which stated that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Id. (citing Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977)). In 1986, however, Congress repealed the attorney exemption. Id. (citing Pub.

6

>L. No. 99-361, 100 Stat. 768 (1986) ("[A]ny attorney who collects debts on behalf of a client shall be subject to the provisions of [the Act].")). The Court recognized the significance of Congress having repealed the attorney exemption "in its entirety, without creating a narrower, litigation-related exemption to fill the void." Id. at 294-95. The Court declined to imply such a litigation related exception, holding that such an exception "falls outside the range of reasonable interpretations of the Act's express language." Id. at 298. Thus the Court confirmed that there is no implied exemption to the statute's definition of debt collector: as is clear from its face, the FDCPA "applies to the litigating activities of lawyers." Id. at 294.

*Sayyed v. Wolpoff & Abramson*, -- F.3d --, 2007 U.S. App. LEXIS 10924, 9-10 (decided May 9, 2007). The Fourth Circuit went on to examine a recent action by Congress to amend another section of the FDCPA:

>After Heintz, Congress passed an amendment to the statute that provides further confirmation that the FDCPA applies to conduct like that at issue here. It amended § 1692e(11), which prohibits communications that fail to disclose that they are from a debt collector, to state that the provision "shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11), as amended Pub. L. 104-208, § 2305(a), 110 Stat. 3009, 3009-425 (1996). This provision expressly exempts formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector.
>
>If [the debt collector defendants] were correct that conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary. "[C]ourts should disfavor interpretations of statutes that render language superfluous." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). The amendment by its terms in fact suggests that all litigation activities, including formal pleadings, are subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11). Furthermore, because Congress is presumed to act with awareness of a judicial interpretation of a statute, the fact that the amendment occurred after Heintz further indicates that Congress was aware of the Court's interpretation of the FDCPA and accepted it, except for the narrow exemption it provided for formal pleadings from the requirements of § 1692e(11). See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 381-82, 102 S. Ct. 1825, 72 L. Ed. 2d 182 (1982) (Congress presumed to be aware of prior judicial interpretation in amending statute). Thus, under multiple precepts of statutory interpretation, Congress' amendment of § 1692e(11) provides clear evidence that litigation activity is subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the requirements of that particular subsection.

Id., at 10-11.[1]

It is also important to note that debt collectors are protected from FDCPA claims based on violations that were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error." 15 U.S.C. §1692k(c). Courts have regularly noted this protection in analyzing claims for other kinds of immunity under the FDCPA. In *Sayyed, supra*, the Fourth Circuit also spoke to this point, stating:

> Our view that common law immunities cannot trump the Act's clear application to the litigating activities of attorneys is fortified by its bona fide error defense provision. . .. 15 U.S.C. § 1692k(c). This provision offers a kind of qualified immunity to debt collectors, protecting actions which otherwise are covered by the statute but arose from bona fide error and were not intentional violations. Such a provision supplies an additional argument against implying immunities as to which the statute is silent: Congress addressed the issue of immunity expressly and extended it only as far as § 1692k(c) provides. To insist that some unarticulated, common law immunity survived the creation of the FDCPA would be to fail to give effect to the scope of the immunity articulated in the text.

2007 U.S. App. LEXIS 10924, 11-12.

This approach has been confirmed repeatedly over the years since *Heinz* was decided. Again, as pointed out by the Fourth Circuit in *Sayyed*:

> All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition. See, e.g., Goldman v. Cohen, 445 F.3d 152, 155 (2nd Cir. 2006); Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432, 446 (6th Cir. 2006); Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232 (3d Cir. 2005); Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 917 (7th Cir. 2004) (en banc); Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002); Addison v. Braud, 105 F.3d 223, 224 n.1 (5th Cir. 1997); but see Vega v. McKay, 351 F.3d 1334, 1337 (11th Cir. 2003) (relying on superseded FTC commentary to hold complaint did not constitute initial communication under FDCPA).

---

[1] As this analysis shows, contrary to the argument offered by the defendants (see Defendants' Memorandum at 19), the plain meaning of the FDCPA's language covers litigation activities of debt collector attorneys.

Id., at 13-14.

Although the Fourth Circuit stated that the Eleventh Circuit was an exception to this line of cases, the fact is that the Eleventh Circuit has never ruled on this issue. The case cited, *Vega v. McKay*, dealt with the issue whether an initial pleading in a case was a "communication" for purposes of 15 U.S.C. §1692g and therefore had to comply with the special requirements of that section for information which must be included in dunning letters. That is very different from the question whether, as *Sayyed* and the other courts cited by the Fourth Circuit concluded, communications of a debt collector attorney in litigation are covered by the FDCPA's prohibitions against false and deceptive statements in collecting a debt.

