IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLEY N. HOLLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:06-cv-677-WKW |
| ) | |
| WORLDWIDE ASSET ) | |
| PURCHASING, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
MOTION FOR PARTIAL SUMMARY JUDGMENT[1]**

COME NOW Defendants Worldwide Asset Purchasing, LLC, the Law Offices of Gerald E. Moore & Associates, P.C., Gerald E. Moore, and Danielle M. Hill ("Defendants"), and in reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, state as follows:

**INTRODUCTION**

Plaintiff's claim that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") derives exclusively and inextricably from her allegation that Defendants filed the arbitration proceeding against the incorrect individual, which Defendants emphatically deny, and in doing so, falsely represented that Plaintiff is the individual who is responsible for the credit card debt at issue. Plaintiff does not allege that Defendants made late night telephone calls to her; that Defendants threatened her with harm; that Defendants mailed harassing letters to her;

---

[1] In their Motion for Partial Summary Judgment, Defendants moved for summary judgment on Plaintiff's defamation claim. Since the filing of Defendants' motion, Plaintiff has voluntarily dismissed the defamation claim. This reply, therefore, addresses only Plaintiff's claim under the Fair Debt Collection Practices Act.

that Defendants disclosed embarrassing debt information about her to her employer, family, or neighbors; or that Defendants otherwise engaged in heavy-handed conduct of any kind in their attempts to collect the subject debt from her.[2]  Rather, Plaintiff asks this Court to reach the untenable result that because she is allegedly the "wrong" Kimberley Holley—which is, after all, the ultimate issue in this case—all of Defendant Danielle Hill's statements in her affidavit, filed in support of Defendants' arbitration petition, are necessarily "false" and thus violate the FDCPA.

Fortunately, the Court need not take this trip with Plaintiff down the rabbit-hole, for several reasons.  First, the Court need not even resolve this and other peripheral issues, like Defendants' entitlement to immunity, as Defendants' statements made in the arbitration proceeding, to the effect that Plaintiff is the responsible party, are not governed by the FDCPA in the first instance.  Second, Plaintiff's FDCPA claim fails because the cases which Plaintiff cites in response to Defendants' Motion for Partial Summary Judgment, and the cases which Defendants have cited, concern alleged misrepresentations on the part of debt collectors where the consumer's responsibility for the debt is established and thus not at issue.  In other words, the focus of any inquiry under the FDCPA is on the collector's specific conduct with respect to its collection efforts toward the consumer and whether the collector acted abusively, deceptively, unfairly, or unscrupulously, not on an unsupported allegation of mistaken identity.

Third, to establish an FDCPA violation, Plaintiff must prove Defendants' representation that she is the responsible party is *false*.[3]  Heretofore, Plaintiff has argued only that Defendants

---

[2] This is the type of conduct the FDCPA was intended to ban.  *See* S. Rep. No. 382, 95th Cong., 1st Sess. 1977, 1977 U.S.C.C.A.N. 1695, 1696; see also H.R. Rep. No. 131, 95th Cong., 1st Sess. 16 (1977).

[3] *See* 15 U.S.C. § 1692e (prohibiting collectors from using false, deceptive, or misleading representations or means in connection with collecting any debt); § 1692e(2)(a) (prohibiting any false representation of the character, amount, or legal status of any debt); and § 1692e(10) (prohibiting any false representation or deceptive means to collect or attempt to collect any debt).

have proffered insufficient evidence to establish her responsibility for the debt or Defendants' ownership of the debt and concomitant right to collect it. Plaintiff has presented no evidence of her own, however, beyond her bald denial of responsibility, to show that she is *not* the responsible party, or that Defendants do *not* have the right to enforce the debt.[4] It is Plaintiff's burden, not Defendants', under the FDCPA to prove these facts.[5] Because Plaintiff has failed to prove, and in fact cannot prove, that Defendants' representations were false, she cannot establish an FDCPA violation.

Finally, even assuming Plaintiff can, under these tenuous circumstances, establish a prima facie violation of the FDCPA, and she cannot, Defendants' representations made in the course of a quasi-judicial proceeding like the National Arbitration Forum arbitration are protected by the litigation privilege, the absolute witness immunity doctrine, and the *Noerr-Pennington* doctrine.