The defendants themselves recognize that there is considerable authority contrary to their position, citing a line of cases in the Sixth Circuit. Defendants' Memorandum at 13, n. 2. There are indeed a large number of cases from the Sixth Circuit who have joined the mainstream in agreeing that false statements by attorney debt collectors in litigation are actionable under the FDCPA. See *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006) (rejecting claim of witness immunity for attorney in FDCPA action); *Hartman v. Asset Acceptance Corp.*, 467 F. Supp. 2d 769, 778 (S.D. Ohio 2004) (no litigation or witness privilege for affidavit filed in support of state court collection action); *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662, (S.D. Ohio 2004); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio, 2005); *Kelly v. Great Seneca Fin. Corp.*, 443 F. Supp. 2d 954 (S.D. Ohio 2005).

In the face of this overwhelming contrary authority, the defendants rely on two district court decisions, *Beck v. Codilis & Starwiarki, P.A.*, 2000 U.S. Dist. LEXIS 22440 (N.D. Fla. 2000) and *Etapa v. Asset Acceptance Corp.,* 373 F.Supp. 2d 687 (E.D. Ky. 2004). The plaintiff

9

agrees that these cases find attorneys immune from FDCPA liability based on the doctrine of witness immunity. Concluding that witness immunity is absolute, both courts concluded that statements made in collection litigation were shielded from any claim based on the FDCPA.

Both cases are distinguishable from the present case, however, on their facts. *Beck* involved an affidavit submitted by an attorney in support of a claim for reimbursement for fees paid. The court noted that the false statements could have had no impact on the outcome of the collection action involved, because the claimed fees were, in any event, reasonable. 2000 U.S. Dist. LEXIS 22440 at 13. The attorney's statements were false only in describing how those fees were calculated. By contrast, in the present case, the false statements were offered as evidence to establish the plaintiff's liability for a debt she did not owe. *Etapa* involved a statement by an employee of the debt collector to the effect that the debt collector was a "holder in due course." 373 F.Supp.2d at 689. This was a statement of a legal position or at most an application of law to fact, and is certainly not the same kind of statement as those involved in the present case.

The plaintiff submits in addition that, with all due respect, these cases were wrongly decided. As the Sixth Circuit pointed out in *Todd v. Weltman, Weinberg & Reis Co., L.P.A., supra,* the traditional common law witness immunity is not, in fact, absolute. Specifically, the immunity does not cover false statements made by the complaining witness who initiates the proceeding. 434 F.3d at 444. See *Wyatt v. Cole*, 504 U.S. 158, 164-65 (1992) ("although public prosecutors and judges were accorded absolute immunity at common law, such protection did not extend to complaining witnesses who, like respondents, set the wheels of government in motion by instigating a legal action"); *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986) ("complaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a

complaint could be held liable if the complaint was made maliciously and without probable cause"); see also *Ex parte State Farm Mut. Auto. Ins. Co.*, 924 So.2d 706, 710 (Ala. 2005) ("Alabama law recognizes a cause of action for the "malicious prosecution" of a civil action").

The Sixth Circuit in *Todd* rejected the very argument being made by the defendants in the present case and concluded that witness immunity does not protect a debt collector attorney who submits a false affidavit to a court from FDCPA liability. The court said that "The purpose of this [witness] immunity is to preserve the integrity of our judicial system, not to assist a self-interested party who allegedly lies in an affidavit to initiate a garnishment proceeding." 434 F.3d at 447. Like the defendants in the present case, the debt collector in *Todd* relied on *Beck* and *Etapa*. The Sixth Circuit rejected the analysis relied on in those cases, saying that "Because neither case addresses the complaining witness analysis, they are unpersuasive in the present factual context." Id. at 444, n.3. (This in effect overruled *Etapa*, a case from Kentucky, which is in the Sixth Circuit.)

The defendants also argue that their statements in this matter were part of an effort to "petition the government" for redress and were therefore immune from liability under the *Noerr-Pennington* doctrine. Defendants' Memorandum at 17. It is at best a stretch to claim, as the defendants do, that filing an arbitration claim is a form of petitioning the government for relief. See discussion, supra, at 2-6. There is also a real question whether *Noerr-Pennington* even applies in an FDCPA context, or whether the issue is more properly viewed as one of the application of the Petition Clause of the First Amendment. *Cardtoons, L.C., v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889-890 (10th Cir. 2000); *DIRECTV, Inc. v. Cavanaugh*, 321 F.Supp.2d 825, 840 (E.D. Mich. 2003). Whatever the basis for the doctrine, it should be noted that the authorities are clear that it is not absolute. The Supreme Court has said that

> The first amendment interests involved in private litigation -- compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts -- are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition."

*Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 744 (1983); see also *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 530-31 (2002); *McDonald v. Smith*, 472 U.S. 474, 484 (1985) ("filing a complaint in court is a form of petitioning activity; but baseless litigation is not immunized by the First Amendment right to petition", citing *Bill Johnson's Restaurants, Inc.* case). Under such a test, it seems clear that there is no impediment under the *Noerr-Pennington* doctrine to finding attorney debt collectors subject to FDCPA liability for their actions in litigation which violate that Act.

The defendants have cited no cases in which FDCPA claims were dismissed under the authority of *Noerr-Pennington*. This argument has, however, been considered and rejected by several courts. *Kelly v. Great Seneca Fin. Corp.*, 443 F.Supp.2d 954, 960 (S.D. Ohio 2005) ("the defendants' immunity arguments cannot overcome the unambiguous text of the statute and the unambiguous holding of Heintz v. Jenkins, which this Court must follow"); *Delawder v. Platinum Fin. Servs. Corp.,* 443 F.Supp.2d 942, 950 (S.D. Ohio, 2005). In *DIRECTV, Inc. v. Cephas,* 294 F.Supp.2d 760, 767 (M.D.N.C. 2003), the court ruled that *Noerr-Pennington* did not protect litigation activities from liability under North Carolina consumer protection statute, stating that "parties bringing good faith claims . . . do not need the protections of the Noerr-Pennington doctrine. Conversely, parties who threaten consumers with nonmeritorious litigation should be subject to liability . . ., for these acts may well be unfair and deceptive." Id. at 767. Similarly, in *DIRECTV, Inc. v. Cavanaugh, supra,* the court declined to apply the *Noerr-Pennington* doctrine to bar suit under the Michigan Consumer Protection Act. The court said:

> Lastly, it is difficult to see how subjecting DIRECTV to liability under the MCPA would chill its right to petition the government and seek redress. At issue in this motion is not DIRECTV's right to use demand letters as a means of encouraging settlement, but rather its use of false or misleading statements in the demand letters. If Cavanaugh's allegations are proven at trial, punishing DIRECTV will not deter future use of demand letters. At best, it will encourage the company to investigate carefully its accusations and to be precise in the language it uses when attempting to settle with suspected signal pirates.

321 F.Supp.2d at 842.

Similarly, in the present case, the only deterrent effect of permitting suit against the defendants under the FDCPA would be to discourage them and others from filing claims, whether in court or for arbitration, based on false assertions, offered under oath, of an entitlement to recover. That is exactly the kind of thing the FDCPA seeks to do. E.g., *Delawder, supra,* 443 F.Supp.2d at 951 ("Applying any of these immunity doctrines to bar Delawder's claim under the FDCPA would be contrary to the FDCPA's statutory purpose").

**Conclusion**

The defendants have characterized the plaintiff's argument in this case as seeking to impose liability on a debt collector who asserts a claim and does not prevail "simply for filing suit." E.g., Defendants' Summary Judgment Motion, ¶4. With respect, that is not the plaintiff's argument. The plaintiff's position is that the FDCPA prohibits a debt collector, including an attorney debt collector, from swearing to facts which she does not know to be true, and which are in fact false, for the purpose of collecting a debt. To rule that such an act is immune from FDCPA regulation would defeat the purpose of the FDCPA and render debt collector attorneys largely immune from any regulation under that Act. As the courts have repeatedly ruled, that was not the intent of Congress and it is not the law. This Court should reject the defendants'

claims of immunity and find them liable under the FDCPA for the actions they resorted to in attempting to collect this debt from Ms. Holley.

For the foregoing reasons, the plaintiff asks this Court to reject the claims of immunity asserted by the defendants, to enter summary judgment in her favor as to the defendants' liability on her claim for damages for violations of the FDCPA as requested in her motion, and to grant her in addition for such other and further relief as to this Court shall seem just and proper.

                Respectfully submitted,

                KIMBERLEY N. HOLLEY
                Plaintiff
                By Counsel

s/ *Edward M. Wayland*
Edward M. Wayland, Esq.
AOC # WAY004
P.O. Box 17
Montgomery, AL   36101
(334) 834-9901
(334) 264-8742 (fax)
e-mail:  edwayland@yahoo.com

Counsel for Plaintiff

## CERTIFICATION

I hereby certify that a true copy of the foregoing Plaintiff's Memorandum in Opposition to the Defendants' Motion for Partial Summary Judgment was filed with this Court using the CM/ECF filing system on this 22nd day of May, 2007, and this Court will electronically deliver a copy to Neal D. Moore, III, Esq., Jonathan B. Minchin, Esq., and Leilus Jackson Young, Jr., Esq., Ferguson, Frost & Dodson, LLP, 2500 Acton Road, Suite 200, Birmingham, AL  35243, counsel for defendants.

                s/ *Edward M. Wayland*
                Edward M. Wayland