## ARGUMENT

A. **The FDCPA's focus is on Defendants' specific conduct in attempting to collect the debt from Plaintiff, not on whether Plaintiff actually owes the debt, and thus the FDCPA does not apply, in the first instance, to Defendants' representations, made in the arbitration proceeding, that Plaintiff owes the subject debt.**

Plaintiff cites the Court to many cases ostensibly standing for the proposition that the FDCPA regulates litigation activity. Plaintiff describes the holdings of these cases imprecisely, and it is not necessary for this Court to overrule implicitly or explicitly *Sayyed*, *Heintz*, *Todd*, or *Beler*, *infra*, to grant summary judgment for Defendants. Contrary to Plaintiff's assertions, those cases do not regulate <u>litigation</u> activity but, rather, regulate <u>collection</u> activity. Each of those cases deals with specific conduct by collectors <u>above and beyond</u> the simple initiation of

---

[4] *See Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 1003-04 (N.D. Ind. 2005).
[5] *See Drake v. Wolpoff & Abramson, L.L.P.*, 2007 WL 611203, *2 (E.D. Cal. Feb. 27, 2007) ("As the party who will bear the burden of proof at trial, plaintiff has not come forward with evidence that demonstrates a violation of the Fair Debt Collection Practices Act.").

3

litigation to collect a debt. In other words, Plaintiff cites to cases wherein the collectors allegedly engaged in illegal collection conduct <u>beyond</u> filing suit to justify her position in the present matter that <u>the act of filing suit itself</u> can violate the FDCPA. This holding is nowhere to be found in the authorities cited by Plaintiff.

Rather, a court's focus under the FDCPA is, and should be, on the collector's specific conduct in attempting to collect a debt, not on whether the plaintiff is the party responsible for the debt. To that end, the court in *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 461 (M.D. La. 1996), reasoned that the basis of the plaintiff's FDCPA claim *should have been* that the defendant acted unscrupulously in attempting to collect a debt from her, "not that the debt collector is attempting to collect a debt she doesn't owe. The validity of the debt would only be at issue if this were a suit by defendant to collect the debt. The focus of this [FDCPA] inquiry is on the debt collector's *conduct*." 931 F. Supp. at 462 (emphasis added). The court in *Ducrest* further determined that the plaintiff would have to show that the defendant *knowingly and intentionally* misrepresented the character, amount, or legal status of the debt.[6] *Id.* at 462 (citing *Hubbard v. National Bond and Collection Associates, Inc.*, 126 B.R. 422 (D. Del. 1991), aff. 947 F.2d 935 (3d Cir. 1991); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)). Because the collector in *Ducrest* relied on the information provided to it by the creditor in demanding payment of the debt from the plaintiff, and because the plaintiff failed to show any misrepresentation of the amount of the debt claimed was knowing or intentional, the court found no merit in the plaintiff's § 1692e(2) claim. 931 F. Supp. at 462. "The FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to

---

[6] The plaintiff argues the FDCPA is strict liability, but that argument misses the point. The FDCPA presumes <u>damages</u> for any violation, but the plaintiff must still <u>prove</u> a violation occurred. In that regard, the intent of the collector is relevant.

collect a debt." *Id.* at 462 (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).

B. **The cases which Plaintiff cites in opposition to Defendants' Motion for Partial Summary Judgment are inapplicable to this action.**

The cases which Plaintiff cites in her opposition brief address alleged violations of the FDCPA committed where the debtor's responsibility for the debt was undisputed and, for this reason, are inapposite in this case. For example, Plaintiff relies heavily on and quotes extensively from *Sayyed v. Wolpoff & Abramson*, 2007 WL 1345811 (4th Cir. May 9, 2007). In *Sayyed*, there was no dispute that the plaintiff was the party responsible for the debt at issue. The plaintiff in *Sayyed* thus made no claim that the very filing of the collector's state court action against him violated the FDCPA. Rather, the plaintiff sued the collector in a separate action for alleged violations of the FDCPA arising from the collector's conduct occurring *after* the state action was filed and within the context of the collector's specific, substantive representations made in its interrogatories and summary judgment motion. *Id.* at *1. In other words, Sayyed complained that certain of Wolpoff & Abramson's representations made during the course of litigation were false in and of themselves, not that they were false only in the event Sayyed was determined not to be the responsible party.[7]

While Defendants believe *Sayyed* was wrongly decided for a number of reasons, which Defendants have previously briefed in the context of the cross-summary judgment motions in

---

[7] Specifically, Sayyed alleged that the interrogatories failed to state they were a communication from a debt collector, in violation of 15 U.S.C. § 1692e(11). 2007 WL at *1. He also alleged the interrogatories violated § 1692e(10)'s prohibition against false representations and § 1692f's prohibition against unfair or unconscionable collection attempts by making three false statements: (1) that the trial date for the state court case was June 11, 2004; (2) that Sayyed had to state his grounds of refusal to answer the interrogatories under oath; and (3) that the state court could enter a default judgment against Sayyed if he did not mail answers to Wolpoff & Abramson within 30 days after the date of service. *Id* .at *1. With respect to the collector's summary judgment motion, Sayyed alleged that the motion (1) falsely represented the amount of Sayyed's debt, in violation of § 1692e(2)(A); (2) sought attorney's fees not expressly authorized by the credit card agreement or permitted by law, in violation of § 1692f(1); and (3) in seeking unauthorized attorney's fees, falsely represented the compensation which the collector could lawfully receive, in violation of § 1692e(2)(B). *Id.* at *7.

5

this case, *Sayyed* simply does not provide any basis for Plaintiff's attempt to predicate her FDCPA claim solely on the fact that Defendants filed an arbitration proceeding against an alleged incorrect party. The court in *Sayyed* specifically refrained from opining whether the affidavits which the collector submitted in support of its summary judgment motion violated the FDCPA:

> We need not explore the scope of witness immunity because, contrary to W & A's contention, Sayyed's suit does not raise this issue. W & A claims that 'Sayyed's suit asserts W & A is liable for purported false statements contained in affidavits signed by Discover and W & A.' This is not the case. Sayyed's complaint alleges that the summary judgment motion itself contained false statements. . . . The summary judgment motion contained [the allegedly unlawful] statements. The affidavits attached to the motion repeated these statements. . . . But Sayyed is not seeking to hold W & A liable for the affidavits; his cause of action is based upon the summary judgment motion itself. . . . **We express no opinion on whether witness immunity would apply to affidavits executed by a debt collector, because that issue is not raised by this case.**

2007 WL at *6-7 (emphasis added).

Further, to be clear, the court in *Sayyed* did not determine that, by its conduct, the collector violated the FDCPA in any way. The court merely concluded:

> Thus, for example, in *Heintz v. Jenkins*, the circuit court reversed the district court's dismissal for failure to state a claim. *See Jenkins v. Heintz*, 25 F.3d 536, 540 (7th Cir. 1994), *aff'd*, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). On remand, the district court applied the bona fide error defense of § 1692k(c) and granted summary judgment to attorney Heintz, and the Seventh Circuit affirmed. *See Jenkins v. Heintz*, 1996 WL 535167 (N.D. Ill. 1996), *aff'd*, 124 F.3d 824 (7th Cir. 1997).
>
> * * * * *
>
> On remand, W & A may of course (1) contend that there were no statutory violations, or (2) avail itself of the § 1692k(c) defense by showing by a preponderance of the evidence that any violations were not intentional and 'resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.' . . . W & A's reliance on its client may well be relevant to that inquiry. But the district court erred in dismissing Sayyed's claims outright on the basis of this concern. The statutory framework establishes that the proper place for the inquiry is not at the Rule 12(b)(6) stage.

6

2007 WL at *7-8 (footnote omitted).

Plaintiff also relies significantly on *Heintz v. Jenkins*, 514 U.S. 291, 293, 115 S. Ct. 1489 (1995). Like *Sayyed*, *supra*, *Heintz* is neither dispositive of nor instructive in this case. *Heintz* involved a collection suit brought by a bank's law firm against Darlene Jenkins to recover on an automobile loan. George Heintz, a lawyer with the bank's firm, sent Jenkins's lawyer a letter in an attempt to settle the suit. *Id.* at 293. The letter gave what Jenkins claimed was a false statement of the amount she owed the bank. *Id.* She sued Heintz and his firm under the FDCPA. As in *Sayyed*, because Jenkins's responsibility for the debt was unchallenged, she made no claim against Heintz for the mere filing of the lawsuit against her. Instead, Jenkins asserted that the amount which Heintz claimed was owing was *per se* false, not that it was false only because Heintz sued the incorrect party. Moreover, like *Sayyed*, the court in *Heintz* did not find that Heintz violated the FDCPA. Rather, the court of appeals reversed the district court's dismissal for failure to state a claim under Rule 12(b)(6). *See Jenkins v. Heintz*, 25 F.3d at 540, *aff'd*, 514 U.S. 291, 115 S. Ct. 1489 (1995). On remand, the district court applied the bona fide error defense of § 1692k(c) and granted summary judgment to Heintz, and the court of appeals affirmed. *See Jenkins v. Heintz*, 1996 WL 535167 (N.D. Ill. 1996), *aff'd*, 124 F.3d 824 (7th Cir. 1997).

Plaintiff also cites *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006), which involved a nonadversarial garnishment proceeding, for the proposition that "false statements by attorney debt collectors in litigation are actionable under the FDCPA." Opposition, p. 9. Plaintiff states parenthetically that the court in *Todd* rejected the defendant's "claim of witness immunity for attorney in FDCPA action." *Id.* The court in *Todd*, however, noted that "[b]oth Plaintiff and Defendant agree that Congress did not intend to abrogate the

7

well-established absolute immunity of a witness when it enacted the FDCPA. This Court agrees that nothing in the FDCPA itself or the legislative history of the Act remotely suggests such an abrogation." 434 F.3d at 439. The court also determined that "testimony presented in the form of an affidavit may be protected under absolute witness immunity," and "[t]he fact that Plaintiff is suing under the FDCPA and not the common law claim does not affect the immunity status of Defendant." *Id.* at 439-40, 446 (citations omitted). Moreover, the court stated that "witness testimony at an *adversarial proceeding* is entitled to absolute immunity, because this proposition is supported by the rationale in *Briscoe* [*v. LaHue*, 460 U.S. 325, 345-46, 103 S. Ct. 1108 (1983)] that witness immunity, coupled with 'the crucible of the judicial process,' is the path that would best 'lead to the ascertainment of truth.'" 434 F.3d at 441 (emphasis added) (quoting *Briscoe*, 460 U.S. at 330-34). Thus, under the court's analysis in *Todd*, Defendants should be afforded absolute witness immunity as the arbitration proceeding against Plaintiff was inherently adversarial, and Congress did not intend to abrogate the well-established absolute immunity of a witness when it enacted the FDCPA.

Finally, the Seventh Circuit, in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472-73 (7th Cir. 2007), recently indicated its willingness to decide, in "some future case, where the answer matters," whether § 1692(e)'s proscription against false, deceptive, or misleading representations in connection with the collection of a debt covers the litigation process. *Id.* at 473. The plaintiff in *Beler* argued that the collector's complaint and attached affidavit violated § 1692(e) because its description of the contracts among the various entities involved—merchant, transaction processor, and creditor—was not clear enough to enable an unsophisticated consumer, like the plaintiff, to understand the relationships among such entities. *Id.* at 472. The court explained that the plaintiff's "theory" assumed the FDCPA regulates the

8

contents of complaints, affidavits, and other papers filed in state court. *Id.* The court noted that although the case of *Thomas v. Simpson & Cybak*, 392 F.3d 914 (7th Cir. 2004) (en banc), concluded that the statutory "verification notice" must precede or accompany a complaint when the creditor's law firm satisfies the definition of "debt collector," *Thomas* did not imply that the FDCPA dictates the complaint's contents; to the contrary, the court suggested (though it did not have occasion to hold) that the state's rules of procedure, not federal law, determine which facts, and how much detail, must be included in documents filed with a state court. 480 F.3d at 472-73. The court noted that a recent amendment to the FDCPA nullified the holding of *Thomas*: legal pleadings no longer need be preceded or accompanied by verification notices. *Id.* at 473. "Given this amendment and the limited rationale of *Thomas* itself, it is far from clear that the FDCPA controls the contents of pleadings filed in state court." *Id.*

Accordingly, the plaintiff has still given this Court no legal authority for the proposition advanced in this matter. The collector in this case did nothing (if anything) wrong other than initiate arbitration against Ms. Holley. The cases relied upon by the plaintiff can serve neither as a basis for her own Motion for Summary Judgment nor as adequate legal opposition to the Defendant's Summary Judgment because each case concerns collection conduct <u>other than</u> filing suit. Accordingly, granting the Defendant's Motion for Summary Judgment in this case will not overrule or contradict any of the cases cited by the plaintiff but will comply with the authority relied upon by the defendant, and will also be in harmony with the intended legislative purpose of the FDCPA, as discussed in section D.

**C.** **<u>The record is devoid of any evidence from Plaintiff, beyond her conclusory allegation that she is not the responsible party, that Defendants made any false representations in the arbitration proceeding.</u>**

9

Even if the Court determines the FDCPA applies to Defendants' statements made in arbitration, Defendants are nonetheless entitled to summary judgment as Plaintiff has not proved, and cannot prove, that Defendants' representations were false—an element essential to her FDCPA claim and one on which she carries the burden of proof. In *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991 (N.D. Ind. 2005), a case strikingly similar to this one, the plaintiff alleged that the defendant debt collectors wrongfully sought to collect a debt from him and, to that end, instituted groundless litigation against him. *Id.* at 994. Following the defendants' dismissal without prejudice of their state court collection suit, the plaintiff sued the defendants in federal court, asserting 17 causes of action under the FDCPA. *Id.* The plaintiff's FDCPA claims specifically hinged on the allegations that the debt was uncollectible for various reasons—the statute of limitations had expired, the debt was not owed, the applicable interest rate might have been wrong, and one of the collectors, MAG, did not actually own the debt originally held by Providian. *Id.* at 1002.

The plaintiff attempted to predicate some of his FDCPA claims upon the allegation that the defendants had not sufficiently proved a "chain of title" allowing them to collect the debt. *Id.* at 997. The court found that the defendants "were not obligated to prove the chain of title in defense of the Plaintiff's FDCPA claims." *Id.* The court also addressed the remainder of the plaintiff's FDCPA claims:

> The issue before this Court is not whether, as a matter of law, the Plaintiff owes MAG on the credit card account he originally had with Providian. That matter is appropriate for a state court collection suit where the Defendants would carry the burden of proof. Rather, the issue is whether the Defendants violated the FDCPA in the manner in which it sought to collect the purported debt, first by sending the Plaintiff a letter and then by filing a civil suit. In other words, did the Defendants use unfair or unconscionable collection methods, engage in conduct meant to harass, oppress, or abuse the Plaintiff, or make false, deceptive, or misleading statements in the dunning letter or lawsuit? *These are issues upon which the Plaintiff would bear the burden of proof at trial. If there is an absence of*

10

> *evidence to support the Plaintiff's FDCPA claims, or if no specific facts establish genuine issues for trial, the Defendants are entitled to summary judgment.*

*Id.* at 1000 (emphasis added).

The plaintiff in *Miller*, like Plaintiff in this case, contended that the amount owed was in dispute (the plaintiff claimed he owed no money to MAG) and thus, there was a triable issue as to whether the defendants made false representations under the FDCPA. *Id.* at 1003. The court found that, contrary to the plaintiff's assertion, "he ha[d] not presented evidence" that he actually owed nothing to MAG. *Id.* Whether the Defendants correctly stated, in the dunning letter and state court suit, the amount of debt the Defendant [*sic*] owed MAG is not a genuine issue in dispute. The Plaintiff's FDCPA claims fail to the extent they depend on the Defendants having misrepresented that the Plaintiff was indebted on the account in issue." *Id.*

The plaintiff in *Miller* also contended that there was a genuine issue of fact concerning whether MAG owned the debt at issue. *Id.* at 1003-04. The defendants asserted that the bill of sale relating to the subject debt evidenced MAG's right to sue on the debt. *Id.* at 1004. The court rejected the plaintiff's argument:

> The Court finds that the Plaintiff's evidence does not create a genuine issue of material fact regarding MAG's ownership of the debt. The Plaintiff challenges the admissibility of the Defendants' evidence that MAG owned the debt, but he presents no evidence of his own to show that MAG did not have the right to enforce the debt and that, therefore, the Defendants made false and misleading statements under the FDCPA. In other words, there is an absence of evidence to support the Plaintiff's claim that MAG falsely represented that it owned the debt. The moving party may discharge its "initial responsibility" on summary judgment by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex [Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)].

\* \* \* \* \*

> Because no reasonable jury could find for the Plaintiff on his FDCPA claim, the Defendants' motion for summary judgment on those claims is granted.

11

*Id.*

As in *Miller*, *supra*, Plaintiff alleges that because she is not the responsible party, and because, according to her, Defendants' proffered evidence is insufficient to prove both her responsibility and Defendants' right to collect the debt, Defendants necessarily violated the FDCPA by its representations in the arbitration proceeding. The issue before the Court is not whether, as a matter of law, Plaintiff is the responsible party or Defendants are legally entitled to collect the debt. *See Miller*, 397 F. Supp. 2d at 1000; *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) (for purposes of the plaintiff's FDCPA claim, whether the plaintiff is actually the responsible party for the account at issue is wholly irrelevant). Rather, the issue is whether Defendants violated the FDCPA in the *manner* in which they sought to collect the debt from Plaintiff. *See Miller*, 397 F. Supp. 2d at 1000. In other words, did Defendants use unfair or unconscionable collection methods; engage in conduct meant to harass, oppress, or abuse Plaintiff; or make false, deceptive, or misleading statements in the arbitration proceeding? *See id.* These are issues upon which *Plaintiff*, not Defendants, bears the burden of proof at trial. *See id.* Because there is a glaring absence of evidence to support Plaintiff's FDCPA claim, and because no specific facts establish genuine issues for trial, Defendants are entitled to summary judgment on the FDCPA claim. *See id.*

Plaintiff's evidence that she is not the responsible party—consisting solely of her allegation that she is not—and her evidence that the "chain of title" does not establish Defendants' right to collect the debt—consisting of nothing—does not create a genuine issue of material fact regarding these issues. *See id.* at 1004. Plaintiff argues vigorously in support of both issues, but she has presented wholly insufficient evidence of her own in support of either that could lead the trier of fact to conclude that Defendants, therefore, made false and misleading

12

statements under the FDCPA. *See id.* In other words, there is a complete lack of credible evidence to support Plaintiff's FDCPA claim that Defendants falsely represented that she is the responsible party and that they own the debt. *See id.* Thus, Defendants have discharged their "initial responsibility" on summary judgment by showing that there is an absence of evidence to support Plaintiff's, the non-moving party's, case. *See id.* Because no reasonable jury could find for Plaintiff on her FDCPA claim, Defendants are entitled to judgment as a matter of law.

D. **Defendants are entitled to immunity for their representations made in the NAF arbitration, a quasi-judicial proceeding.**

The FDCPA was never intended to apply to litigation activity or pleadings. To the extent plaintiff has cited authority in contradiction to this notion, those cases are wrongly decided. In order to put this issue into proper context, it is necessary to consider the history of the FDCPA and, more particularly, the removal of the attorney exemption which extended the statute to lawyers. While this has intuitively led the plaintiff to argue that the FDCPA must apply to lawyers' litigation activity, the opposite is true. Since the FDCPA originally did not even apply to lawyers, there was no initial concept that it would apply to litigation or pleadings. When the Act was extended to attorneys, Congress did not provide that it would abrogate or alter any common law immunities or truncate the Rules of Civil Procedure. In fact, subsequent amendments have made this clear by specifically excluding pleadings from the scope of the Act. This has been misconstrued to be an implicit acknowledgment that the original FDCPA <u>did</u> extend to pleadings. As is demonstrated below, the history of the Act contradicts this assertion, and the defendant is still entitled to all existing common law immunities and privileges.

Defendants' claim of absolute immunity from Plaintiff's FDCPA claim is well-recognized at common law, as a right not to stand trial, and may be applied to a federal statutory cause of action, like the FDCPA, unless Congressional intent to abrogate appears manifest, or a

13

statutory purpose to the contrary is evident. *U.S. v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Astoria Fed. Savings & Loan Ass'n. v. Solimino*, 501 U.S. 104, 108 (1991)). *See also Malley v. Briggs*, 475 U.S. 335, 339 (1986); *Wyatt v. Cole*, 504 U.S. 158, 170-175 (1992) (Kennedy, J., concurring); *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); 2A Sutherland, Statutory Construction §§ 50:1-50:5 (6th ed. 2005); P. Hayden, *Reconsidering the Litigator's Privilege to Defame*, 54 Ohio St. L.J. 985, 1004-1010 (1993). No clear statement of Congressional intent to abrogate common law immunity, however, appears in the FDCPA's legislative text or its legislative history. *Todd*, 434 F.3d at 439.

The communications Congress sought to regulate by enacting the FDCPA were directed to consumers and third-parties occurring *outside* the context of litigation—late night telephone calls, threats of harm, harassing letters, and disclosures of embarrassing debt information to employers, neighbors, and family. S. Rep. No. 382, 95th Cong., 1st Sess. 1977, 1977 U.S.C.C.A.N. 1695, 1696; *Argentieri v. Fisher Landscapes, Inc.*, 15 F. Supp. 2d 55, 61 (D. Mass. 1998). The FDCPA prohibits debt collectors from simulating legal process or representing that legal process was not legal process; from falsely claiming that documents were authorized, issued, or approved by any court; falsely claiming to be an attorney; implying that non-payment of the debt would result in loss of a claim or defense; or threatening non-judicial action to deprive the consumer of property.[8] The act also prohibited collectors from engaging in forum abuse, that is, filing a legal action in a distant forum, thus depriving the consumer of his day in court.[9] The FDCPA contains several other references to court processes, but none of these provisions expressly refers to pleadings filed in litigation. *See* 15 U.S.C. § 1692a(6)(D); §

---

[8] *See* 15 U.S.C. §§ 1692e(13), 1692e(15), 1692e(9), 1692e(3), 1692e(6)(A), 1692f(6).
[9] 15 U.S.C. § 1692i. S. Rep. 95-382, pp. 5-7, 1977 U.S.C.C.A.N. 1695, 1699. *See also* H.R. Rep. No. 131, 95th Cong., 1st Sess. 16 (1977). *See generally* H.R. Rep. 90-1040, 90th Cong., 2nd Sess. 1968, 1968 U.S.C.C.A.N. 1962 (TILA).

14

1692c(a) & (b). Subsequent Congressional amendments evidence an intent to avoid the erroneous application of the FDCPA after courts began interpreting provisions of the FDCPA as governing various aspects of court filings. 15 U.S.C. § 1692e(11) was amended to explicitly state that a "formal pleading filed in a legal action" is exempt from that paragraphs' requirements. More recently, 15 U.S.C. § 1692g was amended by the Financial Services Regulatory Relief Bill, S. 2856, adding § 1692g(d), to exempt pleadings from the scope of that section. *See* Pub. L. 104-208, Title II, § 2305(a), Sep. 30, 1996, 110 Stat. 3009-425; Pub. L. 109-351, Oct. 13, 2006, 120 Stat. 1966. Thus, in 1977, when it was originally enacted, the intended scope of the legislation was clearly understood not to regulate the content of pleadings. S. Rep. 95-382, p. 7, 1977 U.S.C.C.A.N. 1695, 1701.

When Congress repealed the FDCPA's attorney exemption in 1986, the reason for the repeal had nothing to do with the content of pleadings—attorneys entered into direct competition with traditional debt collectors, advertising their exemption as a means of unfairly competing with collection agencies. The House Report accompanying the Amendment, referred to the country's largest collection law firm's volume practice, observing that "92% of the accounts handled that year did not involve legal action. H.R. Rep. No. 405, 99th Cong., 1st Sess. 1985, 1986 U.S.C.C.A.N. 1752 (11-26-85):

> Since passage of the Act, attorneys have increasingly entered the debt collection business and used the exemption to evade compliance with the Act. There are now about 5,000 attorneys engaged in the business of debt collection, compared to approximately 5,400 lay debt collection firms. H.R. 237 would remove the exemption from the Fair Debt Collection Practices Act and bring attorney collectors under the provisions of the Act.
>
> * * * * *
>
> Specific examples of attorney debt collection abuses were presented as exhibits attached to Mr. Johnson's testimony. These abuses, all prohibited by the Act, but inapplicable due to the attorney exemption, included late

> night telephone calls to consumers, calls to consumers' employers concerning the consumers'debts, frequent and repeated calls to consumers, disclosure of consumers' debt to third parties, threats of legal action on small debts where there is little likelihood that legal action will be taken, simulation of legal process, harassment, abuse, threats of seizure, and attachment and sale or property where there is little likelihood that such action will be taken.

H.R. Rep. No. 405, 99th Cong., 1st Sess. 1985, 1986 U.S.C.C.A.N. 1752, 1754-1755 (11-26-85). If entry into the debt collection business by lawyers was a new phenomenon occurring for the first time after 1977, the 'debt collection business' as understood by Congress in 1985 did not include litigation, as attorneys have always been in the business of litigation. See P. Hayden, *Reconsidering the Litigator's Privilege to Defame*, 54 Ohio St. L.J. 985, 1004-1010 (1993). Congress intended to place attorneys engaged in debt collection under the same standards that governed lay debt collectors, *Jenkins v. Heintz*, 124 F.3d 824, 833-834 (7th Cir. 1997), cert. denied 523 U.S. 1022 (1998); *F.T.C. v. Shaffner*, 626 F.2d 32 (7th Cir. 1980). When introduced on the floor of the House, the same reasons were cited in support of the Amendment, and the Bill was characterized as "a fairness bill. It makes certain that all debt collectors operate under the same set of rules, a set of rules which debt collectors themselves have testified are easy to follow and do not restrict the business of ethical debt collectors." 131 Cong.Rec. H10534-02 (Remarks of Rep. Annunzio) (12-2-85).

Indeed, before Congress amended the FDCPA in 1986 and removed the attorney exemption, Congress understood that the function performed by traditional debt collectors did not include litigation at all. In 1983, the Federal Debt Collection Act was enacted. See 31 U.S.C. § 3718. Pub.L. 97-452, § 1(16)(A), Jan. 12, 1983, 96 Stat. 2473. When it was originally enacted, debt collectors acting on behalf of the United States were not authorized to undertake any legal action on behalf of the agency to collect those debts. S. Rep. 97-378, 97th Cong., 2nd

Sess. 1982, 1982 U.S.C.C.A.N. 3377. In 1986, Congress determined that the threat of litigation was a valuable tool in the arsenal of a debt collector, which traditional debt collectors did not have, and found it necessary and desirable to authorized federal agencies to contract with private law firms to not only collect debts, but to initiate litigation on behalf of the United States. Pub.L. 99-578 § 1, Oct. 28, 1986, 100 Stat. 3305; H.R. Rep. No. 909, 99th Cong., 2nd Sess. 1986, 1986 U.S.C.C.A.N. 5605, 5606-07:

> In order to make the threat of litigation for non-payment of debts to the Government a real one, and thus to provide adequate incentives to pay these debts, the Attorney General would be authorized under H.R. 5541 to enter into contracts with private attorneys for the performance of legal services for the United States for the collection of these debts. . . .
>
> \* \* \* \* \*
>
> In the situation where the agency chose to use a debt collection service, and the service was unable to collect the debt, the agency may then determine that private legal services are needed. In such a case, the agency itself must select the law firm to handle the debt, although the debt collection service may, pursuant to contract or agency direction, actually transfer the file to the law firm selected by the agency. In the case of such a decision, the debt collection service must return the entire file on the debt to the agency or transfer it at the agency's direction to the selected law firm.

Congress, moreover, knows how to regulate the procedures employed in litigation, but has delegated substantially all its authority in this regard to the Court. See 28 U.S.C. §§ 3001-3308, 3003(f) (making the Federal Rules of Civil Procedure applicable to claims under the Federal Debt Collection Act). See also 28 U.S.C. § 2072 (Rules Enabling Act); 4 Wright & Miller, Federal Practice & Procedure Civ. 3d § 1001 (2002). Thus, even assuming the Court determines that a genuine issue of material fact exists regarding the truth or falsity of Defendants' representations made in the NAF arbitration, precluding summary judgment for Defendants, Plaintiff's FDCPA claim nonetheless fails, as Defendants are entitled to absolute

17

immunity for their representations made in the course of the NAF arbitration, a quasi-judicial proceeding.

E. **The National Arbitration Forum is a quasi-judicial proceeding, and therefore Defendants' statements made in the course of the arbitration are absolutely privileged.**

Plaintiff argues that because Defendants have presented insufficient evidence that the NAF arbitration is a quasi-judicial proceeding, the statements made in the course of the arbitration are not absolutely privileged. Opposition, p. 3. The NAF proceeding, like arbitrations in many forums, is a quasi-judicial proceeding which entitles Defendants to the absolute litigation privilege. *See Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir. 1990) ("[A]n arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses.").

Defendants need not present formal evidence of NAF's arbitration procedures and their attendant due process guarantees, as the Court may take judicial notice of such procedures, pursuant to Federal Rule of Evidence 201(b)(2)[10] by reviewing NAF's website, located at http://www.arb-forum.com. *See Ela Medical, Inc. v. Arrhythmia Management Assocs., Inc.*, 2007 WL 892517, *4, n.5 (March 21, 2007) (taking judicial notice of information provided by various corporate entities on their own websites); *Henderson v. Quarterman*, 2007 WL 1302398, *1, n.2 (N.D. Tex. May 1, 2007) (taking judicial notice of the official website of Dallas County, Texas). NAF's Code of Procedure is described at http://www.arb-forum.com/main.aspx?itemID=609&hideBar=False&navID=162&news=3, which also provides a hyperlink to the current version of the Code of Procedure, effective May 1, 2006, which was

---

[10] "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

applicable to Defendants' arbitration filed in June 2006 ("The *Code of Procedure* ensures all parties a fair, unbiased dispute resolution process.").

NAF's Code of Procedure is 45 pages long; consists of eight parts (including Scope, Commencement of Arbitration, Documents, Arbitrators, Hearing, Awards and Orders, Fees, and Code Provisions), two appendices, and 48 different rules (ranging from representation by counsel (Rule 3); to one's opportunity to respond to a claim (Rule 5.B.); to the right to examine and cross-examine witnesses and present evidence on one's behalf (Rule 5.D.); to the neutrality of the arbitrator (Rule 5.E.); and to each parties' access to justice (Rule 5.O., which states that the "Code shall be interpreted to provide all parties with a fair and impartial arbitration and with reasonable access to civil justice. Arbitrations under the Code are governed by the Federal Arbitration Act"). Consequently, the NAF arbitration more than satisfies the characteristics of a quasi-judicial proceeding as delineated by the court in *Webster v. Byrd*, 494 So. 2d 31 (Ala. 1986). Defendants are indeed entitled, therefore, to the absolute privilege afforded to parties in a quasi-judicial proceeding.

## CONCLUSION

For the reasons stated herein, and in Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment, Defendants are entitled to summary judgment as a matter of law as to Plaintiff's FDCPA claim.

                                            Respectfully Submitted,

                                            /s/ Neal D. Moore, III            .
                                            Neal D. Moore, III (ASB-3971-M73N)
                                            L. Jackson Young, Jr. (ASB-7946-G65L)

**OF COUNSEL:**
FERGUSON, FROST & DODSON, LLP
2500 Acton Road, Suite 200
Birmingham, Alabama  35243
(205)879-8722

### CERTIFICATE OF SERVICE

  I hereby certify that I have on this the 5th day of June, 2007, served a copy of the foregoing pleading electronically via the CM/ECF system on the following counsel of record:

Edward M. Wayland, Esq.
Post Office Box 17
Montgomery, Alabama 36101


          /s/ Neal D. Moore, III            .
          OF COUNSEL